1              UNITED STATES DISTRICT COURT

2            NORTHERN DISTRICT OF CALIFORNIA

3      Before The Honorable Claudia Wilken, Magistrate Judge

4

5  In Re:                 )  No. C 17-01850-CW
                       )
6  MCKESSON CORPORATION      )
  DERIVATIVE LITIGATION,    )
7  _____)

8                    Oakland, California
                    Tuesday, July 17, 2018
9

    TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
10           RECORDING 2:36 - 3:12 = 36 MINUTES

11  APPEARANCES:

12  For Plaintiff:

13                  Hagens Berman Sobol Shapiro,
                     LLP
14                  715 Hearst Avenue
                  Suite 202
15                  Berkeley, California 94710
            BY:  PETER E. BORKON, ESQ.

16                  Gardy and Notis, LLP
                  126 East 56th Street
17                  New York, New York 10022
            BY:  MEAGAN A. FARMER, ESQ.
18

                  Block & Leviton, LLP
19                  155 Federal Street
                  Boston, Massachusetts 02110
20            BY:  JOEL FLEMING, ESQ.

21  For Intervenor:

22                  Levi and Korsinsky, LLP
                  30 Broad Street
23                  24th Floor
                  New York, New York 10004
            BY:  AMY R. MILLER, ESQ.
24

25         (APPEARANCES CONTINUED ON NEXT PAGE)

2

1   APPEARANCES: (Cont'd.)

2   For Defendant:

                              Morrison & Foerster, LLP
3                             425 Market Street
                              San Francisco, California
4                                94105
                         BY:  JORDAN ETH, ESQ.
5                             DAVID WIENER, ESQ.

6   For John Hammergren:

                              Munger, Tolles & Olson, LLP
7                             560 Mission Street
                              27th Floor
8                             San Francisco, California
                                 94105
9                             (415) 512-4026
                         BY:  ACHYUT J. PHADKE, ESQ.
10

11  Transcribed by:          Echo Reporting, Inc.
                              Contracted Court Reporter/
12                            Transcriber
                              echoreporting@yahoo.com
13

14

15

16

17

18

19

20

21

22

23

24

25

3

1 <u>Tuesday, July 17, 2018</u>                    <u>2:36 p.m.</u>

2                    P-R-O-C-E-E-D-I-N-G-S

3                         --oOo--

4         THE CLERK:  Calling civil matter 17-1850, In Re

5 McKesson Corporation Derivative Litigation.

6         THE COURT:  Whoever is speaking for the Plaintiff

7 can come here, and whoever is speaking for the Defendant can

8 come here.

9         MS. MILLER:  Judge, we have the intervenor issue.

10 So I'm not sure which -- which microphone goes --

11         THE COURT:  I don't -- I don't care.  Whoever will

12 let you use it I suppose.

13         MS. MILLER:  Okay.

14         THE COURT:  You are?

15         MS. FARMER:  Meagan Farmer for the Plaintiff, co-

16 lead counsel, from Gardy and Notis.

17         MR. BORKON:  Good afternoon, your Honor.  Peter

18 Borkon from Hagens Berman, also on behalf of co-lead

19 Plaintiffs -- or co-lead counsel.

20         THE COURT:  And who do you represent?

21         MR. BORKON:  We are appointed as co-lead counsel

22 on behalf of the Plaintiffs in the consolidated action.  We

23 represented Mr. Afit (phonetic)

24         MS. FARMER:  And Gusinsky.

25         MR. BORKON:  And Gusinsky.

4

1          THE COURT:  Okay.  And who else do you have?

2          MR. FLEMING:  Good afternoon, your Honor.  Joel

3  Fleming, Block and Leviton, additional counsel for

4  Plaintiffs.

5          THE COURT:  Okay.

6          MS. MILLER:  Good morning -- or good afternoon,

7  your Honor.  Amy Miller for the proposed intervenor,

8  Amalgamated Bank.

9          MR. ETH:  Good afternoon, your Honor.  Jordan Eth

10 for nominal Defendant, McKesson Corporation.

11         MR. WIENER:  David Wiener for McKesson

12 Corporation.

13         MR. PHADKE:  Good afternoon, your Honor.  Achyut

14 Phadke from Munger, Tolles and Olson for John -- Defendant

15 John Hammergren.

16         THE COURT:  Good afternoon.  So this is on for --

17 I guess now it's just Amalgamated's motion to intervene,

18 appoint co-lead Plaintiff and co-lead counsel.  Well, Ojeda

19 had initially filed the motion as well, but he's withdrawn

20 it, and I guess the Defendant doesn't take any particular

21 position on any of this.

22         MR. ETH:  Correct.

23         THE COURT:  So you're just here to --

24         MR. ETH:  And, again, it's nominal Defendant.

25         THE COURT:  The nominal Defendant.  Sorry.

5

1          MR. ETH:  Because there are other individual
2    Defendants, Mr. Hammergren and --
3          MR. PHADKE:  Mr. Hammergren does not take a
4    position either, your Honor.
5          THE COURT:  Okay.  So if I could get an update
6    from Plaintiff's counsel as there's various representations
7    made about what you said and didn't say and what your
8    current position is and so on.  So I'm not too clear on all
9    that, just that there's been a change from the time your
10   papers were filed or what your current position is.
11         MS. FARMER:  Our current position, as you know,
12   your Honor appointed the Hagens Berman as co-lead counsel.
13   As you're aware, after your Honor decided the motions to
14   dismiss, the Delaware court stayed the Delaware actions.  In
15   light of that, we attempted to work together.  I think both
16   courts had encouraged that, to work together and move
17   forward in one court.  We had several discussions with eight
18   or nine different counsel in Delaware to figure out a
19   structure where we could work together going forward.
20        We've all agreed except for Kozinski, and we made
21   several compromises, and we think we can move forward and
22   speak with one voice and work cohesively together.  We have
23   a track record of working together well.  We just have a
24   firm that is a holdout, and so our position is, you know,
25   we'd like to move forward as one group, and that's where e

6

1 are right now.

2          THE COURT:  Well, just some housekeeping

3 questions.  You were going to first -- a first or some kind

4 of amended complaint yesterday.

5          MS. FARMER:  We didn't, your Honor.  As you

6 recall, you gave us leave to replead the insider trading

7 claims and the claims against the outside directors that

8 were -- became directors in 2014.  After having reviewed the

9 Court's opinion and looking at the claims further, we

10 decided it was in the best interest to stick with the claims

11 that the Court upheld.  We didn't think that we would --

12 should pursue that amendment.

13          THE COURT:  Okay.  And what is the status in

14 Delaware?  The Court here gave the parties until June 1 to

15 say if they objected to the stay, and apparently the

16 Defendants' indicating that they did object to the stay, and

17 just wondered if they had filed a motion or if anything had

18 actually happened there yet.

19          MS. FARMER:  The last I checked, which was

20 yesterday, there has been no motion to lift the stay filed

21 by McKesson or any of the independent directors.

22          UNIDENTIFIED SPEAKER:  That's correct.  We have

23 not filed -- McKesson has not filed that motion.  As I

24 mentioned earlier, Mr. Hammergren now is new counsel, and

25 the other individual Defendants -- I think there are 11

7

1    others

2    -- are in the process of retaining additional counsel.  So

3    as of now, there's no motion to lift the stay, but I can't

4    represent what's going to happen down the road.

5              THE COURT:  Is there a deadline for the motion to

6    lift the stay?

7              UNIDENTIFIED SPEAKER:  I don't think there's a

8    deadline.

9              THE COURT:  So someone could file one at any

10   moment?

11             UNIDENTIFIED SPEAKER:  It's conceivable, not

12   likely it would be imminent, but it's conceivable.

13             THE COURT:  Okay.  So, as long I'm talking to you,

14   I'll ask my other questions, although I do have some

15   questions for the other side.

16        What is -- I don't know if there's any solution to

17   this, but it does seem that Amalgamated itself might be a

18   reasonable Plaintiff or reasonable participant amongst the

19   Plaintiffs.  The problem seems to arise more with

20   Amalgamated's attorney.

21        Do you see any solution there?

22             MS. FARMER:  As we've mentioned in our papers,

23   we've been willing to work with Levi and Korsinsky when it

24   was Ojeda's counsel, and now that it's Amalgamated's

25   counsel, we're willing to work with them as well.

8

1      They, to be frank, insist on terms that exceed other

2 firms' allocation of work and resources, et cetera.  So we

3 don't -- we're sort of at an impasse where we worked

4 collectively to get eight firms to work together, and the

5 solution would be -- and we have a -- we don't have a

6 problem with Amalgamated, but I think we can't see eye to

7 eye with their counsel.

8           THE COURT:  I guess this isn't tactful, but my

9 question was really whether you could represent Amalgamated.

10          MS. FARMER:  I believe we could, your Honor,

11 absolutely.  I think we've shown that we've been adequate

12 representatives in this Court.

13          THE COURT:  Now, unlike a PSLRA, this isn't a

14 PSLRA case.  So the Court really doesn't have to appoint

15 lead counsel or appoint a lead Plaintiff.  I have appointed

16 two co-lead counsel, but it's not really up to the Court to

17 decide how much work a particular attorney should do.  I

18 have not appointed a lead Plaintiff.  So the motion to

19 appoint a lead Plaintiff would be adding something that I

20 had done before and don't really need to do as I see it.  Am

21 I right about that?

22          MS. FARMER:  You're right about that.  We talked

23 kind of at length about that at the case management

24 conference in October, and we went back and forth about how

25 lead counsel -- lead Plaintiff designations weren't

9

1 particularly necessarily where -- in a derivative case when

2 you have lead counsel appointed especially.  So we actually

3 reminded Ms. Miller that -- during the negotiations that

4 there were no lead Plaintiffs and the Court didn't believe

5 it was necessary, nor do we.  So I don't think that we need

6 to appoint a lead Plaintiff here.

7            THE COURT:  So and in terms of co-lead counsel,

8 Amalgamated says that you have expanded the leadership team

9 and added more firms, but I don't guess you can do that.  If

10 the Court appointed co-lead counsel, it's up to the Court to

11 appoint more co-lead counsel.  It's kind of like everybody's

12 lead counsel and nobody is not lead counsel.

13            MS. FARMER:  I --

14            THE COURT:  But you don't -- you aren't taking to

15 yourself the notion that you could appoint more co-lead

16 counsel at your --

17            MS. FARMER:  I would never presume to do so.  If

18 the Court would entertain a new structure or thought it was,

19 you know, something that would work well for the company

20 going forward, we would like to, you know, see if the Court

21 would approve what we suggest.  But, as you know, you've

22 already appointed co-lead counsel.  So I don't have any

23 ability to change your order.

24            THE COURT:  And what is the job of co-lead

25 counsel, the powers of co-lead counsel?  Is this just sort

10

1  of an organizational question or do you actually have some

2  kind of powers that I set out somewhere?

3          MS. FARMER:  It would really be more of

4  determining strategy going forward and sort of having the

5  final say.

6          THE COURT:  But pursuant to what?  I mean, would

7  there be a vote or would co-lead counsel -- I mean, I don't

8  know what the decisions might be, whether to file a motion

9  for summary judgment or whether to settle or --

10          MS. FARMER:  Well, most of the counsel would

11  generally defer.  Generally counsel can agree, and it's

12  just, you know, the co-lead counsel would be the voice of

13  the group.

14          THE COURT:  But if they can't, what happens?  Do

15  people take votes on things or --

16          MS. FARMER:  I've never seen it not happen,

17  frankly, your Honor.

18          THE COURT:  I'll ask Amalgamated in a minute what

19  their position is about suing Ms. Sieger, but I guess you're

20  in agreement that if they were to sue Sieger that then -- if

21  they were to intervene and then be part of this case and

22  then sue Sieger, that they as a New York organization and

23  Sieger as a New York citizen would destroy diversity and

24  this case would have to be dismissed, and the Plaintiff

25  would have to refile somewhere else?

11

```
 1            MS. FARMER:  I suppose in Delaware.

 2            THE COURT:  Back in Delaware.

 3            MS. FARMER:  Right.

 4            THE COURT:  Reactivate the suit in --

 5            MS. FARMER:  Right.  So it sort of seems like a

 6  non-starter.  I'm not sure what --

 7            THE COURT:  I'm just asking whether you agree that

 8  -- that that would destroy diversity.

 9            MS. FARMER:  I do agree.

10            THE COURT:  And that this case would have to be

11  dismissed.

12            MS. FARMER:  I agree with the Court, and I think

13  that was a strategy decision that we didn't agree with from

14  the start.  We didn't believe those claims were viable.  So

15  we didn't include them to begin with.

16            THE COURT:  And can you think of anything, if I

17  were to allow Amalgamated to intervene, anything that could

18  protect the rest of the Plaintiffs from having jurisdiction

19  destroyed by having a complaint filed?  If they were in it

20  and they just went ahead and filed one, is there anything

21  you could do to stop them?

22            MS. FARMER:  I don't --

23            THE COURT:  Or anything that could be done in

24  advance to make sure they wouldn't do that?

25            MS. FARMER:  I don't believe there's anything I
```

1 could do to prevent --

2          THE COURT:  Well, at a certain point they would

3 have to move for leave to amend.

4          MS. FARMER:  Oh, absolutely, if they wanted to --

5          THE COURT:  Oppose it.

6          MS. FARMER:  -- oppose it, right.

7          THE COURT:  At a certain point they'd have a right

8 to amend as of right.  I don't know how that would work as

9 an intervenor, when their time to amend as of right, if

10 there was any, would arise.

11          MS. FARMER:  If I could just say, though, there's

12 standards for intervention, and you have to show that your

13 rights aren't being adequately protected and you don't have

14 adequate representation, and that's a showing, but that's

15 the burden on the intervenor that they have to show, and so

16 it's, you know --

17          THE COURT:  But my question was assuming that I

18 did allow them to intervene, would there be any, and I would

19 say you're probably right about intervention as of right,

20 but an argument could be made for permissive intervention,

21 and my question is whether if there were permissive

22 intervention, would there be any way to allow that but still

23 protect you from having your jurisdiction destroyed, and I

24 guess we've talked about that.

25          MS. FARMER:  I don't even think the intervenor

13

1  could file a complaint in this Court against Sieger.

2          THE COURT:  I don't know why not.

3          MS. FARMER:  It's a New York --

4          THE COURT:  He would have to move for leave to --

5  oh, if -- because they wouldn't have -- well, people file

6  things all the time.

7          MS. FARMER:  Well --

8          THE COURT:  They tend to get thrown out sometimes,

9  but people can always file them if they have $350.

10          MS. FARMER:  That's fair.

11          THE COURT:  And they might not even need the $350

12  if they're intervening and you've already paid the filing

13  fee.

14          MS. FARMER:  Right.

15          THE COURT:  Okay.  Did you have anything else you

16  wanted to raise in particular before I ask --

17          MS. FARMER:  Nothing that's not in my papers, your

18  Honor.  Thank you.

19          THE COURT:  Okay.  And what would you like to say

20  in response to any of those questions?

21          MS. MILLER:  I have a few things to say.  First,

22  your question about what to do if co-lead counsel can't

23  agree.  I think that that would be a great reason to have

24  a --

25          THE COURT:  I'm not -- co-lead counsel --

14

1          MS. MILLER:  If co-lead counsel can't agree on

2    something, you were asking what happens if they can't agree.

3          THE COURT:  Oh.

4          MS. MILLER:  Then if you had a lead Plaintiff like

5    Amalgamated, then you could go ask your client, you know, to

6    weigh in on it and perhaps a sophisticated client like

7    Amalgamated who is a shareholder activist could provide some

8    guidance and break that tie.

9        I do want to make clear to you that all of the other

10   Delaware Plaintiffs who have been invited to join the team,

11   they also asserted claims against Sieger.  It's my

12   understanding that everybody, if we work together -- we're

13   not filing another complaint.  We're using the complaint

14   that got over the motion to dismiss.  So nobody's going to

15   be filing additional claims against Sieger.  I think

16   everyone --

17         THE COURT:  Are you saying that the other

18   Plaintiffs have already sued Sieger?

19         MS. MILLER:  They did in Delaware court.  Just

20   like my -- my client, Amalgamated, sued Sieger in Delaware

21   court, all of the other Delaware Plaintiffs also sued

22   Sieger.  Now, it's my understanding --

23         THE COURT:  But are they Plaintiffs in this case?

24         MS. MILLER:  Well, now they're going to be

25   Plaintiffs in this case, and it's my understanding --

15

1          THE COURT:  Why do you say that?

2          MS. MILLER:  Because I thought that everyone was

3    going to be litigating together.

4          THE COURT:  Actually, that was the question I

5    forgot to ask.  Counsel also represented that you were

6    bringing in all these other attorneys from the Delaware

7    cases to -- well, we talked about that, that you couldn't

8    bring them in as co-lead counsel but you could bring them in

9    as co-counsel I guess if you wanted to.  Is that -- is that

10   something you're doing?

11         MS. FARMER:  Well, we're -- as you can imagine,

12   it's an administrative sort of task to get everybody to

13   agree and figure out how to do things, but we would ask the

14   Court, if the Court's willing to entertain it, we would ask

15   the Court to approve a new structure and perhaps include

16   additional Plaintiffs so that the Delaware folks and the

17   California folks can work cohesively together in this court.

18         THE COURT:  Well, you haven't made any requests

19   like that.

20         MS. FARMER:  We have not, and --

21         THE COURT:  So I don't have one before me.

22         MS. FARMER:  I'm sorry.  I just thought it would

23   be more prudent to determine the outcome of today prior to

24   submitting anything to the Court.

25         THE COURT:  Okay.  Well, say what you said again.

16

1 Are you talking about adding more lawyers or adding more

2 Plaintiffs or both?

3          MS. FARMER:  Both.

4          THE COURT:  Both.  And what about Plaintiffs who

5 have sued Sieger?

6          MS. FARMER:  They would be willing to not pursue

7 those claims -- to be clear, the Court didn't determine that

8 any allegations against Sieger were properly pled in any

9 way, and, you know, so --

10          THE COURT:  They haven't been pled at all so far

11 in this court.

12          MS. FARMER:  No, correct, but the Delaware court

13 hadn't decided anything about that.

14          THE COURT:  So --

15          MS. FARMER:  These are just claim -- you know,

16 allegations that were out there.  It would be willing, in an

17 effort to compromise, to not pursue those claims because we

18 -- the California Plaintiffs didn't believe those were

19 viable claims.  So in an effort to compromise, they would be

20 willing to drop the claims against Sieger.

21          THE COURT:  Well, the claim -- and the -- the

22 claims against Sieger from other Plaintiffs -- claims

23 against Sieger by Amalgamated are a problem because

24 Amalgamated is a New York citizen, as is Sieger.  These

25 other Plaintiffs I don't know if they're New York residents

17

1 or not.  If they're not, then it wouldn't -- it would be

2 fine for them to sue Sieger.

3          MS. FARMER:  Except for the fact that our

4 (indiscernible) is a New York resident currently.

5          MS. MILLER:  That was --

6          THE COURT:  I see.  Okay.

7          MS. MILLER:  I'm sorry, your Honor.  That was one

8 of the reasons that we chose to file in Delaware, because

9 you could assert all of those claims without diversity

10 issues, but we, like the other Delaware Plaintiffs, we are

11 willing to compromise and drop the claims against Sieger to

12 be part of the overall effort to go forward.

13     I would also like to say that we have never said that

14 we were unwilling to work with the group.  I think we can

15 work perfectly fine with the rest of the group.  We just

16 wanted to be treated fairly, and when we tried to have

17 discussions about being treated fairly, I think that's where

18 things broke down.  I think we're, you know, perfectly happy

19 to work with them.  Everyone can get together.  We just need

20 to come up with some clear guidelines.  I guess

21 Amalgamated's looking at it as there are five Plaintiffs if

22 everyone works together, because there are two Northern

23 District of California Plaintiffs who have already filed.

24 Then you have three Plaintiffs from Delaware who might be

25 coming in.  There was another Plaintiff in Delaware like

1  Ojeda who had diversity issues who has agreed that she is

2  stepping back, just like Ojeda is stepping back so the

3  overall effort against McKesson can go forward without any

4  -- you know, any type of even a though that diversity might

5  mess it up.  We have no intention of filing another

6  complaint to assert claims against Sieger if we work with

7  the Northern District of California counsel and their

8  Plaintiffs.  We just want to be part of the effort, and we

9  want to be treated fairly.  We've said that we're

10 flexible --

11         THE COURT:  Okay.  Well, let me respond to two

12 points, and then I have some other questions for you.

13         MS. MILLER:  Okay.

14         THE COURT:  Number one, how can I be sure you

15 won't file a lawsuit against Sieger or won't file a

16 complaint that includes Sieger?

17         MS. MILLER:  Because I'm telling you that we don't

18 think that's in the best interests of the case going forward

19 if we're all agreeing to litigate here, because we don't

20 want to do anything that might upset your jurisdiction.

21         THE COURT:  Okay.

22         MS. MILLER:  We know that Delaware has stayed.  I

23 don't expect the Court to change its decision even if

24 Defendants move, but the Court seemed pretty firm that it's

25 going to keep that case stayed.  So if it would make you

19

1  more comfortable, we would be willing to dismiss our case in
2  Delaware and do a proposed leadership structure in a
3  stipulation that we can submit to you, all of us together,
4  that you could order, and then you won't have to decide any
5  more of these motions, and we'll just have a clear structure
6  to go forward.

7          THE COURT:  Well, I don't -- I'm -- I wouldn't be
8  worried about your filing an amended complaint if I knew
9  that you could not file one as of right, but I'm not sure
10 that if I were to allow you to intervene -- I guess I could
11 allow you to intervene on condition that you not include in
12 your complaint in intervention a claim against Sieger, but
13 then at that point perhaps you could argue that then you'd
14 have a right to amend as of right, without a motion for
15 leave to amend, and then you could file an amendment to your
16 complaint in intervention, which could include Sieger, and
17 then that would interfere with the plans of the Plaintiffs
18 who are preexisting here.

19         MS. MILLER:  Well, I'm -- I'm willing to agree to
20 give up Amalgamated's right to ever file any claims against
21 Sieger in this court if that's what it takes to have
22 Amalgamating and Levi and Korsinsky to be a part of it, but
23 I guess I wanted to ask your Honor a little bit about the
24 intervention complaint, because it's my understanding that
25 we wouldn't have to file a specific complaint if we're all

20

1  using the complaint that's already gotten over the motion to

2  dismiss.  I believe your Honor had said at an earlier

3  conference that the complaint wasn't really that important

4  anyway after you got over the motion to dismiss.  So if

5  we're just talking about going forward and doing the

6  discovery and, you know, getting this case to trial, then I

7  don't think that's really even a concern that your Honor

8  should have.

9          THE COURT:  Well, I don't really know.  There is a

10 thing called a complaint in intervention.  I have seen them

11 in other cases.  So there is such a thing.

12         MS. MILLER:  Yes.

13         THE COURT:  Maybe you don't need one.  You would

14 certainly at the very least need an amended complaint that

15 would include all of the names of the Plaintiffs.  So if I

16 allowed you to intervene, there would have to be, at the

17 very least, a complaint filed that had your client's name on

18 it.

19         MS. MILLER:  Okay.

20         THE COURT:  Whether it would need anything else,

21 perhaps not, but --

22         MS. MILLER:  Well, perhaps we can --

23         THE COURT:  -- going into the other issue that

24 you've raised is that I don't really see the Court as

25 adjudicating how much work any individual plaintiff's

21

1  attorney does.  At the moment I have appointed two co-lead

2  counsel.  I don't see a reason at the moment to change that.

3  You can't -- everybody can't be co-lead counsel, and I would

4  certainly not be inclined to dictate to anybody how much

5  percentage of work anybody should do or what work anybody

6  should do.  I've never done that.  I've never seen it done,

7  and I'm not inclined to start now.

8       So what I would say is that if you're -- if Amalgamated

9  were allowed to intervene, you would be, I suppose,

10 Amalgamated's attorney, and you would have to work with co-

11 lead counsel, and if you couldn't, I don't know what you

12 would do.  I guess file a motion, and then I would have to

13 see what went wrong I guess.  It all -- I've just never had

14 a problem like this before.  So I don't quite know what I

15 would do, but I do know I wouldn't be telling people what

16 percentage of the case they would get to do or what

17 particular work they would get to do.

18          MS. MILLER:  And, your Honor, that's fine.

19          THE COURT:  And I guess it would sort -- whether I

20 added you as co-lead counsel would depend on how well things

21 went I suppose or why it was necessary, but I -- I wouldn't

22 be inclined to do it unless there was some reason to do it.

23          MS. MILLER:  Okay.  Your Honor, if you want to

24 keep the same structure with the same co-leads, we would be

25 happy to be part of the team working under those two co-

1   leads, and I'm sure we could work very nicely together.

2   I've never had a problem working with Ms. Farmer before.

3   You know, we had a difference in opinion about the Sieger

4   claims, but we were willing to compromise on that. We've

5   compromised on the diversity issue like the other Delaware

6   Plaintiff. So we are happy to join the team, and if that

7   means, you know, us all -- everyone who files joins the team

8   files an amended complaint just putting everyone's names on

9   it, then perhaps that's a way your Honor would like to

10   proceed if you think having it complete with everyone's name

11   on it is important.

12           MS. FARMER: Your Honor, can I just --

13           THE COURT: Can I just have a minute? I want to

14   look at my questions and see if I've asked all of them yet.

15     (Pause.)

16           THE COURT: No. Is there anything else you wanted

17   to say about the intervention then? I mean, I guess the

18   substantive question is is there -- I'm not inclined to

19   grant intervention as of right, and the questions that I

20   have about permissive intervention would be -- well, I guess

21   whether the intervenor's interests are adequately

22   represented by the parties already in the case. So I guess

23   that's the remaining question. There's a question about

24   jurisdiction, whether -- whether there's independent grounds

25   for jurisdiction I guess as long as you don't sue Sieger,

23

1  there are.  The motion is somewhat timely, although I
2  suppose not as timely as it could be.  There are questions
3  of law, in fact, in common I guess.  So the real question is
4  whether existing Plaintiffs and counsel will adequately
5  represent Amalgamated's interest in seeing that McKesson is
6  pursued properly.
7            MS. MILLER:  Well, we, of course, think that if
8  we're part of the team, McKesson's interests will be even
9  more adequately represented because we think we add a lot of
10  value, and we would continue to work hard and make sure that
11  there -- McKesson's interests were adequately represented.
12  I think because the co-lead counsels have made room for
13  everyone else from the Delaware team, we think that those in
14  favor of granting us permission to intervene in this case.
15  We think Amalgamated would be a great asset to the team.
16  It's very dedicated.  It has a large holding here.  So we
17  think it would just improve the team by letting us
18  intervene.
19            MS. FARMER:  Can I just make one more point?
20            THE COURT:  Yes.  You can respond to what counsel
21  said on all of the points.
22            MS. FARMER:  Thank you.  Okay.  Courts still look
23  -- for permissive intervention, courts still look at whether
24  the -- if the intervenor's interests are adequately
25  represented by other parties.  We submit that they are.  We

24

1  think we've demonstrated that we are representing the

2  company well, and I don't think that we need Amalgamated or

3  Levi and Korsinsky in the mix to ensure that everybody's

4  interests are adequately protected.  So to the extent, you

5  know, you can look at permissive intervention, that factor

6  is still considered.

7       And then my --

8            THE COURT:  What -- I didn't hear what you last

9  said.  What was still considered?

10           MS. FARMER:  That factor is still considered,

11  whether the intervenor's interests are adequately protected

12  by the other parties.  We submit that they are, and we don't

13  think that it's necessary to have them intervene in this to

14  protect the interests of McKesson.

15      And my larger concern is it's not that we can't work --

16  we haven't agreed to work with her.  She can't agree to work

17  with eight other firms.

18           THE COURT:  Can't agree to work with?

19           MS. FARMER:  With either other firms.  We can all

20  agree on the structure.  She won't agree to a structure.  If

21  we're forced to work with her, I'm concerned that every

22  issue will be a motion before the Court because we're going

23  to have problems with strategy and --

24           THE COURT:  By "structure," are you referring to

25  the percentage that everyone gets to work?

1          MS. FARMER:  The amount of work --

2          THE COURT:  Or do you want to tell me what --

3          MS. FARMER:  -- the amount of say that they have

4   in the decisions, the amount of work that they get.  They

5   might feel that they're not getting enough work, and

6   there'll be a -- there's been a lot of motions by this firm

7   and from this Court already.  So my concern would be that it

8   would just sort of be outside the interests of this

9   litigation and sort of be something that we'd always be

10  asking the Court to make decisions for us.

11         THE COURT:  Well, don't bother because I won't.

12         MS. FARMER:  I would not like to do that.  So --

13         THE COURT:  Certainly I'm not going to be talking

14  about what percentage of work people do or --

15         MS. FARMER:  Absolutely.

16         THE COURT:  -- what their jobs are.

17         MS. FARMER:  Agreed.

18         THE COURT:  So I don't know what would happen if

19  you couldn't agree on those things, but my -- my concern

20  with Amalgamated is, although it's not a PSLRA case, as I

21  said, and in PSLRA cases I'm required to take the largest

22  shareholder as the plaintiff, Amalgamated is a larger and

23  institutional and experienced shareholder.  So I'm -- I see

24  some argument as to why they perhaps should be included as a

25  co-plaintiff, which is a different question from whether

26

 1  their attorneys get along with everybody.

 2          MS. FARMER:  No, and I understand that, and, you

 3  know, it's not a PSLRA case, and the Court doesn't have to

 4  let them participate.  We've been -- you know, we've made

 5  several offers to let Amalgamated participate and, you know,

 6  be an active Plaintiff here, and the counsel hasn't been

 7  able to agree on our proposal.

 8          THE COURT:  Well, so the offers include other

 9  factors that are --

10          MS. FARMER:  Right, the amount of work, et cetera,

11  that the current counsel would get and, you know, when

12  you've got eight, nine firms, it's hard to promise anybody

13  anything really.

14          THE COURT:  Well, I don't know.

15          MS. MILLER:  Your Honor, I would just like to say

16  that if you do appoint us as part of this structure and say

17  that we can work with them, I will not be coming to you and

18  saying like -- making motions and saying that we couldn't

19  get along.  We've made two motions.  We made one motion to

20  intervene with Ojeda, which you denied, but you protected

21  Ojeda's right to pursue the 220 investigation which was very

22  critical.  Ojeda got the 220 documents, which everyone else

23  eventually got, but Ojeda worked really hard to get those,

24  and if we're part of this structure, I'm not going to be

25  coming to you.  I'm going to listen.  If you tell me that

1  I'm part of a structure and these are co-lead people, then
2  I'm going to listen to them, you know.  I just need to know
3  that we're going to be part of the team.  They've invited
4  us.  They've said that we can be part of the team.  So I'd
5  like it to be official, and I'd like to join the team.
6  Amalgamated, you know, wants to be a lead Plaintiff.  It's
7  shown that it can be a lead Plaintiff if the Court thinks
8  that that's --
9          THE COURT:  We're not having any lead Plaintiffs.
10 We don't have one now, and we're going to --
11         MS. MILLER:  Okay.
12         THE COURT:  They can -- if I allow permissive
13 intervention, they will be a Plaintiff along with -- so far
14 we've only got the two others.  If there's more people who
15 want to be Plaintiffs, there'll have to be a stipulation or
16 a motion to have more intervenors, but at the moment we've
17 only got two Plaintiffs, and neither one of them is the lead
18 Plaintiff.
19         MS. MILLER:  Okay.  Well, we are perfectly happy
20 to just be part of the team, and that's what --
21         THE COURT:  Okay.
22         MS. MILLER:  -- our intervention motion is about.
23 They're apparently happy to have us be part of the team.  So
24 I'm sure we will work everything out if you order us to work
25 together.

28

1          MS. FARMER:  We won't have a problem with it.

2          MR. FLEMING:  Your Honor, Joel Fleming with Block

3    and Leviton.  I just -- just want to address the question

4    about Amalgamated and why institutional investors are

5    important.  My firm represents Amalgamated and has

6    represented Amalgamated in other cases.  I believe the Grant

7    and Eisenhoffer (phonetic) firm from Delaware represents

8    Amalgamated in I think the Facebook -- the Facebook Class C

9    litigation and others.  So the reason that the PSLRA

10   prioritizes institutional investors, if you read the

11   legislative history, if you read Professor Weiss, who was

12   sort of the driver of this, is because they do a good job of

13   selecting counsel.  That's -- the selection of counsel is

14   the primary reason that the PSLRA prioritizes institutional

15   investors.  They run an RFP process.

16       You have firms on the block of eight that represent

17   institutional investors all the time, including Amalgamated.

18   So I think the Court can have comfort that the reason

19   institutional investors are important in selection of

20   counsel, you have firms that represent institutional

21   investors, including Amalgamated.

22          MS. MILLER:  I would just like to say that

23   Amalgamated did pick my firm to do this case, and it's

24   important to Amalgamated that my firm, you know, continue to

25   represent them, but my firm does not need to have a specific

1  position to be able to do that representation, as long as it

2  is included in the litigation team going forward.

3         THE COURT:  Well, I'm going to allow Amalgamated

4  to intervene as a permissive joinder in the case, as a co-

5  Plaintiff with the other two Plaintiffs that we have.  I

6  hope I don't regret it.

7         MS. MILLER:  You won't.

8         THE COURT:  I'll leave it to you as to whether you

9  -- well, I guess you'll have to file a motion -- not a

10 motion but an amended complaint that will include the name

11 -- their name as an additional Plaintiff, and if you have

12 other Plaintiffs you want to add at that point, that might

13 be a convenient time for you to submit a stipulation adding

14 other co-Plaintiffs, and there won't be any lead Plaintiff,

15 and the people I've already appointed to be co-lead counsel

16 will continue to be co-lead counsel, but without any

17 particular portfolio, at least by me.

18     Does that resolve what's before us now?

19         MS. FARMER:  I believe so.  Is the -- is the Court

20 denying her request for specific participation in the

21 litigation --

22         THE COURT:  Oh, yes.

23         MS. FARMER:  -- and percentages of work?

24         THE COURT:  Oh, totally.

25         MS. FARMER:  Thank you.

30

1          MS. MILLER:  Your Honor, but Levi and Korsinsky is

2    still allowed to be representing Amalgamated and going

3    forward as part of the case, correct, as long as we work it

4    out on our own?

5          THE COURT:  Correct.

6          MS. MILLER:  Okay.  Thank you, your Honor.

7          THE COURT:  You can represent Amalgamated as long

8    as Amalgamated wants you to.

9          MS. MILLER:  Yeah.  Okay.  I just --

10          THE COURT:  They're the client.

11          MS. MILLER:  -- wanted to make sure.

12          THE COURT:  You're not filing the other amended

13    complaint that we had talked about.  Do we have all of our

14    other dates set?  When are you next coming in?

15          MS. FARMER:  We don't have any other dates set,

16    your Honor.

17          THE COURT:  You haven't had a CMC yet?

18          MS. FARMER:  We had a CMC in October, and then we

19    only set it up until the motion to dismiss hearing.  So we

20    don't have -- we requested a Rule 26(f) conference with the

21    Defendants, and we were hoping to sort of move things

22    forward.  We haven't had a response back from that.

23          THE COURT:  Okay.  Well, here's a CMC.  When do

24    you want it, 30 days, 60 days?

25          UNIDENTIFIED SPEAKER:  Sixty days is fine.

1          MS. MILLER:  Yeah, and that's --

2          UNIDENTIFIED SPEAKER:  Your Honor, as I said

3    earlier, we still have individuals who need counsel, and so

4    they need to participate in this.  As I mentioned at the

5    last hearing, the company may -- the board may set up an

6    SLC, Special Litigation Committee.  So there are other

7    things that may happen that we will need to discuss with new

8    counsel, with the Court maybe, with Plaintiffs and however

9    many Plaintiffs' counsel we have to discuss it with.  Two, I

10   hope it's two, but --

11         THE COURT:  All right.

12         UNIDENTIFIED SPEAKER:  Two or five or seven or --

13         THE COURT:  All right.  But we need dates --

14         UNIDENTIFIED SPEAKER:  Sixty days is fine.

15         THE COURT:  -- and one of the dates is to set a

16   CMC, and if everybody can do what they need to do in 60

17   days, we'll set a CMC in about 60 days.

18         UNIDENTIFIED SPEAKER:  Your Honor, we can do 60

19   days as well.

20         MS. FARMER:  And, your Honor, I would -- I would

21   propose we file our amended complaint prior to that date.

22         THE COURT:  That would be a good idea.

23         MS. FARMER:  Okay.  We can do 30 or 45 days,

24   whatever the Court prefers.

25         THE COURT:  Oh, I guess we'll have to get the

1 Defendants to stipulate since you can't file an amended

2 complaint as of right.  You'll have to include them in a

3 stipulation adding additional Plaintiffs.  If that doesn't

4 happen, and -- I don't know if you can tell me how you'll do

5 that.  If they don't, you'll need to move for leave.

6         MS. FARMER:  Okay.

7         THE COURT:  You pretty much have the leave to add

8 Amalgamated, but if they don't agree, then you'd have to

9 move for leave to add the other co-Plaintiffs.  Hopefully

10 they'll agree since it doesn't really matter I don't think.

11         UNIDENTIFIED SPEAKER:  I'll have to talk to new

12 counsel.  I can't --

13         THE COURT:  September -- am I back on September

14 18th?  Okay.  So we'll have a CMC on September 18th at 2:30,

15 and the standing order for whatever you file in your CMC

16 statements and whenever you file them is written down

17 somewhere on the Web page, and you can find it out.  I've

18 forgot what it is.  Okay.

19         MS. FARMER:  Okay.  Thank you, your Honor.

20         MS. MILLER:  Thank you, your Honor.

21         ALL:  Thank you, your Honor.

22      (Proceedings adjourned at 3:12 p.m.)

23

24

25

33

<u>CERTIFICATE OF TRANSCRIBER</u>

1
2
3      I certify that the foregoing is a true and correct
4  transcript, to the best of my ability, of the above pages of
5  the official electronic sound recording provided to me by
6  the U.S. District Court, Northern District of California, of
7  the proceedings taken on the date and time previously stated
8  in the above matter.
9      I further certify that I am neither counsel for,
10 related to, nor employed by any of the parties to the action
11 in which this hearing was taken; and, further, that I am not
12 financially nor otherwise interested in the outcome of the
13 action.

16       Echo Reporting, Inc., Transcriber
17          Tuesday, July 24, 2018

*Echo Reporting, Inc.*