Reed R. Kathrein (139304)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
reed@hbsslaw.com

James S. Notis (admitted *Pro Hac Vice*)
Meagan Farmer (admitted *Pro Hac Vice*)
GARDY & NOTIS, LLP
Tower 56
126 East 56th Street, 8th Floor
New York, NY 10022
Telephone: (212) 905-0509
Facsimile: (212) 905-0508
jnotis@gardylaw.com
mfarmer@gardylaw.com

*Co-Lead Counsel for Plaintiffs*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| IN RE MCKESSON CORPORATION DERIVATIVE LITIGATION | Case No. 4:17-cv-1850-CW<br><br>STIPULATION AND AGREEMENT OF COMPROMISE, SETTLEMENT, AND RELEASE |

This Stipulation and Agreement of Compromise, Settlement, and Release dated as of December 11, 2019 (the "Stipulation") is entered into by and among (a) plaintiffs and intervening plaintiffs in the above-captioned stockholder derivative action (the "California Action") pending in the United States District Court for the Northern District of California, Oakland Division (the "California Court" or "Court"), styled as *In re McKesson Corp. Derivative Litigation*, Case No. 4:17-cv-01850-CW, Eli Inzlicht; Vladimir Gusinsky, as Trustee for the Vladimir Gusinsky Living Trust; Chaile Steinberg; Michael Berent, Trustee of the Police & Fire Retirement System City of Detroit ("Detroit P&F"); Amalgamated Bank, as Trustee for Longview Largecap 500 Index Fund and Longview Largecap 500 Index VEBA Fund ("Amalgamated") (collectively, the "California Plaintiffs"); (b) plaintiffs in the stockholder derivative action pending in the Court of Chancery of the State of Delaware (the "Delaware Court"), styled as *In re McKesson Corp. Stockholder Derivative Litigation*, Consol. C.A. No. 2017-0736-SG (the "Delaware Action"), Katielou Greene and Charles Ojeda (collectively, the "Delaware Plaintiffs" and, together with the California Plaintiffs, "Plaintiffs"); (c) current and former defendants in the California Action and/or the Delaware Action, Andy Bryant; Wayne A. Budd; John Hammergren; M. Christine Jacobs; Marie L. Knowles; Edward Mueller; Donald Knauss; Susan Salka; N. Anthony Coles; Alton Irby III; David Lawrence; Jane Shaw; Laureen Seeger; Paul Julian; and Mark Walchirk

(collectively, "Defendants"); (d) the Special Litigation Committee formed by the Board of Directors of Nominal Defendant McKesson Corporation (the "SLC"); and (e) Nominal Defendant McKesson Corporation ("Nominal Defendant," "McKesson," or the "Company" and, together with Plaintiffs, Defendants, and the SLC, the "Parties"), by and through their respective undersigned counsel. Subject to the approval of the Court and the terms and conditions expressly provided herein, this Stipulation is intended to fully, finally, and forever settle the Settled Plaintiffs' Claims as against the Released Defendants' Parties.

WHEREAS, on May 2, 2008, McKesson entered into a settlement agreement with the U.S. Department of Justice ("DOJ"), through six different United States Attorney's offices (collectively, the "2008 Settlement"), to settle civil and administrative claims relating to the Company's distribution of controlled substances; and

WHEREAS, in connection with the 2008 Settlement, McKesson agreed to pay $13.25 million in civil penalties and temporarily suspend its license to distribute certain Schedule III controlled substances at two of its distribution centers; and

WHEREAS, as a condition of the 2008 Settlement, McKesson was required to establish and implement a compliance program—known as the "Controlled Substances Monitoring Program" or "CSMP"—designed to detect and prevent

diversion of controlled substances as required under applicable Drug Enforcement Agency ("DEA") regulations; and

WHEREAS, on January 17, 2017, McKesson and the DOJ, on behalf of the DEA, announced a settlement agreement whereby McKesson would pay $150 million to settle potential administrative and civil claims related to investigations about the Company's suspicious order reporting for controlled substances and alleged non-compliance with the 2008 Settlement (the "2017 Settlement"); and

WHEREAS, McKesson agreed in connection with the 2017 Settlement to suspend sales of controlled substances from certain of its distribution centers and to implement certain compliance procedures and establish certain internal controls; and

WHEREAS, derivative actions were filed both in the California Court and the Delaware Court, and were simultaneously proceeding in both Courts for a period of time; and

CALIFORNIA COURT PROCEEDINGS

WHEREAS, on January 31, 2017, a McKesson stockholder commenced a shareholder derivative action captioned as *Silverman v. Bryant, et al.*, Case No. 4:17-cv-00494-CW (the "Silverman Action") against Defendants Bryant, Budd, Hammergren, Jacobs, Knowles, Mueller, and Nominal Defendant McKesson asserting, among other things, that Defendants had breached their fiduciary duties

by failing to implement and oversee the Company's operations concerning the sale and shipment of opioid drugs; and

WHEREAS, on April 3, 2017, Plaintiff Inzlicht commenced a derivative action captioned as *Inzlicht v. Bryant, et al.*, Case No. 4:17-cv-01850-CW (the "Inzlicht Action") asserting claims similar to the Silverman Action; and

WHEREAS, on May 9, 2017, Inzlicht filed a motion to consolidate the Silverman Action and Inzlicht Action and to appoint lead counsel; and

WHEREAS, on May 22, 2017, Silverman filed a motion for voluntary dismissal of the Silverman Action, which the Court granted on June 6, 2017; and

WHEREAS, on July 26, 2017, Plaintiff Gusinsky, who had obtained books and records from McKesson through a pre-litigation demand made pursuant to Section 220 of the Delaware General Corporation Law, filed a derivative action captioned as *Gusinsky v. Bryant, et al.*, Case No. 5:17-cv-4248-SVK (the "Gusinsky Action") asserting claims similar to the Inzlicht Action; and

WHEREAS, on October 9, 2017, the Court entered an order relating the Inzlicht Action and the Gusinky Action and consolidating the Gusinsky Action into the Inzlicht Action (hereafter, the "California Action"); and

WHEREAS, on December 1, 2017, Plaintiffs Inzlicht and Gusinsky filed a motion to appoint Hagens Berman Sobol Shapiro LLP and Gardy & Notis LLP as

co-lead counsel for all derivative plaintiffs in the California Action (the "Lead Counsel Motion"); and

WHEREAS, on December 19, 2017, the Court granted the Lead Counsel Motion; and

WHEREAS, on December 22, 2017, Defendants Bryant, Budd, Hammergren, Jacobs, Knowles, Mueller, and Nominal Defendant McKesson filed a motion to stay the California Action in favor of the pending actions in the Delaware Court (the "Motion to Stay"); and

WHEREAS, on December 29, 2017, Plaintiffs Inzlicht and Gusinsky filed a verified shareholder derivative consolidated amended complaint in the California Action (the "Amended Complaint"); and

WHEREAS, on January 5, 2018, McKesson and the Defendants named in the Amended Complaint filed motions to dismiss the Amended Complaint (collectively the "Motions to Dismiss"); and

WHEREAS, the parties fully briefed the Motions to Dismiss and the Motion to Stay, and the Court held a hearing on the motions on April 24, 2018; and

WHEREAS, on May 14, 2018, the Court issued an order denying the Motion to Stay and denying in part the Motions to Dismiss (the "May 14, 2018 Order"), in which order the Court: (i) dismissed Plaintiffs' claims for insider trading, dismissed the claim for breach of fiduciary duty against Defendant Coles, and dismissed all

6

claims against Defendants Knauss and Salka; and (ii) held, *inter alia*, that with respect to other Defendants named in the Amended Complaint, Plaintiffs (a) adequately pled demand futility, (b) sufficiently alleged a substantial likelihood of director oversight liability based on conscious failure to oversee the CSMP, and (c) adequately pled a claim for waste of corporate assets; and

DELAWARE COURT PROCEEDINGS

WHEREAS, on October 17, 2017, Plaintiff Steinberg, who had obtained books and records from McKesson through a pre-litigation demand made pursuant to Section 220 of the Delaware General Corporation Law (the "Steinberg 220 Documents"), filed a derivative action captioned as *Steinberg v. Bryant et al.*, C.A. No. 2017-0736-SG (the "Steinberg Action") in the Delaware Court asserting claims similar to those raised in the California Action; and

WHEREAS, Plaintiffs propounded Requests for the Production of Documents Directed to All Defendants in the Delaware Action on October 26, 2017, to which Defendants served responses and objections on December 4, 2017; and

WHEREAS, on November 7, 2017, Defendants Bryant, Budd, Hammergren, Irby, Jacobs, Knowles, Lawrence, Mueller, Seeger, Shaw, and Nominal Defendant McKesson filed a motion to dismiss the verified shareholder derivative complaint filed in the Steinberg Action (the "Delaware Motion to Dismiss"); and

WHEREAS, on November 8, 2017, Plaintiff Detroit P&F, which had negotiated access to and received the Steinberg 220 Documents, filed a derivative action captioned as *Detroit P&F v. Bryant et al.*, C.A. No. 2017-0803-SG (the "Detroit P&F Action") in the Delaware Court asserting claims similar to those raised in the Steinberg Action; and

WHEREAS, on December 8, 2017, Plaintiffs Amalgamated Bank and Ojeda filed a derivative action in the Delaware Court captioned as *Amalgamated Bank et al. v. Bryant et al.*, C.A. No. 2017-0881-SG (the "Amalgamated Action") asserting claims similar to those raised in the Steinberg Action and Detroit P&F Action; and

WHEREAS, the Steinberg Action, Detroit P&F Action, and the Amalgamated Action were consolidated by order of the Delaware Court on January 12, 2018, under the caption *In re McKesson Corp. Stockholder Derivative Litigation*, Consol. C.A. No. 2017-0736-SG (the "Delaware Action", and collectively with the California Action, the "Derivative Actions" or "Actions"); and

WHEREAS, on January 18, 2018, Defendants named in the Delaware Action filed their opening brief in support of the Delaware Motion to Dismiss; and

WHEREAS, on January 18, 2018, Plaintiff Greene filed a derivative action in the Delaware Court captioned as *Greene v. Bryant, et al.*, C.A. No. 2018-0042-SG (the "Greene Action") asserting claims similar to those raised in the Steinberg Action, the Detroit P&F Action, and the Amalgamated Action; and

WHEREAS, the Greene Action was consolidated into the Delaware Action on January 23, 2018; and

WHEREAS, on February 14, 2018, Plaintiffs Steinberg, Greene, Detroit P&F, Amalgamated Bank, and Ojeda filed their brief in opposition to the Delaware Motion to Dismiss; and

WHEREAS, on February 28, 2018, Defendants named in the Delaware Action filed their reply brief in support of the Delaware Motion to Dismiss; and

WHEREAS, on March 7, 2018, the parties to the Delaware Action conducted oral argument before the Delaware Court regarding the Delaware Motion to Dismiss; and

WHEREAS, Plaintiffs submitted to the Delaware Court the California Court's decision on the Motions to Dismiss and the Motion to Stay the California Action; and

WHEREAS, on May 25, 2018, the Delaware Court stayed the Delaware Action in light of the May 14, 2018 Order, subject to any motion that any party might file to lift the stay; and

PARTIES LITIGATE THE ACTIONS IN THE CALIFORNIA COURT

WHEREAS, in response to a stockholder query, on March 10, 2017, McKesson's board of directors (the "Board") appointed a Special Review Committee ("SRC") comprised of directors Donald Knauss, N. Anthony Coles, and

Susan Salka, to investigate senior management's and the Board's oversight of compliance with the Company's legal and regulatory obligations relating to the distribution of controlled substances; and

WHEREAS, on April 20, 2018, the Board released a response to the stockholder query that included a summary of the results of the SRC's investigation; and

WHEREAS, on June 1, 2018, Plaintiffs Steinberg and Detroit P&F notified the Delaware Court that they would join the California Action; and

WHEREAS, on June 7, 2018, Plaintiffs Amalgamated Bank and Ojeda filed in the Court a motion to intervene, appoint Amalgamated Bank and Ojeda co-lead plaintiffs, and direct Plaintiffs Inzlicht and Gusinsky and their counsel to coordinate litigation efforts with Amalgamated Bank and Ojeda in the proceedings (the "Motion to Intervene") in the California Action; and

WHEREAS, on June 6, 2018, McKesson moved for leave to file a motion for partial reconsideration of the Court's decision on the motion to dismiss the California Action; and

WHEREAS, on June 21, 2018, the Court denied McKesson's motion for leave to file a motion for partial reconsideration of the Court's decision on the motion to dismiss; and

WHEREAS, on July 25, 2018, the Board appointed a Special Litigation Committee ("SLC") comprised of director Bradley E. Lerman ("Lerman") to investigate Plaintiffs' claims; and

WHEREAS, on July 27, 2018, the Court denied Ojeda's request to intervene as-of-right, granted Amalgamated Bank's motion for permissive intervention, and otherwise denied the Motion to Intervene; and

WHEREAS, Plaintiffs propounded their First Request for the Production of Documents Directed to All Defendants in the California Action on September 6, 2018, to which (i) McKesson, (ii) Defendant Hammergren, and (iii) current and former director defendants each served responses and objections on October 15, 2018; and

WHEREAS, on September 12, 2018, Plaintiffs filed in the Court a verified shareholder derivative second consolidated amended complaint in which Steinberg, Detroit P&F, and Amalgamated joined as Plaintiffs (the "California Complaint"); and

WHEREAS, the California Complaint alleged, among other things, that the Defendants named therein breached their fiduciary duties to McKesson by failing to maintain effective oversight and controls in connection with McKesson's distribution of controlled substances, and further alleged that as a result of such alleged breaches of fiduciary duty, McKesson has been or will be exposed to

significant actual and potential losses and expenses, including but not limited to (i) a $150 million civil penalty agreed to as part of the 2017 Settlement; (ii) legal expenses relating to civil litigation, congressional investigations, and regulatory investigations; and (iii) judgments or settlements paid (or potentially to be paid in the future) in connection with various civil litigation matters, including lawsuits and investigations by various state Attorneys General and a class action lawsuit filed in the United States District Court for the Northern District of Ohio (the "MDL Action") (*see* California Complaint ¶¶ 8, 257-63); and

WHEREAS, on September 17, 2018, the SLC filed a motion to stay proceedings in the California Court to permit it to conduct an independent investigation (the "SLC Motion to Stay"); and

WHEREAS, on October 5, 2018, Plaintiffs filed a memorandum of law in opposition to the SLC Motion to Stay; and

WHEREAS, on October 17, 2018, the SLC filed a reply brief in support of the SLC Motion to Stay; and

WHEREAS, on November 2, 2018, Defendants remaining in the California Action filed answers and affirmative defenses to the California Complaint (collectively, the "Answers"); and

WHEREAS, the Court held a hearing on the SLC Motion to Stay on November 6, 2018; and

WHEREAS, on November 13, 2018, the Court granted in part and denied in part the SLC Motion to Stay; and

WHEREAS, Plaintiffs propounded their Second Request for the Production of Documents Directed to All Defendants in the California Action on March 12, 2019, to which (i) Defendant Hammergren, and (ii) current and former director Defendants each served responses and objections on April 11, 2019; and

WHEREAS, Plaintiffs issued a subpoena to non-party Healthcare Distribution Alliance on March 20, 2019; and

WHEREAS, Plaintiffs propounded their First Set of Interrogatories Directed to All Defendants in the California Action on March 22, 2019, to which Defendants served responses and objections on May 22, 2019, Defendant Hammergren served supplemental responses and objections on July 31, 2019, Defendants Jacobs, Lawrence, Mueller, Shaw, Knowles, Budd, Bryant, and Irby served supplemental responses and objections on August 28, 2019, and Defendant Coles served supplemental responses and objections on September 17, 2019; and

WHEREAS, Plaintiffs propounded their Third Request for the Production of Documents Directed to All Defendants in the California Action on May 14, 2019, to which Defendants served responses and objections on June 13, 2019; and

WHEREAS, Plaintiffs propounded their Second Set of Interrogatories Directed to All Defendants in the California Action on May 14, 2019, to which Defendants served responses and objections on June 27, 2019; and

WHEREAS, Plaintiffs issued a subpoena to non-party Global Healthcare Exchange LLC on May 29, 2019; and

WHEREAS, Plaintiffs issued a subpoena to non-party Medtronic plc on June 19, 2019; and

WHEREAS, Defendant Jacobs propounded her First Set of Interrogatories Directed to All Plaintiffs in the California Action on July 3, 2019, to which Plaintiffs served responses and objections on September 3, 2019; and

WHEREAS, in Plaintiffs' responses to Defendant Jacobs's First Set of Interrogatories Directed to All Plaintiffs, Plaintiffs asserted that damages resulting from Defendants' alleged conduct would include "damages against McKesson in the MDL [Action] and related civil actions, costs related to litigation and additional compliance, the 2017 fine and costs related thereto, the foundation, and damages relating to McKesson's reputation"; and

WHEREAS, Defendant Knowles propounded her First Set of Interrogatories Directed to All Plaintiffs in the California Action on July 3, 2019, to which Plaintiffs served responses and objections on September 3, 2019; and

WHEREAS, Defendant Hammergren propounded his First Request for the Production of Documents Directed to All Plaintiffs in the California Action on August 20, 2019, to which Plaintiffs served responses and objections on September 19, 2019; and

WHEREAS, Defendant Hammergren propounded his First Set of Interrogatories Directed to All Plaintiffs in the California Action on August 20, 2019, to which Plaintiffs served responses and objections on September 19, 2019; and

WHEREAS, Defendant Hammergren propounded his Second Request for the Production of Documents Directed to All Plaintiffs in the California Action on August 27, 2019, to which Plaintiffs served responses and objections on September 19, 2019; and

WHEREAS, following the Court's decision on the SLC Motion to Stay, Plaintiffs obtained, reviewed, and analyzed the discovery record in the MDL Action, including more than 700,000 pages of documents, the transcripts of the depositions of forty-four fact witnesses, twenty-four expert reports, and five supplemental expert reports (the "MDL Discovery Record"); and

WHEREAS, in addition to the MDL Discovery Record, Plaintiffs obtained and reviewed more than 300,000 additional pages of documents (including more than 200,000 pages produced by McKesson and certain Defendants in response to

document requests served by Plaintiffs and more than 100,000 pages of documents produced by third parties in response to document subpoenas served by Plaintiffs) pursuant to the above-described Document Requests; and

## THE PARTIES CONDUCT ARM'S-LENGTH NEGOTIATIONS TO RESOLVE THE ACTIONS

WHEREAS, on March 12, 2019, counsel for the Parties, the SLC, and the Defendants' directors and officers liability insurers ("D&O Insurers") participated in a mediation session with Robert Meyer ("Meyer");

WHEREAS, on April 16, 2019, counsel for the Parties and the SLC participated in an in-person settlement meeting to discuss certain proposed governance reforms; and

WHEREAS, on April 26, 2019, counsel for the Parties, the SLC, and the D&O Insurers participated in a second mediation session with Meyer; and

WHEREAS, on July 10, 2019, at an in-person meeting, counsel for Plaintiffs and the SLC (including Lerman) discussed, *inter alia*, the litigation and settlement-related matters; and

WHEREAS, on July 17, 2019, counsel for Plaintiffs met with counsel for McKesson, Defendants, and the SLC to discuss various governance reforms being considered as part of a potential settlement; and

WHEREAS, on August 8, 2019, counsel for the Parties, the SLC, and the D&O Insurers participated in a third mediation session with Meyer, the Hon. Daniel

Weinstein (Ret.) ("Judge Weinstein"), and Jed D. Melnick ("Melnick") (together with Meyer and Judge Weinstein, the "Mediators"); and

WHEREAS, the mediation efforts actively continued telephonically for many weeks following the August mediation session; and

WHEREAS, following this exhaustive mediation process, the Mediators made a mediators' proposal to the Parties, the SLC, and the D&O Insurers (the "Mediators' Recommendation"); and

WHEREAS, as a result of the extensive, arm's-length negotiations among the Parties and the D&O Insurers, and following the Parties' review and consideration of the Mediators' Recommendation, the Parties reached an agreement in principle to settle the Actions that was memorialized in a binding term sheet (the "Term Sheet") executed on November 22, 2019; and

WHEREAS, the Term Sheet set forth, among other things, the Parties' agreement to settle and release all claims asserted in the Actions in return for a cash payment of $175,000,000 (the "Cash Consideration") on behalf of Defendants to the Company, and certain corporate governance reforms that McKesson has agreed to implement in connection with the Settlement, as set forth in Exhibit A hereto (the "Governance Consideration"); and

WHEREAS, this Stipulation (together with the exhibits hereto), which has been duly executed by the undersigned signatories on behalf of their respective

clients, reflects the final and binding agreement by and among the Parties and supersedes the Term Sheet; and

WHEREAS, in connection with the negotiations leading to the proposed Settlement set forth in this Stipulation, counsel for the Parties did not discuss the appropriateness or amount of any application by Plaintiffs' Counsel for an award of attorneys' fees and expenses; and

WHEREAS, Plaintiffs brought their claims in good faith and continue to believe that their claims have merit but, based upon Plaintiffs' and Plaintiffs' Counsel's investigation and prosecution of the Actions, Plaintiffs and Plaintiffs' Counsel have concluded that the terms and conditions of this Stipulation are fair, reasonable, and adequate to the Company and its stockholders; and

WHEREAS, based on Plaintiffs' direct oversight of the prosecution of this matter and with the advice of their counsel, Plaintiffs have agreed to settle and release the claims asserted in the Actions pursuant to the terms and provisions of this Stipulation, after considering (a) the substantial financial benefit and corporate governance protections provided under the proposed Settlement; (b) the uncertain outcome, inherent delays, and significant risks of continued litigation; and (c) the desirability of permitting the Settlement to be consummated as provided by the terms of this Stipulation; and

WHEREAS, Defendants have denied, and continue to deny, that they committed, or aided and abetted in the commission of, any violation of law or duty or engaged in any wrongful acts whatsoever, including specifically those alleged in the Actions, and expressly maintain that they have complied with their statutory, fiduciary, and other legal duties, and that at all relevant times they acted in good faith and in a manner they reasonably believed to be in the best interests of McKesson and its stockholders; and

WHEREAS, Defendants are entering into this Stipulation and the Settlement to eliminate the burden, expense, and uncertainties inherent in further litigation; and

WHEREAS, the SLC believes that this Stipulation and the Settlement are in the best interests of McKesson; and

WHEREAS, each of the Parties recognizes and acknowledges, however, that the Actions have been initiated, filed, and prosecuted by Plaintiffs in good faith and defended by Defendants in good faith, that the Actions are being voluntarily settled with the advice of counsel, and that the terms of the Settlement are fair, reasonable, and adequate.

**NOW THEREFORE, IT IS STIPULATED AND AGREED**, by and among the Parties, by and through their respective undersigned counsel, in consideration of the benefits flowing from the Settlement, that all Settled Claims (as defined below) shall be and hereby are fully and finally settled, compromised, and

19

released, and that the claims against Defendants in the Derivative Actions shall be dismissed with prejudice, upon and subject to the terms and conditions of this Stipulation, as follows:

## CERTAIN DEFINITIONS

1.     As used in this Stipulation and all exhibits attached hereto and made a part hereof, the following capitalized terms shall have the following meanings:

(a)     "Actions" or "Derivative Actions" means the California Action and the Delaware Action.

(b)     "California Action" means the stockholder derivative action captioned *In re McKesson Corporation Derivative Litigation*, No. 4:17-cv-01850-CW, pending in the California Court.

(c)     "California Complaint" means the Verified Shareholder Derivative Second Consolidated Amended Complaint dated September 12, 2018, filed in the California Action.

(d)     "California Court" or "Court" means the United States District Court for the Northern District of California, Oakland Division.

(e)     "California Plaintiffs" means Eli Inzlicht; Vladimir Gusinsky, as Trustee for the Vladimir Gusinsky Living Trust; Chaile Steinberg; Michael Berent, Trustee of the Police & Fire Retirement System City of Detroit; and Amalgamated

Bank, as Trustee for Longview Largecap 500 Index Fund and Longview Largecap 500 Index VEBA Fund.

   (f) "Cash Consideration" means $175,000,000 in cash.

   (g) "Cash Settlement Fund" means the Cash Consideration plus any interest earned thereon.

   (h) "Claims" means all manner of claims, demands, rights, liabilities, losses, obligations, duties, damages, costs, debts, expenses, interest, penalties, sanctions, fees, attorneys' fees, actions, potential actions, causes of action, suits, agreements, judgments, decrees, matters, issues, and controversies of any kind, nature, or description whatsoever, disclosed or undisclosed, accrued or unaccrued, apparent or not apparent, foreseen or unforeseen, matured or not matured, suspected or unsuspected, liquidated or not liquidated, fixed or contingent, including known claims and Unknown Claims, whether based on state, local, foreign, federal, statutory, regulatory, common, or other law or rule.

   (i) "Complaints" means the California Complaint and the Delaware Complaint.

   (j) "Defendants" means the following current and former defendants in the California Action and/or the Delaware Action:  Andy Bryant, Wayne A. Budd, John Hammergren, M. Christine Jacobs, Marie L. Knowles,

Edward Mueller, Donald Knauss, Susan Salka, N. Anthony Coles, Alton Irby III, David Lawrence, Jane Shaw, Laureen Seeger, Paul Julian, and Mark Walchirk.

(k)    "Defendants' Counsel" means the law firms of Orrick, Herrington & Sutcliffe LLP, counsel for Defendants Andy D. Bryant, Wayne A. Budd, N. Anthony Coles, Alton Irby III, M. Christine Jacobs, Donald Knauss, Marie L. Knowles, David M. Lawrence, Edward A. Mueller, Jane E. Shaw, Susan Salka, and Laureen Seeger; Munger, Tolles & Olson LLP, counsel for Defendant John H. Hammergren; and Kane+Kimball LLP, counsel for Defendants Paul Julian and Mark Walchirk.

(l)    "Delaware Action" means the stockholder derivative action captioned *In re McKesson Corp. Stockholder Derivative Litigation*, Consol. C.A. No. 2017-0736-SG, pending in the Delaware Court.

(m)    "Delaware Complaint" means the Verified Shareholder Derivative Complaint, dated October 17, 2017, filed in the Delaware Action in the case captioned *Chaile Steinberg v. Bryant, et. al.*, C.A. No. 2017-0736-SG, and designated the operative complaint in the Delaware Action.

(n)    "Delaware Court" means the Court of Chancery of the State of Delaware.

(o)    "Delaware Plaintiffs" means Katielou Greene and Charles Ojeda.

22

(p)    "Derivative Escrow Account" means an account maintained at Citibank, N.A. wherein the Cash Consideration shall be deposited and held in escrow.

(q)    "Derivative Escrow Agent" means Citibank, N.A.

(r)    "Effective Date" with respect to the Settlement means the first date by which all of the events and conditions specified in paragraph 25 of this Stipulation have been met and have occurred or have been waived.

(s)    "Escrow Agreement" means the agreement among Plaintiffs' Lead Counsel, McKesson, and the Derivative Escrow Agent setting forth the terms under which the Derivative Escrow Agent shall maintain the Derivative Escrow Account.

(t)    "Final" with respect to the Judgment or any other court order means:  (i) if no appeal is filed, the expiration date of the time for filing or noticing of any appeal of the Judgment or order; or (ii) if there is an appeal from the Judgment or order, (a) the date of final dismissal of all such appeals, or the final dismissal of any proceeding on *certiorari* or otherwise, or (b) the date the Judgment or order is finally affirmed on appeal, the expiration of the time to file a petition for a writ of *certiorari* or other form of review, or the denial of a writ of certiorari or other form of review, and, if certiorari or other form of review is granted, the date of final affirmance following review pursuant to that grant.  However, any appeal or

proceeding seeking subsequent judicial review pertaining solely to an order issued with respect to attorneys' fees or expenses shall not in any way delay or preclude the Judgment from becoming Final.

(u)    "Governance Consideration" means the governance provisions identified in Exhibit A hereto.

(v)    "Judgment" means the final judgment, substantially in the form attached hereto as Exhibit C, to be entered by the California Court approving the Settlement.

(w)    "McKesson," "Nominal Defendant," or the "Company" means McKesson Corporation.

(x)    "McKesson's Counsel" means the law firms of Morrison & Foerster LLP and Morris, Nichols, Arsht & Tunnell LLP.

(y)    "Notice" means the Notice of Pendency and Proposed Settlement of Stockholder Derivative Actions, substantially in the form attached hereto as Exhibit B-1.

(z)    "Notice Costs" means all costs, fees, and expenses related to providing notice of the Settlement to Company stockholders.

(aa)    "Parties" means Plaintiffs, Defendants, the SLC, and the Company.

(bb)  "Plaintiffs" means the California Plaintiffs and the Delaware Plaintiffs.

(cc)  "Plaintiffs' Counsel" means the law firms of Hagens Berman Sobol Shapiro LLP; Gardy & Notis, LLP; Block & Leviton LLP; Bernstein Litowitz Berger & Grossmann LLP; Grant & Eisenhofer P.A.; HGT Law; Safirstein Metcalf LLP; and Levi & Korsinsky, LLP.

(dd)  "Plaintiffs' Lead Counsel" means the law firms of Hagens Berman Sobol Shapiro LLP and Gardy & Notis, LLP.

(ee)  "Preliminary Approval Order" means the order, substantially in the form attached hereto as Exhibit B, to be entered by the Court, preliminarily approving the Settlement, scheduling the Settlement Fairness Hearing, and directing that notice of the Settlement be provided to Company stockholders.

(ff)  "Released Defendants' Parties" means Defendants, the Company, and any entity in which the Company has a controlling interest, as well as their respective current and former parents, affiliates, subsidiaries, officers, directors, agents, successors, predecessors, assigns, assignees, partnerships, partners, committees, joint ventures, trustees, trusts, employees, immediate family members, insurers and reinsurers (in their capacities as such), consultants, experts, and attorneys.

(gg)   "Released Parties" means the Released Defendants' Parties and the Released Plaintiffs' Parties.

(hh)   "Released Plaintiffs' Parties" means Plaintiffs, Plaintiffs' Counsel, and any entity in which any Plaintiff has a controlling interest, as well as their respective current and former parents, affiliates, subsidiaries, officers, directors, agents, successors, predecessors, assigns, assignees, partnerships, partners, committees, joint ventures, trustees, trusts, employees, immediate family members, insurers and reinsurers (in their capacities as such), consultants, experts, and attorneys.

(ii)   "Releases" means the releases set forth in paragraphs 9-11 of this Stipulation.

(jj)   "Settled Claims" means the Settled Defendants' Claims, the Settled Plaintiffs' Claims, and the Settled Litigation Claims.

(kk)   "Settled Defendants' Claims" means all Claims that arise out of, are based upon, or relate to the institution, prosecution, or settlement of the Actions; *provided, however*, that the Settled Defendants' Claims shall not include any Claims arising out of, based upon, or relating to the enforcement of the Settlement.

(ll)   "Settled Litigation Claims" means all Claims against any of the Released Parties, the SLC, or the SLC's Counsel concerning, arising from, or relating to the institution, prosecution, investigation, or settlement of the Claims

asserted in the California Action or in the Delaware Action; *provided, however*, that the Settled Litigation Claims shall not include any Claims arising out of, based upon, or relating to the enforcement of the Settlement.

(mm) "Settled Plaintiffs' Claims" means all Claims brought or that could be brought derivatively on behalf of the Company, directly by Plaintiffs, or by the SLC or the Company, concerning, arising from, or relating to the underlying facts, conduct, events, occurrences, transactions, or allegations set forth, made, or referred to in the Complaints or in the prosecution or settlement of the Actions, including but not limited to any such Claims that were, could have been, or could be asserted concerning, arising from, or relating to the Company's alleged liabilities associated with settled, pending, or threatened litigation concerning, arising from, or relating to the underlying facts, conduct, events, occurrences, transactions, or allegations set forth or referred to in the Complaints; *provided, however*, that the Settled Plaintiffs' Claims shall not include any Claims arising out of, based upon, or relating to the enforcement of the Settlement.  For the avoidance of doubt, the Settled Plaintiffs' Claims do <u>not</u> cover, settle, or release (i) any direct claims held by any current, former, or future stockholder of McKesson who is not a Plaintiff, including any claims asserting violations of the federal or state securities laws, including, without limitation, claims asserted in *Evanston Police Pension Fund v. McKesson*

*Corporation, et al.*, Case No. 3:18-cv-06525-CRB (N.D. Cal.); or (ii) any claims currently asserted in *Henry v. Tyler, et al.*, Case No. 3:19-cv-2869-CRB (N.D. Cal.).

(nn)    "Settlement" means the settlement by and among the Parties on the terms and conditions set forth in this Stipulation.

(oo)    "Settlement Fairness Hearing" means the hearing set by the Court to, among other things, consider final approval of the Settlement.

(pp)    "SLC" means the Special Litigation Committee established by the Board of Directors of Nominal Defendant McKesson Corporation, including Lerman in his individual capacity.

(qq)    "SLC's Counsel" means the law firm of Wilkinson Walsh + Eskovitz, LLP and includes all of its current and former partners, associates, employees, agents, successors, predecessors, assigns, assignees, partnerships, committees, joint ventures, trustees, trusts, immediate family members, insurers and reinsurers (in their capacities as such), consultants, and experts.

(rr)    "Summary Notice" means the Summary Notice of Pendency and Proposed Settlement of Stockholder Derivative Actions, substantially in the form attached hereto as Exhibit B-2.

(ss)    "Term Sheet" means the binding term sheet executed by the Parties on November 22, 2019.

(tt)    "Unknown Claims" shall mean any Settled Plaintiffs' Claims which any Plaintiff, the SLC, the Company, or any of the Company's current stockholders does not know or suspect to exist in his, her, or its favor at the time of the release of such claims and any Settled Defendants' Claims which any Defendant, the SLC, or the Company does not know or suspect to exist in his, her, or its favor at the time of the release of such claims, which, if known by him, her, or it, might have affected his, her, or its decision(s) with respect to this Settlement.  With respect to any and all Settled Plaintiffs' Claims and Settled Defendants' Claims, the Parties stipulate and agree that, upon the Effective Date of the Settlement, Plaintiffs, Defendants, the SLC, the Company, and each of the Company's current stockholders shall be deemed to have, and by operation of the Judgment shall have, expressly waived any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law or foreign law, which is similar, comparable, or equivalent to California Civil Code §1542, which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

Any of Plaintiffs, Defendants, the SLC, McKesson, or the current McKesson stockholders may hereafter discover facts in addition to or different from those

which he, she, or it now knows or believes to be true with respect to the Settled Claims but, upon the Court's entry of the Judgment, Plaintiffs, Defendants, the SLC, McKesson, and each of the current McKesson stockholders shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled any and all Settled Claims without regard to the subsequent discovery or existence of such different or additional facts.  Plaintiffs, Defendants, the SLC, and the Company acknowledge that the foregoing waiver was separately bargained for and a key element of the Settlement.

## THE SETTLEMENT CONSIDERATION

2.      In consideration for the full settlement and release of all Settled Plaintiffs' Claims against the Released Defendants' Parties and the dismissal with prejudice of the Actions on the terms and conditions set forth in this Stipulation, Defendants and the Company agree to the following:

(a)      **Monetary Consideration:**  Provided that the Court grants preliminary approval of the proposed Settlement, Defendants shall cause to be paid by their D&O Insurers $175,000,000 in cash (the "Cash Consideration") into the Derivative Escrow Account no later than ten (10) business days prior to the date set by the Court for the Settlement Fairness Hearing; *provided, however,* that if the Court does not grant preliminary approval of the proposed Settlement prior to the Settlement Fairness Hearing,

Defendants shall cause to be paid by their D&O Insurers the Cash Consideration into the Derivative Escrow Account no later than fifteen (15) business days after the Court issues a written order granting final approval of the Settlement, which payment shall be timely made notwithstanding the existence of any timely filed objections to the Settlement, potential for appeal from the Settlement, or collateral attack on the Settlement or any part thereof. The Cash Consideration plus any interest earned thereon (the "Cash Settlement Fund"), less (i) any Court-awarded attorneys' fees and litigation expenses and/or any reserve to account for any potential future awards to Plaintiffs' Counsel and (ii) any federal, state, and/or local taxes of any kind (including any interest or penalties thereon) on any income earned by the Cash Consideration while held in the Derivative Escrow Account ("Taxes") and any tax expenses and costs incurred in connection with determining the amount of, and paying, any taxes owed on the Cash Consideration (including, without limitation, expenses of tax attorneys and accountants) ("Tax Expenses"), shall be paid from the Derivative Escrow Account to the Company no later than ten (10) business days following the Effective Date.

(b)  **Governance:**  McKesson and its Board shall adopt and implement the governance provisions identified in Exhibit A hereto (the "Governance Consideration") upon or before final approval of the Settlement.

31

3.     Defendants' D&O Insurers' payment of the Cash Consideration and agreement to, and the Company's implementation of, the Governance Consideration shall constitute full and final satisfaction of all of the Settled Plaintiffs' Claims. Defendants' sole monetary obligation under the Settlement shall be to cause to be paid the Cash Consideration as provided in paragraph 2(a) above, and they shall not be liable for any other amounts, including any petition by Plaintiffs' Counsel for attorneys' fees and expenses, which shall be paid, if awarded, out of the Cash Settlement Fund.  Defendants agree that the Nominal Defendant will not indemnify any Defendant for payment of the Cash Consideration.

4.     All funds held by the Derivative Escrow Agent in the Derivative Escrow Account shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court until such time as the funds shall be paid out of the Derivative Escrow Account pursuant to paragraphs 2(a), 6, 7, and 22 of this Stipulation, and/or further order(s) of the Court.  The Parties intend that all payments from the Derivative Escrow Account shall be made by the Derivative Escrow Agent pursuant to and as provided by the terms of this Stipulation.

5.     The funds in the Derivative Escrow Account shall be invested exclusively in United States Treasury Bills (or a mutual fund invested solely in such instruments) and shall collect and reinvest all interest accrued thereon, except that

any residual cash balances up to the amount that is insured by the FDIC may be deposited in any account that is fully insured by the FDIC.  In the event that the yield on United States Treasury Bills is negative, in lieu of purchasing such Treasury Bills, all or any portion of the funds held in the Derivative Escrow Account may be deposited in any account that is fully insured by the FDIC or backed by the full faith and credit of the United States.  Additionally, if short-term placement of the funds is necessary, all or any portion of the funds held in the Derivative Escrow Account may be deposited in any account that is fully insured by the FDIC or backed by the full faith and credit of the United States.

6.     The Parties agree that the Cash Settlement Fund is intended to be a Qualified Settlement Fund within the meaning of Treasury Regulation § 1.468B-1 and that Plaintiffs' Lead Counsel, as administrators of the Cash Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall be solely responsible for filing or causing to be filed all informational and other tax returns as may be necessary or appropriate (including, without limitation, the returns described in Treasury Regulation § 1.468B-2(k)) for the Cash Settlement Fund.  Plaintiffs' Lead Counsel shall also be responsible for causing payment to be made from the Cash Settlement Fund of any Taxes and Tax Expenses owed with respect to the Cash Settlement Fund.  The Released Defendants' Parties shall not have any liability or responsibility for any such Taxes or Tax Expenses.  Upon written request,

Defendants will provide to Plaintiffs' Lead Counsel the statement described in Treasury Regulation § 1.468B-3(e).  Plaintiffs' Lead Counsel, as administrators of the Cash Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall timely make such elections as are necessary or advisable to carry out this paragraph, including, as necessary, making a "relation back election," as described in Treasury Regulation § 1.468B-1(j), to cause the Qualified Settlement Fund to come into existence at the earliest allowable date, and shall take or cause to be taken all actions as may be necessary or appropriate in connection therewith.

7.    Any Taxes and Tax Expenses shall be paid out of the Cash Settlement Fund, and shall be timely paid, or caused to be paid, by Plaintiffs' Lead Counsel and without further order of the Court.  Any tax returns prepared for the Cash Settlement Fund (as well as the election set forth therein) shall be consistent with the previous paragraph and in all events shall reflect that all Taxes and Tax Expenses on the income earned by the Cash Settlement Fund shall be paid out of the Cash Settlement Fund as provided herein.   The Released Defendants' Parties shall have no responsibility or liability for the acts or omissions of Plaintiffs' Lead Counsel or its agents with respect to the payment of Taxes and Tax Expenses, as described herein.

## **RELEASE OF CLAIMS**

8.     The obligations incurred pursuant to this Stipulation are in consideration of the full and final disposition of the Actions as against Defendants and the Releases provided for herein.

9.     Pursuant to the Judgment, without further action by anyone, upon the Effective Date of the Settlement, Plaintiffs, the SLC, the Company, and by operation of law the Company's stockholders shall be deemed to have, and by operation of law and of the Judgment, shall have, fully, finally, and forever discharged, settled, and released, and shall forever be enjoined from commencing or prosecuting, any and all Settled Plaintiffs' Claims and Settled Litigation Claims (including Unknown Claims) against the Released Defendants' Parties.

10.     Pursuant to the Judgment, without further action by anyone, upon the Effective Date of the Settlement, Defendants, the SLC, and the Company shall be deemed to have, and by operation of law and of the Judgment, shall have, fully, finally, and forever discharged, settled, and released, and shall forever be enjoined from commencing or prosecuting, any and all Settled Defendants' Claims and Settled Litigation Claims (including Unknown Claims) against the Released Plaintiffs' Parties.

11.     Pursuant to the Judgment, without further action by anyone, upon the Effective Date of the Settlement, Plaintiffs, Defendants, the Company, and by

operation of law the Company's stockholders shall be deemed to have, and by operation of law and of the Judgment, shall have, fully, finally, and forever discharged, settled, and released, and shall forever be enjoined from commencing or prosecuting, any and all Settled Litigation Claims (including Unknown Claims) against the SLC and the SLC's Counsel.

12.     Notwithstanding paragraphs 9-11 above, nothing in the Judgment shall bar any action by any of the Parties to enforce the terms of this Stipulation or the Judgment.  Also, for the avoidance of doubt, the Settlement does not cover, settle, or release: (i) any direct claims held by any current, former, or future stockholder of McKesson who is not a Plaintiff, including any claims asserting violations of the federal or state securities laws, including, without limitation, claims asserted in *Evanston Police Pension Fund v. McKesson Corporation, et al.*, Case No. 3:18-cv-06525-CRB (N.D. Cal.); or (ii) any claims currently asserted in *Henry v. Tyler, et al.*, Case No. 3:19-cv-2869-CRB (N.D. Cal.).

## PRELIMINARY APPROVAL

13.     Promptly upon execution of this Stipulation, Plaintiffs shall move in the California Court for preliminary approval of the Settlement, authorization to provide notice of the Settlement, and the scheduling of a date and time for the Settlement Fairness Hearing, which motion shall be unopposed by Defendants, the SLC, and the Company.  Concurrently with the motion for preliminary approval, Plaintiffs

shall apply to the California Court for, and Defendants, the SLC, and the Company shall agree to, entry of the Preliminary Approval Order, substantially in the form attached hereto as Exhibit B.  The Company shall take all steps necessary so that the Notice can be distributed no later than ten (10) calendar days following the Court's entry of the Preliminary Approval Order.

## NOTICE

14.    Provided that the Court has approved the Notice and authorized distribution of the Notice to stockholders, no later than ten (10) calendar days following the date on which the Court sets a hearing date for final approval of the Settlement (the "Notice Date"), the Company shall direct its third-party investor communications providers, Alliance Advisors and Broadridge Financial Solutions, to send the Notice, substantially in the form attached hereto as Exhibit B-1, to all then-current McKesson stockholders as of the Notice Date in the same manner that the Company distributes notice to the Company's stockholders of the Company's annual meeting of stockholders.  Not later than the Notice Date, the Company shall post a hyperlink to a copy of this Stipulation and the Notice on the "Investor Relations" section of the Company's website, investor.mckesson.com, and such documents shall remain posted to the hyperlinked website through the Effective Date of the Settlement.

15.     Provided that the Court has approved the Summary Notice and authorized publication of the Summary Notice, the Company shall also cause the Summary Notice, substantially in the form attached hereto as Exhibit B-2, to be published in the national edition of the *New York Times* and transmitted over the *PR Newswire* within ten (10) calendar days of the Notice Date.

16.     The Company shall assume all administrative responsibility for and will pay any and all Notice Costs, regardless of whether the Court approves the Settlement or the Effective Date fails to occur.  Neither Plaintiffs nor their counsel shall be responsible for any Notice Costs, nor shall any Notice Costs be paid from the Cash Settlement Fund.

## FINAL APPROVAL; DISMISSAL OF THE ACTIONS

17.     This Settlement is conditioned on the California Action and Delaware Action being dismissed with prejudice.

18.     Plaintiffs shall move for final approval of the Settlement in the California Action only.  On or before the deadline for submissions in support of final approval of the Settlement, the SLC shall submit papers in support of the Settlement, expressing its view that the Cash Consideration and Governance Consideration are fair, reasonable, and adequate, and in the best interests of the Company.

19.     If the Settlement contemplated by this Stipulation is approved by the Court, Plaintiffs' Lead Counsel and Defendants' Counsel shall jointly request that

the Court enter the Judgment, substantially in the form attached hereto as Exhibit C, which will finally approve the Settlement and dismiss the California Action with prejudice.

20.     Within ten (10) calendar days of the Court's entry of the Judgment, the parties to the Delaware Action shall file a stipulation with the Delaware Court dismissing the Delaware Action with prejudice.

## ATTORNEYS' FEES AND EXPENSES

21.     Plaintiffs' Lead Counsel, on behalf of themselves and all other Plaintiffs' Counsel, will apply to the Court for a collective award of attorneys' fees and litigation expenses to Plaintiffs' Counsel to be paid out of the Cash Settlement Fund (the "Fee and Expense Award").  The Court may consider and rule upon the fairness, reasonableness, and adequacy of the Settlement independently of the consideration of any Fee and Expense Award, and the failure of the Court to approve any requested Fee and Expense Award, in whole or in part, shall have no effect on the Settlement.

22.     The full amount of any Fee and Expense Award shall be paid to Plaintiffs' Lead Counsel, on behalf of all Plaintiffs' Counsel, from the Cash Settlement Fund held in the Derivative Escrow Account no later than five (5) business days after the date of entry of the Court's order awarding such fees and expenses, notwithstanding the existence of any timely filed objections thereto, or

potential for appeal therefrom, or collateral attack on the Settlement or any part thereof; *provided, however,* that payment of the Fee and Expense Award shall not be due in any event until five (5) business days after the payment of Cash Consideration into the Derivative Escrow Account in accordance with paragraph 2(a) above.  The payment of any Fee and Expense Award to Plaintiffs' Counsel shall be subject to the joint and several obligation of Plaintiffs' Counsel to make full refund of any such payment if the Settlement is terminated and to refund or repay the portion of any such payment as to which, as a result of any appeal or further proceedings on remand or successful collateral attack, the Fee and Expense Award is reduced or reversed and such order reducing or reversing the award has become Final.  Any refund pursuant to the prior sentence will be disbursed to the Defendants' D&O Insurers in proportion to their respective contributions towards the payment of the Cash Consideration, and in the event any such refund is due, McKesson shall promptly provide Plaintiffs' Counsel with a schedule of the Defendants' D&O Insurers' respective contributions.

23.    Plaintiffs' Lead Counsel shall allocate the attorneys' fees awarded amongst Plaintiffs' Counsel in a manner which they, in good faith, believe reflects the contributions of such counsel to the institution, prosecution, and settlement of the Actions.  Defendants, the SLC, the Company, and their respective counsel shall have no responsibility for, and no liability whatsoever with respect to, the allocation

among Plaintiffs' Counsel of the Fee and Expense Award.  Any dispute regarding the allocation of fees or expenses among Plaintiffs' Counsel shall have no effect on the Settlement or the Releases.

24.    The effectiveness of the Settlement, the Releases, and the Parties' obligations under the Settlement (except with respect to the payment of attorneys' fees and expenses) shall not be conditioned on the resolution of, nor any ruling regarding, any Fee and Expense Award.

## CONDITIONS OF SETTLEMENT AND EFFECT OF TERMINATION

25.    The Effective Date of the Settlement shall be deemed to occur on the occurrence or waiver of all of the following events:

(a)    Defendants shall have caused to be paid the Cash Consideration into the Derivative Escrow Account as required under paragraph 2(a) above;

(b)    McKesson and its Board shall have adopted and implemented the Governance Consideration as required under paragraph 2(b) above;

(c)    Plaintiffs have not exercised their option to terminate the Settlement pursuant to paragraph 26 below;

(d)    Defendants have not exercised their option to terminate the Settlement pursuant to paragraph 26 below;

(e)    the SLC has not exercised its option to terminate the Settlement pursuant to paragraph 26 below;

(f)     the Court has approved the Settlement as described herein, following notice to Company stockholders and a hearing, and entered the Judgment, substantially in the form set forth in Exhibit C attached hereto, and the Judgment has become Final; and

(g)     the Delaware Action has been dismissed with prejudice.

26.     Plaintiffs (provided Plaintiffs unanimously agree amongst themselves), Defendants (provided Defendants unanimously agree amongst themselves), and the SLC shall each have the right to terminate the Settlement and this Stipulation, by providing written notice of their election to do so ("Termination Notice") to the other Parties within thirty (30) calendar days of:  (a) the Court's final refusal to enter the Preliminary Approval Order in any material respect; (b) the Court's final refusal to approve the Settlement or any material part thereof; (c) the Court's final refusal to enter the Judgment in any material respect as to the Settlement; (d) the date upon which an order vacating, modifying, revising or reversing the Judgment becomes Final; or (e) the date upon which the Delaware Court denies the joint request by the parties to the Delaware Action to dismiss the Delaware Action with prejudice, and the provisions of paragraph 27 below shall apply; *provided, however*, that any decision or proceeding, whether in this Court or any appellate court, solely with respect to an application for an award of attorneys' fees or expenses shall not be considered material to the Settlement, shall not affect the finality of the Judgment,

42

and shall not be grounds for termination of the Settlement.  In addition to the grounds set forth above, Plaintiffs (provided Plaintiffs unanimously agree amongst themselves) shall have the right to terminate the Settlement and this Stipulation, by providing Termination Notice to the other Parties, in the event that (i) Defendants fail to cause their D&O Insurers to pay the Cash Settlement Amount into the Derivative Escrow Account as required under paragraph 2(a) above; or (ii) McKesson and its Board fail to adopt and implement the Governance Consideration as required under paragraph 2(b) above.

27.    If Plaintiffs, Defendants, or the SLC exercise their right to terminate the Settlement pursuant to paragraph 26 above, then:  (a) the Settlement and the relevant portions of this Stipulation shall be canceled; (b) the Parties shall revert to their respective litigation positions in the Actions as of October 15, 2019; (c) the terms and provisions of the Term Sheet and this Stipulation, with the exception of (i) this paragraph 27, (ii) paragraphs 16, 28, 30, and 48 hereof, and (iii) the final two sentences of paragraph 22, shall have no further force and effect with respect to the Parties and shall not be used in the Actions or in any other proceeding for any purpose, and the Parties shall proceed in all respects as if the Term Sheet and this Stipulation had not been entered; and (d) the Judgment and any other order entered by the Court in accordance with the terms of this Stipulation shall be treated as vacated, *nunc pro tunc*.

## **NO ADMISSION OF WRONGDOING**

28.     Neither the Term Sheet, this Stipulation (whether or not consummated), including the exhibits hereto, the negotiations leading to the execution of the Term Sheet and this Stipulation, nor any proceedings taken pursuant to or in connection with the Term Sheet, this Stipulation, and/or approval of the Settlement (including any arguments proffered in connection therewith):

(a)     shall be offered against any of the Released Defendants' Parties or the SLC as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Released Defendants' Parties or the SLC with respect to the truth of any fact alleged by Plaintiffs or the validity of any claim that was or could have been asserted or the deficiency of any defense that has been or could have been asserted in the Actions or in any other litigation, or of any liability, negligence, fault, or other wrongdoing of any kind of any of the Released Defendants' Parties, or in any way referred to for any other reason as against any of the Released Defendants' Parties, in any arbitration proceeding or other civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation;

(b)     shall be offered against any of the Released Plaintiffs' Parties or the SLC as evidence of, or construed as, or deemed to be evidence of any

presumption, concession, or admission by any of the Released Plaintiffs' Parties or the SLC that any of the Released Plaintiffs' Parties' claims are without merit, that any of the Released Defendants' Parties had meritorious defenses, or that damages recoverable under the Complaints would not have exceeded the Settlement Consideration or with respect to any liability, negligence, fault, or wrongdoing of any kind, or in any way referred to for any other reason as against any of the Released Plaintiffs' Parties, in any arbitration proceeding or other civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation; or

(c)     shall be construed against any of the Released Parties or the SLC as an admission, concession, or presumption that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial;

*provided, however*, that if this Stipulation is approved by the Court, the Parties, the Released Parties, and their respective counsel, the SLC, and the SLC's Counsel, may refer to it to effectuate the protections from liability granted hereunder or otherwise to enforce the terms of the Settlement.

## MISCELLANEOUS PROVISIONS

29.     All of the exhibits attached hereto are hereby incorporated by reference as though fully set forth herein.  Notwithstanding the foregoing, in the event that there exists a conflict or inconsistency between the terms of this Stipulation and the terms of any exhibit attached hereto, the terms of this Stipulation shall prevail.

30.     In the event of the entry of a final order of a court of competent jurisdiction determining the transfer of the Cash Consideration to the Derivative Escrow Account or any portion thereof by or on behalf of Defendants to be a preference, voidable transfer, fraudulent transfer, or similar transaction and any portion thereof is required to be returned, and such amount is not promptly deposited into the Derivative Escrow Account by others, then, at the election of Plaintiffs (provided Plaintiffs unanimously agree amongst themselves), the Plaintiffs and Defendants shall jointly move the Court to vacate and set aside the Releases given and the Judgment entered pursuant to this Stipulation, in which event the Releases and Judgment shall be null and void, and the Parties shall revert to their respective litigation positions in the Actions as of October 15, 2019, as provided in paragraph 27 above, and any cash amounts in the Derivative Escrow Account (less any Taxes paid, due, or owing with respect to the Cash Settlement Fund) shall be returned to the Defendants' D&O Insurers in proportion to their respective contributions towards the payment of the Cash Consideration.

31.     The Parties intend this Stipulation and the Settlement to be a final and complete resolution of all disputes asserted or which could be asserted by Plaintiffs against the Released Defendants' Parties with respect to the Settled Plaintiffs' Claims.  Accordingly, the Parties and their counsel agree not to assert in any forum that the Actions were brought by Plaintiffs or defended by Defendants in bad faith or without a reasonable basis.  The Parties and their counsel further agree not to assert in any forum that any activity undertaken by the SLC in connection with the Actions was performed in bad faith or without a reasonable basis.  The Parties agree that the Settlement Consideration and the other terms of the Settlement were negotiated at arm's-length and in good faith by the Parties, and reflect the Settlement that was reached voluntarily after extensive negotiations and consultation with experienced legal counsel, who were fully competent to assess the strengths and weaknesses of their respective clients' claims or defenses.

32.     Defendants and their counsel shall retain their right to deny that Defendants committed, or aided and abetted in the commission of, any violation of law or duty or engaged in any wrongful acts whatsoever, but neither Defendants, the Company, the SLC, or their respective counsel will, in any statement made to any media representative (whether or not for attribution), assert that the Actions were commenced or prosecuted in bad faith, nor will they deny that the Actions were commenced and prosecuted in good faith and are being settled voluntarily after

consultation with competent legal counsel.  Likewise, Plaintiffs and their counsel shall retain their right to maintain that their claims have merit, but neither Plaintiffs nor their counsel will, in any statement made to any media representative (whether or not for attribution), assert that the Actions were defended in bad faith, nor will they deny that the Actions were defended in good faith and are being settled voluntarily after consultation with competent legal counsel.  In all events, none of the Parties shall make any accusations of wrongful or actionable conduct by any Party concerning the prosecution, defense, and resolution of the Actions, nor shall they otherwise suggest that the Settlement constitutes an admission of any claim or defense alleged.

33.     The terms of the Settlement, as reflected in this Stipulation, may not be modified or amended, nor may any of its provisions be waived, except by a writing signed on behalf of each of the Parties (or their successors-in-interest).

34.     The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

35.     The administration and consummation of the Settlement as embodied in this Stipulation shall be under the authority of the California Court, and the California Court shall retain exclusive jurisdiction for the purpose of entering orders providing for awards of attorneys' fees and litigation expenses to Plaintiffs' Counsel and enforcing the terms of this Stipulation.

36.     The waiver by one Party of any breach of this Stipulation by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Stipulation.

37.     This Stipulation and its exhibits constitute the entire agreement among the Parties concerning the Settlement and this Stipulation and its exhibits, and supersede all prior or contemporaneous oral or written agreements, understandings, or representations among the Parties, including the Term Sheet, with respect to the subject matter hereof, provided, however, that the confidentiality obligations under paragraph 14 of the Term Sheet shall remain in effect until this Stipulation is filed with the California Court.  All Parties acknowledge that no other agreements, representations, warranties, or inducements have been made by any Party concerning this Stipulation or its exhibits other than those contained and memorialized in such documents.

38.     The Parties agree that within sixty (60) days of the Effective Date, they will return to the producing party all documents and other discovery material obtained from such producing party in any manner in connection with the Actions, including all documents produced by any Party whether formally or informally in connection with the mediation ("Produced Material"), or destroy all such Produced Material; provided, however, that the Parties and their counsel shall be entitled to retain all filings, court papers, hearing transcripts, and attorney work product, subject

to the terms of the protective order issued by the California Court in the California Action.

39.   Subject to applicable court rules, all designations and agreements made and orders entered during the course of the Actions relating to the confidentiality of documents or information shall survive this Settlement. Nothing in this Stipulation, or the negotiations relating thereto, is intended to or shall be deemed to constitute a waiver of any applicable privilege or immunity, including without limitation, the attorney-client privilege, the joint defense privilege, or work product protection.

40.   This Stipulation may be executed in one or more counterparts, including by signature transmitted via facsimile, or by a .pdf/.tiff image of the signature transmitted via email.  All executed counterparts and each of them shall be deemed to be one and the same instrument.

41.   This Stipulation shall be binding upon and inure to the benefit of the successors and assigns of the Parties, the SLC, and the SLC's Counsel, including any and all Released Parties and any corporation, partnership, or other entity into or with which any Party hereto may merge, consolidate, or reorganize.

42.   The construction, interpretation, operation, effect, and validity of this Stipulation and all documents necessary to effectuate it shall be governed by the laws of the State of Delaware without regard to conflicts of law rules, except to the extent that federal law requires that federal law govern.  The exclusive forum for the

adjudication of any disputes arising under this Stipulation shall be the United States District Court for the Northern District of California. Each Party accepts and consents to jurisdiction and waives any objection to venue in the identified court.

43.    All counsel and any other person executing this Stipulation and any of the exhibits hereto, or any related Settlement documents, warrant and represent that they have the full authority to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to the Stipulation to effectuate its terms.

44.    Counsel for the Parties agree to cooperate fully with one another in seeking Court approval of the Settlement, as embodied in this Stipulation, and to use best efforts to promptly agree upon and execute all such other documentation as may be reasonably required to obtain final approval by the Court of the Settlement.

45.    The Stipulation shall be treated as jointly drafted and will not be construed against any Party as the drafter.

46.    Any Party may give notice or service to another Party under this Stipulation. Such notice shall be in writing and shall be deemed to have been duly given upon receipt of hand delivery, facsimile, or email transmission, with confirmation of receipt. Notice shall be provided as follows:

| If to Plaintiffs or Plaintiffs' Lead Counsel: | Hagens Berman Sobol Shapiro LLP<br>Attn: Reed R. Kathrein, Esq.<br>715 Hearst Avenue, Suite 202<br>Berkeley, CA 94710 |
|---|---|

Telephone:  (510) 725-3000
Facsimile:  (510) 725-3001
Email:  reed@hbsslaw.com

Gardy & Notis, LLP
Attn:  Meagan Farmer, Esq.
Tower 56
126 East 56th Street, 8th Floor
New York, NY  10022
Telephone:  (212) 905-0509
Facsimile:  (212) 905-0508
Email:  mfarmer@gardylaw.com


If to Defendants:                    Orrick, Herrington & Sutcliffe LLP
                                     Attn:  Amy Ross, Esq.
                                     405 Howard Street
                                     San Francisco, CA  94105
                                     Telephone:  (415) 773-5700
                                     Facsimile:  (415)773-5759
                                     Email:  aross@orrick.com

                                     Munger, Tolles & Olson LLP
                                     Attn:  John W. Spiegel, Esq.
                                     350 South Grand Avenue, 50th Floor
                                     Los Angeles, CA  90071
                                     Telephone:  (213) 683-9100
                                     Facsimile:  (213) 687-3702
                                     Email:  john.spiegel@mto.com


If to the SLC:                       Wilkinson Walsh + Eskovitz, LLP
                                     Attn:  Sean Eskovitz, Esq.
                                     11601 Wilshire Boulevard, Suite 600
                                     Los Angeles, CA  90025
                                     Telephone:  (424) 316-4000
                                     Facsimile:  (202) 847-4005
                                     Email:  seskovitz@wilkinsonwalsh.com


If to the Company:                   Morrison & Foerster LLP
                                     Attn:  Philip Besirof, Esq.

425 Market Street
San Francisco, CA 94105
Telephone: (415) 268-7000
Facsimile: (415) 268-7522
Email: pbesirof@mofo.com

47.    Except as otherwise provided herein, each Party shall bear its own costs.

48.    Whether or not the Stipulation is approved by the Court and whether or not the Stipulation is consummated, or the Effective Date occurs, the Parties and their counsel shall use their best efforts to keep all negotiations, discussions, and drafts in connection with the Stipulation confidential.

**IN WITNESS WHEREOF,** the Parties hereto have caused this Stipulation to be executed by their duly authorized attorneys, as of December 11, 2019.

**Co-Lead Counsel for Plaintiffs**

By:
Reed R. Kathrein (139304)
HAGENS BERMAN SOBOL
SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
reed@hbsslaw.com

Steve W. Berman (admitted *Pro Hac Vice*)
Ronnie S. Spiegel (admitted *Pro Hac Vice*)
HAGENS BERMAN SOBOL
SHAPIRO LLP 1301 Second Avenue,
Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

**McKesson Corporation**

By:
Philip Besirof (185053)
Jordan Eth (121617)
David J. Wiener (291659)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
Telephone: (415) 268-7000
Facsimile: (415) 268-7522
pbesirof@mofo.com
jeth@mofo.com
dwiener@mofo.com

*Counsel for Nominal Defendant McKesson Corporation*

53

ronnie@hbsslaw.com

*Co-Lead Counsel for Plaintiffs*

By: _Meagan Farmer_
James S. Notis (admitted *Pro Hac Vice*)
Meagan Farmer (admitted *Pro Hac Vice*)
GARDY & NOTIS, LLP
Tower 56
126 East 56th Street, 8th Floor
New York, NY 10022
Telephone: (212) 905-0509
Facsimile: (212) 905-0508
jnotis@gardylaw.com
mfarmer@gardylaw.com

*Co-Lead Counsel for Plaintiffs*

**Eli Inzlicht**

By: _Meagan Farmer_
James S. Notis (admitted *Pro Hac Vice*)
Meagan Farmer (admitted *Pro Hac Vice*)
GARDY & NOTIS, LLP
Tower 56
126 East 56th Street, 8th Floor
New York, NY 10022
Telephone: (212) 905-0509
Facsimile: (212) 905-0508
jnotis@gardylaw.com
mfarmer@gardylaw.com

*Counsel for Eli Inzlicht*

**Vladimir Gusinsky, As Trustee For The Vladimir Gusinsky Living Trust**

By: _____
Jeffrey C. Block (*Pro Hac Vice* forthcoming)
Joel Fleming (281264)
BLOCK & LEVITON LLP
260 Franklin Street, Suite 1860
Boston, MA 02110
Telephone: (617) 398-5600
Facsimile: (617) 507-6020
jeff@blockesq.com
joel@blockesq.com

*Counsel for Vladimir Gusinsky, As*

**Andy D. Bryant, Wayne A. Budd, N. Anthony Coles, Alton F. Irby, III, M. Christine Jacobs, Donald Knauss, Marie L. Knowles, David M. Lawrence, Edward A. Mueller, Susan Salka, Laureen Seeger, and Jane E. Shaw**

By: _____
Robert P. Varian (107459)
Melinda L. Haag (132612)
Amy M. Ross (215692)
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105
Telephone: (415) 773-5700
Facsimile: (415)773-5759
rvarian@orrick.com
mhaag@orrick.com
aross@orrick.com

*Counsel for Andy D. Bryant, Wayne A. Budd, N. Anthony Coles, Alton F. Irby, III, M. Christine Jacobs, Donald Knauss, Marie L. Knowles, David M. Lawrence, Edward A. Mueller, Susan Salka, Laureen Seeger, and Jane E. Shaw*

**John H. Hammergren**

By: _____
John W. Spiegel (78935)
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
Telephone: (213) 683-9100
Facsimile: (213) 687-3702
john.spiegel@mto.com

Achyut J. Phadke (261567)
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105
Telephone: (415) 512-4000
Facsimile: (415) 512-4077
achyut.phadke@mto.com

*Counsel for John H. Hammergren*

ronnie@hbsslaw.com

*Co-Lead Counsel for Plaintiffs*

By: _____
James S. Notis (admitted *Pro Hac Vice*)
Meagan Farmer (admitted *Pro Hac Vice*)
GARDY & NOTIS, LLP
Tower 56
126 East 56th Street, 8th Floor
New York, NY  10022
Telephone: (212) 905-0509
Facsimile:  (212) 905-0508
jnotis@gardylaw.com
mfarmer@gardylaw.com

*Co-Lead Counsel for Plaintiffs*

**Eli Inzlicht**

By: _____
James S. Notis (admitted *Pro Hac Vice*)
Meagan Farmer (admitted *Pro Hac Vice*)
GARDY & NOTIS, LLP
Tower 56
126 East 56th Street, 8th Floor
New York, NY  10022
Telephone: (212) 905-0509
Facsimile:  (212) 905-0508
jnotis@gardylaw.com
mfarmer@gardylaw.com

*Counsel for Eli Inzlicht*

**Vladimir Gusinsky, As Trustee For The Vladimir Gusinsky Living Trust**

By: _____
Jeffrey C. Block (*Pro Hac Vice* forthcoming)
Joel Fleming (281264)
BLOCK & LEVITON LLP
260 Franklin Street, Suite 1860
Boston, MA  02110
Telephone: (617) 398-5600
Facsimile:  (617) 507-6020
jeff@blockesq.com
joel@blockesq.com

*Counsel for Vladimir Gusinsky, As*

**Andy D. Bryant, Wayne A. Budd, N. Anthony Coles, Alton F. Irby, III, M. Christine Jacobs, Donald Knauss, Marie L. Knowles, David M. Lawrence, Edward A. Mueller, Susan Salka, Laureen Seeger, and Jane E. Shaw**

By: _____
Robert P. Varian (107459)
Melinda L. Haag (132612)
Amy M. Ross (215692)
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA  94105
Telephone: (415) 773-5700
Facsimile:  (415)773-5759
rvarian@orrick.com
mhaag@orrick.com
aross@orrick.com

*Counsel for Andy D. Bryant, Wayne A. Budd, N. Anthony Coles, Alton F. Irby, III, M. Christine Jacobs, Donald Knauss, Marie L. Knowles, David M. Lawrence, Edward A. Mueller, Susan Salka, Laureen Seeger, and Jane E. Shaw*

**John H. Hammergren**

By: _____
John W. Spiegel (78935)
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA  90071
Telephone: (213) 683-9100
Facsimile:  (213) 687-3702
john.spiegel@mto.com

Achyut J. Phadke (261567)
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA  94105
Telephone: (415) 512-4000
Facsimile:  (415) 512-4077
achyut.phadke@mto.com

*Counsel for John H. Hammergren*

54

*Trustee For The Vladimir Gusinsky Living Trust*

**Amalgamated Bank, as Trustee for Longview Largecap 500 Index Fund and Longview Largecap 500 Index VEBA Fund**

By: *[signature: David Wales]*
Mark Lebovitch
David Wales (admitted *Pro Hac Vice*)
BERNSTEIN LITOWITZ BERGER &
GROSSMANN LLP
1251 Avenue of the Americas
New York, NY  10020
Telephone: (212) 554-1400
Facsimile:  (212) 554-1444
markl@blbglaw.com
davidw@blbglaw.com

By:_____
Christine M. Mackintosh (admitted *Pro
   Hac Vice*)
Kimberly Evans (admitted *Pro Hac
   Vice*)
GRANT & EISENHOFER P.A.
123 Justison Street
Wilmington, DE  19801
Telephone: (302) 622-7081
Facsimile:  (302) 622-7100
cmackintosh@gelaw.com
kevans@gelaw.com

*Co-Counsel for Intervening Plaintiffs
Amalgamated Bank, as Trustee for
Longview Largecap 500 Index Fund
and Longview Largecap 500 Index
VEBA Fund*

**Michael Berent, Trustee, on behalf of Police & Fire Retirement System City of Detroit**

By:_____
Christine M. Mackintosh (admitted *Pro
   Hac Vice*)
Kimberly Evans (admitted *Pro Hac
   Vice*)
GRANT & EISENHOFER P.A.
123 Justison Street
Wilmington, DE  19801
Telephone: (302) 622-7081

**Special Litigation Committee Established by the McKesson Corporation Board of Directors**

By:_____
Sean Eskovitz (241877)
WILKINSON WALSH + ESKOVITZ,
LLP
11601 Wilshire Boulevard, Suite 600
Los Angeles, CA  90025
Telephone: (424) 316-4000
Facsimile:  (202) 847-4005
seskovitz@wilkinsonwalsh.com

Beth A. Wilkinson (admitted *Pro Hac
   Vice*)
Rakesh N. Kilaru (admitted *Pro Hac Vice*)
WILKINSON WALSH + ESKOVITZ,
LLP
2001 M Street NW, 10th Floor
Washington, DC  20036
Telephone: (202) 847-4000
Facsimile:  (202) 847-4005
bwilkinson@wilkinsonwalsh.com
rkilaru@wilkinsonwalsh.com

*Counsel for Special Litigation Committee
Established by the McKesson Corporation
Board of Directors*

**Paul Julian and Mark Walchirk**

By:_____

William H. Kimball (242626)
KANE+KIMBALL LLP
803 Hearst Avenue
Berkeley, CA  94710
(510) 704-1400 tel
(877) 482-4749 fax
wkimball@kanekimball.com

*Counsel for Paul Julian and Mark
Walchirk*

55

*Trustee For The Vladimir Gusinsky Living Trust*

**Amalgamated Bank, as Trustee for Longview Largecap 500 Index Fund and Longview Largecap 500 Index VEBA Fund**

By: _____
Mark Lebovitch
David Wales (admitted *Pro Hac Vice*)
BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
markl@blbglaw.com
davidw@blbglaw.com

By: _____
Christine M. Mackintosh (admitted *Pro Hac Vice*)
Kimberly Evans (admitted *Pro Hac Vice*)
GRANT & EISENHOFER P.A.
123 Justison Street
Wilmington, DE 19801
Telephone: (302) 622-7081
Facsimile: (302) 622-7100
cmackintosh@gelaw.com
kevans@gelaw.com

*Co-Counsel for Intervening Plaintiffs Amalgamated Bank, as Trustee for Longview Largecap 500 Index Fund and Longview Largecap 500 Index VEBA Fund*

**Michael Berent, Trustee, on behalf of Police & Fire Retirement System City of Detroit**

By: _____
Christine M. Mackintosh (admitted *Pro Hac Vice*)
Kimberly Evans (admitted *Pro Hac Vice*)
GRANT & EISENHOFER P.A.
123 Justison Street
Wilmington, DE 19801
Telephone: (302) 622-7081

**Special Litigation Committee Established by the McKesson Corporation Board of Directors**

By: _____
Sean Eskovitz (241877)
WILKINSON WALSH + ESKOVITZ, LLP
11601 Wilshire Boulevard, Suite 600
Los Angeles, CA 90025
Telephone: (424) 316-4000
Facsimile: (202) 847-4005
seskovitz@wilkinsonwalsh.com

Beth A. Wilkinson (admitted *Pro Hac Vice*)
Rakesh N. Kilaru (admitted *Pro Hac Vice*)
WILKINSON WALSH + ESKOVITZ, LLP
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
bwilkinson@wilkinsonwalsh.com
rkilaru@wilkinsonwalsh.com

*Counsel for Special Litigation Committee Established by the McKesson Corporation Board of Directors*

**Paul Julian and Mark Walchirk**

By: _____

William H. Kimball (242626)
KANE+KIMBALL LLP
803 Hearst Avenue
Berkeley, CA 94710
(510) 704-1400 tel
(877) 482-4749 fax
wkimball@kanekimball.com

*Counsel for Paul Julian and Mark Walchirk*

Facsimile:  (302) 622-7100
cmackintosh@gelaw.com
kevans@gelaw.com

By: _____

Mark Lebovitch
David L. Wales (admitted *Pro Hac
Vice*)
BERNSTEIN LITOWITZ BERGER
    & GROSSMANN LLP
1251 Avenue of the Americas
New York, NY  10020
Telephone: (212) 554-1400
Facsimile:  (212) 554-1444
markl@blbglaw.com
davidw@blbglaw.com

*Co-Counsel for Michael Berent,
Trustee, on behalf of Police & Fire
Retirement System City of Detroit*


**Katielou Greene**

By: _____

Christine M. Mackintosh (admitted *Pro
Hac Vice*)
Kimberly Evans (admitted *Pro Hac
Vice*)
GRANT & EISENHOFER P.A.
123 Justison Street
Wilmington, DE  19801
Telephone: (302) 622-7081
Facsimile:  (302) 622-7100
cmackintosh@gelaw.com
kevans@gelaw.com

By: _____

Mark Lebovitch
David L. Wales (admitted *Pro Hac
Vice*)
BERNSTEIN LITOWITZ BERGER
    & GROSSMANN LLP
1251 Avenue of the Americas
New York, NY  10020
Telephone: (212) 554-1400
Facsimile:  (212) 554-1444
markl@blbglaw.com
davidw@blbglaw.com

*Co-Counsel for Katielou Greene*

56

Facsimile:  (302) 622-7100
cmackintosh@gelaw.com
kevans@gelaw.com

By: _____
Mark Lebovitch
David L. Wales (admitted *Pro Hac
Vice*)
BERNSTEIN LITOWITZ BERGER
   & GROSSMANN LLP
1251 Avenue of the Americas
New York, NY  10020
Telephone: (212) 554-1400
Facsimile:  (212) 554-1444
markl@blbglaw.com
davidw@blbglaw.com

*Co-Counsel for Michael Berent,
Trustee, on behalf of Police & Fire
Retirement System City of Detroit*

**Katielou Greene**
By: _____
Christine M. Mackintosh (admitted *Pro
Hac Vice*)
Kimberly Evans (admitted *Pro Hac
Vice*)
GRANT & EISENHOFER P.A.
123 Justison Street
Wilmington, DE  19801
Telephone: (302) 622-7081
Facsimile:  (302) 622-7100
cmackintosh@gelaw.com
kevans@gelaw.com

By: _____
Mark Lebovitch
David L. Wales (admitted *Pro Hac
Vice*)
BERNSTEIN LITOWITZ BERGER
   & GROSSMANN LLP
1251 Avenue of the Americas
New York, NY  10020
Telephone: (212) 554-1400
Facsimile:  (212) 554-1444
markl@blbglaw.com
davidw@blbglaw.com

*Co-Counsel for Katielou Greene*

**Chaile Steinberg**

By: _____
Hung G. Ta (admitted *Pro Hac Vice*)
HGT LAW
250 Park Avenue, 7th Floor
New York, NY  10177
Telephone: (646) 453-7288
Facsimile:  (646) 453-7289
hta@hgtlaw.com

By: _____
Peter Safirstein (admitted *Pro Hac Vice*)
Elizabeth S. Metcalf
SAFIRSTEIN METCALF LLP
The Empire State Building
350 Fifth Avenue, 59th Floor
New York, NY  10118
Telephone: (212) 201-2855
Facsimile:  (212) 201-2858
psafirstein@safirsteinmetcalf.com
emetcalf@safirsteinmetcalf.com

*Co-Counsel for Chaile Steinberg*


**Charles Ojeda**

By: _____
Eduard Korsinsky
William J. Fields
LEVI & KORSINKSY LLP
55 Broadway, 10th Floor
New York, NY 10006
Telephone: (212) 363-7500
Facsimile: (212) 363-7171

*Counsel for Charles Ojeda*

**Chaile Steinberg**

By: _____
Hung G. Ta (admitted *Pro Hac Vice*)
HGT LAW
250 Park Avenue, 7th Floor
New York, NY  10177
Telephone: (646) 453-7288
Facsimile:  (646) 453-7289
hta@hgtlaw.com

By: _____
Peter Safirstein (admitted *Pro Hac Vice*)
Elizabeth S. Metcalf
SAFIRSTEIN METCALF LLP
The Empire State Building
350 Fifth Avenue, 59th Floor
New York, NY  10118
Telephone: (212) 201-2855
Facsimile:  (212) 201-2858
psafirstein@safirsteinmetcalf.com
emetcalf@safirsteinmetcalf.com

*Co-Counsel for Chaile Steinberg*

**Charles Ojeda**

By: _____
Eduard Korsinsky
William J. Fields
LEVI & KORSINKSY LLP
55 Broadway, 10th Floor
New York, NY 10006
Telephone: (212) 363-7500
Facsimile: (212) 363-7171

*Counsel for Charles Ojeda*

**Chaile Steinberg**

By: _____
Hung G. Ta (admitted *Pro Hac Vice*)
HGT LAW
250 Park Avenue, 7th Floor
New York, NY 10177
Telephone: (646) 453-7288
Facsimile: (646) 453-7289
hta@hgtlaw.com

By: _____
Peter Safirstein (admitted *Pro Hac Vice*)
Elizabeth S. Metcalf
SAFIRSTEIN METCALF LLP
The Empire State Building
350 Fifth Avenue, 59th Floor
New York, NY 10118
Telephone: (212) 201-2855
Facsimile: (212) 201-2858
psafirstein@safirsteinmetcalf.com
emetcalf@safirsteinmetcalf.com

*Co-Counsel for Chaile Steinberg*

**Charles Ojeda**

By: _____
Eduard Korsinsky
William J. Fields
LEVI & KORSINKSY LLP
55 Broadway, 10th Floor
New York, NY 10006
Telephone: (212) 363-7500
Facsimile: (212) 363-7171

*Counsel for Charles Ojeda*

57

425 Market Street
San Francisco, CA  94105
Telephone:  (415) 268-7000
Facsimile:  (415) 268-7522
Email:  pbesirof@mofo.com

47.     Except as otherwise provided herein, each Party shall bear its own costs.

48.     Whether or not the Stipulation is approved by the Court and whether or not the Stipulation is consummated, or the Effective Date occurs, the Parties and their counsel shall use their best efforts to keep all negotiations, discussions, and drafts in connection with the Stipulation confidential.

**IN WITNESS WHEREOF,** the Parties hereto have caused this Stipulation to be executed, by their duly authorized attorneys, as of December 11, 2019.

| **Co-Lead Counsel for Plaintiffs** | **McKesson Corporation** |
|---|---|
| By: _____ | By: _____ |
| Reed R. Kathrein (139304) | Philip Besirof (185053) |
| HAGENS BERMAN SOBOL SHAPIRO LLP | Jordan Eth (121617) |
| 715 Hearst Avenue, Suite 202 | David J. Wiener (291659) |
| Berkeley, CA  94710 | MORRISON & FOERSTER LLP |
| Telephone: (510) 725-3000 | 425 Market Street |
| Facsimile:  (510) 725-3001 | San Francisco, CA  94105 |
| reed@hbsslaw.com | Telephone: (415) 268-7000 |
| | Facsimile:  (415) 268-7522 |
| Steve W. Berman (admitted *Pro Hac Vice*) | pbesirof@mofo.com |
| Ronnie S. Spiegel (admitted *Pro Hac Vice*) | jeth@mofo.com |
| HAGENS BERMAN SOBOL SHAPIRO LLP 1301 Second Avenue, Suite 2000 | dwiener@mofo.com |
| Seattle, WA  98101 | *Counsel for Nominal Defendant McKesson Corporation* |
| Telephone: (206) 623-7292 | |
| Facsimile:  (206) 623-0594 | |
| steve@hbsslaw.com | |

ronnie@hbsslaw.com

*Co-Lead Counsel for Plaintiffs*

By: _____
James S. Notis (admitted *Pro Hac Vice*)
Meagan Farmer (admitted *Pro Hac Vice*)
GARDY & NOTIS, LLP
Tower 56
126 East 56th Street, 8th Floor
New York, NY  10022
Telephone: (212) 905-0509
Facsimile:  (212) 905-0508
jnotis@gardylaw.com
mfarmer@gardylaw.com

*Co-Lead Counsel for Plaintiffs*

**Eli Inzlicht**

By: _____
James S. Notis (admitted *Pro Hac Vice*)
Meagan Farmer (admitted *Pro Hac Vice*)
GARDY & NOTIS, LLP
Tower 56
126 East 56th Street, 8th Floor
New York, NY  10022
Telephone: (212) 905-0509
Facsimile:  (212) 905-0508
jnotis@gardylaw.com
mfarmer@gardylaw.com

*Counsel for Eli Inzlicht*

**Vladimir Gusinsky, As Trustee For The Vladimir Gusinsky Living Trust**

By: _____
Jeffrey C. Block (*Pro Hac Vice* forthcoming)
Joel Fleming (281264)
BLOCK & LEVITON LLP
260 Franklin Street, Suite 1860
Boston, MA  02110
Telephone: (617) 398-5600
Facsimile:  (617) 507-6020
jeff@blockesq.com
joel@blockesq.com

*Counsel for Vladimir Gusinsky, As*

**Andy D. Bryant, Wayne A. Budd, N. Anthony Coles, Alton F. Irby, III, M. Christine Jacobs, Donald Knauss, Marie L. Knowles, David M. Lawrence, Edward A. Mueller, Susan Salka, Laureen Seeger, and Jane E. Shaw**

By: _____
Robert P. Varian (107459)
Melinda L. Haag (132612)
Amy M. Ross (215692)
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA  94105
Telephone: (415) 773-5700
Facsimile:  (415)773-5759
rvarian@orrick.com
mhaag@orrick.com
aross@orrick.com

*Counsel for Andy D. Bryant, Wayne A. Budd, N. Anthony Coles, Alton F. Irby, III, M. Christine Jacobs, Donald Knauss, Marie L. Knowles, David M. Lawrence, Edward A. Mueller, Susan Salka, Laureen Seeger, and Jane E. Shaw*

**John H. Hammergren**

By: _____
John W. Spiegel (78935)
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA  90071
Telephone: (213) 683-9100
Facsimile:  (213) 687-3702
john.spiegel@mto.com

Achyut J. Phadke (261567)
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA  94105
Telephone: (415) 512-4000
Facsimile:  (415) 512-4077
achyut.phadke@mto.com

*Counsel for John H. Hammergren*

54

ronnie@hbsslaw.com

*Co-Lead Counsel for Plaintiffs*

By: _____
James S. Notis (admitted *Pro Hac Vice*)
Meagan Farmer (admitted *Pro Hac Vice*)
GARDY & NOTIS, LLP
Tower 56
126 East 56th Street, 8th Floor
New York, NY 10022
Telephone: (212) 905-0509
Facsimile: (212) 905-0508
jnotis@gardylaw.com
mfarmer@gardylaw.com

*Co-Lead Counsel for Plaintiffs*

**Eli Inzlicht**

By: _____
James S. Notis (admitted *Pro Hac Vice*)
Meagan Farmer (admitted *Pro Hac Vice*)
GARDY & NOTIS, LLP
Tower 56
126 East 56th Street, 8th Floor
New York, NY 10022
Telephone: (212) 905-0509
Facsimile: (212) 905-0508
jnotis@gardylaw.com
mfarmer@gardylaw.com

*Counsel for Eli Inzlicht*

**Vladimir Gusinsky, As Trustee For The Vladimir Gusinsky Living Trust**

By: _____
Jeffrey C. Block (*Pro Hac Vice* forthcoming)
Joel Fleming (281264)
BLOCK & LEVITON LLP
260 Franklin Street, Suite 1860
Boston, MA 02110
Telephone: (617) 398-5600
Facsimile: (617) 507-6020
jeff@blockesq.com
joel@blockesq.com

*Counsel for Vladimir Gusinsky, As*

**Andy D. Bryant, Wayne A. Budd, N. Anthony Coles, Alton F. Irby, III, M. Christine Jacobs, Donald Knauss, Marie L. Knowles, David M. Lawrence, Edward A. Mueller, Susan Salka, Laureen Seeger, and Jane E. Shaw**

By: _____
Robert P. Varian (107459)
Melinda L. Haag (132612)
Amy M. Ross (215692)
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105
Telephone: (415) 773-5700
Facsimile: (415) 773-5759
rvarian@orrick.com
mhaag@orrick.com
aross@orrick.com

*Counsel for Andy D. Bryant, Wayne A. Budd, N. Anthony Coles, Alton F. Irby, III, M. Christine Jacobs, Donald Knauss, Marie L. Knowles, David M. Lawrence, Edward A. Mueller, Susan Salka, Laureen Seeger, and Jane E. Shaw*

**John H. Hammergren**

By: _____
John W. Spiegel (78935)
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
Telephone: (213) 683-9100
Facsimile: (213) 687-3702
john.spiegel@mto.com

Achyut J. Phadke (261567)
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105
Telephone: (415) 512-4000
Facsimile: (415) 512-4077
achyut.phadke@mto.com

*Counsel for John H. Hammergren*

54

*Trustee For The Vladimir Gusinsky Living Trust*

**Amalgamated Bank, as Trustee for Longview Largecap 500 Index Fund and Longview Largecap 500 Index VEBA Fund**

By: _____
Mark Lebovitch
David Wales (admitted *Pro Hac Vice*)
BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
markl@blbglaw.com
davidw@blbglaw.com

By: _____
Christine M. Mackintosh (admitted *Pro Hac Vice*)
Kimberly Evans (admitted *Pro Hac Vice*)
GRANT & EISENHOFER P.A.
123 Justison Street
Wilmington, DE 19801
Telephone: (302) 622-7081
Facsimile: (302) 622-7100
cmackintosh@gelaw.com
kevans@gelaw.com

*Co-Counsel for Intervening Plaintiffs Amalgamated Bank, as Trustee for Longview Largecap 500 Index Fund and Longview Largecap 500 Index VEBA Fund*

**Michael Berent, Trustee, on behalf of Police & Fire Retirement System City of Detroit**

By: _____
Christine M. Mackintosh (admitted *Pro Hac Vice*)
Kimberly Evans (admitted *Pro Hac Vice*)
GRANT & EISENHOFER P.A.
123 Justison Street
Wilmington, DE 19801
Telephone: (302) 622-7081

**Special Litigation Committee Established by the McKesson Corporation Board of Directors**

By: _____
Sean Eskovitz (241877)
WILKINSON WALSH + ESKOVITZ, LLP
11601 Wilshire Boulevard, Suite 600
Los Angeles, CA 90025
Telephone: (424) 316-4000
Facsimile: (202) 847-4005
seskovitz@wilkinsonwalsh.com

Beth A. Wilkinson (admitted *Pro Hac Vice*)
Rakesh N. Kilaru (admitted *Pro Hac Vice*)
WILKINSON WALSH + ESKOVITZ, LLP
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
bwilkinson@wilkinsonwalsh.com
rkilaru@wilkinsonwalsh.com

*Counsel for Special Litigation Committee Established by the McKesson Corporation Board of Directors*

**Paul Julian and Mark Walchirk**

By: _____

William H. Kimball (242626)
KANE+KIMBALL LLP
803 Hearst Avenue
Berkeley, CA 94710
(510) 704-1400 tel
(877) 482-4749 fax
wkimball@kanekimball.com

*Counsel for Paul Julian and Mark Walchirk*

*Trustee For The Vladimir Gusinsky Living Trust*

**Amalgamated Bank, as Trustee for Longview Largecap 500 Index Fund and Longview Largecap 500 Index VEBA Fund**

By: _____
Mark Lebovitch
David Wales (admitted *Pro Hac Vice*)
BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
markl@blbglaw.com
davidw@blbglaw.com

By: _____
Christine M. Mackintosh (admitted *Pro Hac Vice*)
Kimberly Evans (admitted *Pro Hac Vice*)
GRANT & EISENHOFER P.A.
123 Justison Street
Wilmington, DE 19801
Telephone: (302) 622-7081
Facsimile: (302) 622-7100
cmackintosh@gelaw.com
kevans@gelaw.com

*Co-Counsel for Intervening Plaintiffs Amalgamated Bank, as Trustee for Longview Largecap 500 Index Fund and Longview Largecap 500 Index VEBA Fund*

**Michael Berent, Trustee, on behalf of Police & Fire Retirement System City of Detroit**

By: _____
Christine M. Mackintosh (admitted *Pro Hac Vice*)
Kimberly Evans (admitted *Pro Hac Vice*)
GRANT & EISENHOFER P.A.
123 Justison Street
Wilmington, DE 19801
Telephone: (302) 622-7081

**Special Litigation Committee Established by the McKesson Corporation Board of Directors**

By: _____
Sean Eskovitz (241877)
WILKINSON WALSH + ESKOVITZ, LLP
11601 Wilshire Boulevard, Suite 600
Los Angeles, CA 90025
Telephone: (424) 316-4000
Facsimile: (202) 847-4005
seskovitz@wilkinsonwalsh.com

Beth A. Wilkinson (admitted *Pro Hac Vice*)
Rakesh N. Kilaru (admitted *Pro Hac Vice*)
WILKINSON WALSH + ESKOVITZ, LLP
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
bwilkinson@wilkinsonwalsh.com
rkilaru@wilkinsonwalsh.com

*Counsel for Special Litigation Committee Established by the McKesson Corporation Board of Directors*

**Paul Julian and Mark Walchirk**

By: _____

William H. Kimball (242626)
KANE+KIMBALL LLP
803 Hearst Avenue
Berkeley, CA 94710
(510) 704-1400 tel
(877) 482-4749 fax
wkimball@kanekimball.com

*Counsel for Paul Julian and Mark Walchirk*

55

# Exhibit A

**Exhibit A**
**Agreement on McKesson Corporate Governance Reforms**

I.     **COMMITMENT STATEMENT**

     A.     McKesson agrees to adopt and include in its Corporate Governance Guidelines the following commitment statement:

> McKesson is committed and obligated to business practices and corporate values of compliance with applicable laws and regulations related to the lawful distribution of controlled substances, including compliance with the Controlled Substance Act of 1970. This commitment includes compliance with the all settlements, agreements and consent decrees related to the lawful distribution of controlled substances.

II.     **INDEPENDENT CHAIRMAN OF THE BOARD OF DIRECTORS**

     B.     Shortly before the first mediation session, McKesson appointed a new Chairman of the Board who is not an executive of the Company.

     C.     McKesson agrees to keep the separation of Chairman of the Board ("Chairman") and the Chief Executive Officer ("CEO") roles for the term of this Settlement.

     D.     If, after the Settlement term has expired, McKesson seeks to change this and have the same person as the Chairman and the CEO, then McKesson shall publicly disclose the change and the rationale for this change.

III.     **TERM LIMITS OF BOARD MEMBERS**

     E.     The Board shall adopt a policy, effective as of July 2022, that requires directors with more than 12 years of service on the Board to submit their resignation letters to the Board annually.

     F.     If the Board decides it is in the best interests of the Company and its shareholders to reject a resignation based on 12 or more years' service on the Board, the Board will disclose its rationale in the Company's publicly filed Proxy Statement.

G.      The ability of the Board to reject a Board member's resignation and extend a Board member's service beyond the 2021 annual meeting of stockholders will not apply to any Board member who had served 12 or more years as of January 1, 2019.

## IV.     INDEPENDENT DIRECTORS

H.      Plaintiffs made a settlement demand that included McKesson appointing two new independent directors to the Board, with at least one new member having relevant experience as described below.

I.      After the Plaintiffs made the settlement demand, McKesson appointed Dr. Kenneth E. Washington, as a new independent director to the Board.

J.      The Company agrees to appointment or election of one additional independent director no later than the Company's 2022 annual shareholder meeting.

K.      The new director must have (i) relevant experience in law, corporate compliance, regulatory or governmental affairs relevant to regulatory and/or compliance issues faced by the Company; or (ii) service, whether as an employee or director, with a healthcare, pharmaceutical or medical institution or company regulated by the United States Food and Drug Administration (the "FDA"), the Drug Enforcement Administration (the DEA"), Department of Health and Human Services ("HHS"), Centers for Medicare and Medicaid Services, or other healthcare regulatory body.

L.      In selecting the new director, the Company shall make best efforts to prioritize a diverse slate of candidates.

## V.     REFORMS TO THE CHARTER AND CHECKLIST FOR THE COMPLIANCE COMMITTEE

M.      In January 2019, shortly before the first mediation, McKesson formed a Compliance Committee to assist the Board in overseeing (i) the Company's compliance

programs and (ii) management's identification and evaluation of the principal legal and regulatory compliance risks facing the Company.

N.      The objectives and responsibilities of the Compliance Committee will include the following:

      i.    Review McKesson's compliance with relevant laws, regulations, and corporate policies (including the Company's Code of Conduct) governing the distribution of controlled substances and reporting of suspicious orders pursuant to the Company's Controlled Substance Monitoring Program (the "CSMP");

      ii.    Review the Company's adherence with the 2017 settlement with the DEA and the DOJ, including the provisions of the 2017 Compliance Addendum;

      iii.    Review information about current and emerging legal and regulatory compliance risks and enforcement trends that may affect the Company's business operations, performance or strategy;

      iv.    Oversee the Company's compliance programs, including review of, with the appropriate members of management, the organizational structure, staffing, implementation and management's assessment of the effectiveness of the Company's compliance programs relating to the Company's principal legal and regulatory compliance risks, the related policies and procedures, and the adequacy of the resources for those programs; and

      v.    Review of the Company's compliance policies and procedures, including the Company's Code of Conduct, relevant "whistleblower" reporting and non-retaliation policies, relevant education and training, and other written

compliance policies and procedures that guide the Company and the conduct of its agents in day-to- day operations.

O.       The detailed objectives and responsibilities of the Compliance Committee are set forth in the Compliance Committee Charter and in checklists used by the Compliance Committee. The objective and responsibilities set forth above will be included in the Compliance Committee Charter, which is published on the Company's corporate website.

## VI.    REFORMS TO THE COMPOSITION OF THE COMPLIANCE COMMITTEE

P.       Plaintiffs demanded that the Compliance Committee be comprised of 75% or more of independent directors who joined the Board after January 1, 2018.

Q.       After the demand was made, McKesson added a new independent director to the Compliance Committee, so that 75% of the members of the Compliance Committee are independent directors who joined the Board after January 1, 2018.

R.       The Compliance Committee shall be required to continue to have 75% or more of its members be independent directors who joined the Board after January 1, 2018. In the event of a departure of a director who currently serves on the Compliance Committee and who joined the Board after January 1, 2018, this requirement shall be temporarily stayed pending appointment or election of an additional director who satisfies the requirements. The four-year term of this provision will be tolled during the time the requirement was not in place, so that this requirement will be in place for a full four-year period.

S.       The Compliance Committee shall be required to continue to have 50% or more of its members be directors who have (i) relevant experience in law, corporate compliance, regulatory or governmental affairs relevant to regulatory and/or compliance issues faced by the Company; or (ii) service, whether as an employee or director, with a healthcare, pharmaceutical or medical institution or company regulated by the United States Food and Drug Administration (the "FDA"),

4

the Drug Enforcement Administration (the DEA"), Department of Health and Human Services ("HHS"), Centers for Medicare and Medicaid Services, or other healthcare regulatory body.

T.      The Chair of the Compliance Committee shall be an independent director elected or appointed to the Board since January 1, 2018, who has relevant experience in law, corporate compliance, regulatory or governmental affairs, academia or service on the Board or as an executive officer of a healthcare, pharmaceutical or medical institution or company regulated by the FDA and/or the DEA.

## VII.    TRAINING AND EDUCATION FOR COMPLIANCE COMMITTEE MEMBERS

U.      Upon joining the Compliance Committee, each Committee member will receive training from a Qualified Expert (as defined below) on applicable DEA and FDA laws, regulations, and guidance for drug distributors, including but not limited to those related to the Comprehensive Drug Abuse Prevention and Control Act of 1970 (the "CSA"), compliance with laws and regulations governing proper distribution of controlled substances and reporting of suspicious orders and the CSMP.  The Qualified Expert will also provide a review of industry best-practices and recommendations for the prevention and detection of illegal diversion of controlled substances.

V.      The initial training shall include a review of (i) McKesson's 2008 settlement with the DEA and the United States Department of Justice (the "DOJ"), including DEA's and DOJ's allegations, and the requirements under the May 2008 Settlement and Release Agreement and Administrative Memorandum of Agreement (the "2008 Agreement") and (ii) McKesson's 2017 settlement with the DEA and the DOJ, including DEA's and DOJ's allegations, and the requirements under the 2017 Administrative Memorandum of Agreement and the Compliance Addendum.

W.     The Compliance Committee will receive on an annual basis in-person training from a Qualified Expert (as defined below) on the applicable DEA and FDA laws, regulations, and guidance for drug distributors, updates on developments in compliance and enforcement actions, including but not limited to those related to the CSA, compliance with laws and regulations governing proper distribution of controlled substances and reporting of suspicious orders, and the CSMP.  The Qualified Expert will also provide a review of industry best-practices and recommendations for the prevention and detection of illegal diversion of controlled substances.

X.     Qualified Expert shall mean an individual who has relevant legal and regulatory expertise on applicable DEA and FDA laws, regulations, and guidance for drug distributors, including but not limited to the CSA.

Y.     Qualified Expert shall not include employees of the Company but may include outside consultants (such as outside counsel) who have previously advised the Company.  The training for the Compliance Committee may include persons in addition to the Qualified Expert.

## VIII.  INFORMATION AND REPORTS TO BE PROVIDED TO THE COMPLIANCE COMMITTEE

### 1.     Government Inquiries, Investigations and Actions

Z.     On at least a quarterly basis, the General Counsel and/or Chief Compliance Officer will report to the Compliance Committee and, where appropriate, the Audit Committee and/or Board of Directors regarding:

(a)     letters or notifications from the DEA and/or the DOJ raising concerns about compliance with the CSA, including but not limited to reporting of suspicious orders, as well as any problems or issues with the CSMP;

(b)     any Demand Letters received by the Company from the DEA, as described in Section 9 of the 2017 Agreement;

(c)     any DEA and/or DOJ orders to show cause, administrative inspection warrants, and/or search warrants served or initiated against the Company;

(d)     state regulatory and attorney general subpoenas and/or actions concerning improper and/or illegal distribution of controlled substances; and

(e)     significant, as defined by criteria to be developed by the Compliance Committee, state regulatory and attorney general inquiries or investigations, concerning improper and/or illegal distribution of controlled substances.

The General Counsel and/or Chief Compliance Officer shall report on the matters described above and provide updates on material developments in such matters.   The form, content, and level of detail of the reports shall be approved by the Compliance Committee.

## 2.     External Complaints

AA.     On a quarterly basis, the General Counsel and/or Chief Compliance Officer will report to the Compliance Committee and, where appropriate, the Audit Committee and/or Board of Directors regarding other external complaints or inquiries deemed significant, as defined by criteria to be developed by the Compliance Committee, alleging concerns about McKesson's regulatory and/or compliance behavior, including but not limited to any qui tam actions or reports of such actions and FDA 483 reports and warning letters. The General Counsel and/or Chief Compliance Officer shall report on the matters described above and provide updates on material developments in such matters.  The form and the level of detail of the reports shall be approved by the Compliance Committee.

## 3.     Internal Complaints

BB.     The Compliance Committee shall receive quarterly summaries of reports made through McKesson's Integrity Line that involve allegations relating to (i) violations of or non-compliance with the CSMP, (ii) reporting of suspicious orders, (iii) violations of the 2017 Agreement, or (iv) the distribution of opioids.  The Compliance Committee shall be provided with additional materials regarding individual reports as warranted.

### 4. Analysis of Compliance with the CSA, the CSMP and Reporting of Suspicious Orders

CC.     The Compliance Committee shall meet, on at least a semi-annual basis, with the Senior VP of the Regulatory Affairs Department responsible for the CSMP who shall update the Committee regarding the Regulatory Affairs Department's administration of the CSMP and the Company's compliance with the 2017 Agreement. At each such meeting, the Committee shall be provided with an analysis of at least the following information:

        a.      Number of due diligence reviews conducted;

        b.      Number of suspicious orders reported;

        c.      Number of customers terminated;

        d.      Number of new customers on-boarded through the CSMP; and

        e.      Any significant changes to the threshold-setting algorithms developed by the Analysis Group, Inc. ("AGI") and employed as part of the CSMP.

DD.     The Compliance Committee can modify these criteria based on good cause, including changes in the law or the DEA's and/or FDA's regulatory approaches. Any such change made during the term of the Settlement must be approved by the Board as a whole and publicly disclosed, including the reasons for the change.

EE.     At least annually, the Senior VP of the Regulatory Affairs Department shall provide the Committee with a summary of each Annual Threshold Analysis and Assessment Report described in the 2017 Agreement.

FF.     The Compliance Committee shall direct management to review ARCOS data available to McKesson on at least a quarterly basis.  Management shall report annually to the Compliance Committee on the use of ARCOS data in connection with due diligence reviews performed as part of the CSMP.

### 5. Reporting to the Compliance Committee

GG.    The Compliance Committee shall receive reports regarding regulatory compliance issues from each of the following individuals and members of the following organization each year;

     a.     Chief Compliance Officer;

     b.     General Counsel;

     c.     National Governance Committee;

     d.     SVP of Internal Audit;

     e.     SVP of the Regulatory Affairs for the CSMP; and

     f.     Outside Counsel.

HH.    To the extent that some of the individuals listed above may also be members of the organization listed above, one person can provide a single report to the Compliance Committee on behalf of both their position and their membership in the organization.

II.    The Compliance Committee shall receive any formal notices received from the DEA and/or the DOJ as part of the 2017 Agreement.

JJ.    The Compliance Committee will be provided with all reports and recommendations of the Independent Review Organization (the "IRO").

### IX. AUTHORITY OF THE COMPLIANCE COMMITTEE

KK.    The Compliance Committee has the authority to:

     a.     Require management to conduct audits on compliance, regulatory and/or legal concerns and, where appropriate, direct management to provide the results of such audits to the Compliance Committee directly;

     b.     Commission such other studies, analyses, reviews and/or surveys as it deems appropriate to evaluate McKesson's compliance with regulatory

9

requirements, as well as to evaluate the quality of the personnel, committees and entities providing compliance and regulatory services to McKesson;

c.     Retain outside counsel and additional experts and consultants in the discharge of its responsibilities;

d.     Request and meet privately with any member of McKesson's senior management team or any other McKesson employee; and

e.     Review the appointment, compensation, performance and replacement, as necessary, of the Company's Chief Compliance Officer.

LL.     The Compliance Committee shall commission outside counsel to review the results of the Company's annual risk assessment process and shall consider as part of this process McKesson's policies for significant healthcare-related compliance, regulatory and/or legal issues.

MM.     The positions of General Counsel and the Chief Compliance Officer shall be separated.

NN.     The Compliance Committee shall review and approve any decision to hire, discipline, or terminate the Chief Compliance Officer.

## X.    REPORTING RESPONSIBILITY OF THE COMPLIANCE COMMITTEE

OO.     The Compliance Committee shall, at least annually, deliver a report, which shall include written presentation materials, to the Board as a whole, including a summary description of any findings and actions taken by the Compliance Committee.

PP.     The Compliance Committee shall, at least annually, issue a public written summary of its activities.

**XI.    RESPONSIBILITIES AS BETWEEN THE AUDIT COMMITTEE AND THE COMPLIANCE COMMITTEE**

QQ.    The charter of the Compliance Committee provides that the Chair of the Audit Committee shall serve on the Compliance Committee.  This requirement shall be maintained.

RR.    Management shall report to the Audit Committee and Compliance Committee regarding any significant disciplinary action taken against (i) any compliance or internal audit personnel who reports directly to the Chief Compliance Officer or VP of Internal Audit or (ii) any compliance or internal audit personnel who have reported to management, within the last three years, complaints or concerns related to compliance or regulatory matters.  Management's report shall include the nature of the conduct that led to the disciplinary action, the disciplinary action and the reason for it, and an analysis of whether the underlying conduct reflects any significant compliance or regulatory problems or issues.

**XII.    THE COMPLIANCE COMMITTEES TERM**

SS.    The Compliance Committee shall be operative for, at a minimum, five (5) years from the District Court's approval of the settlement in this Action and may be continued thereafter at the discretion of the full Board.

TT.    Prior to the end of the Compliance Committee's term, the Board, after receiving the recommendation of the Committee, will determine whether to extend the Compliance Committee's term. The decision of the Board shall be reported to the shareholders in the Company's Annual Report or Proxy Statement.

**XIII.    THE COMPLIANCE COMMITTEE AND COMPENSATION COMMITTEE COORDINATION**

UU.    The Compliance Committee Chair or full Committee shall deliver a report, which shall include a written component, to the Compensation Committee Chair or full Committee regarding the performance of relevant members of senior management with respect to efforts

11

relating to the Company's compliance with applicable laws, regulations and rules. This report shall occur at least annually before executive compensation is approved by the Compensation Committee.

VV.    The detailed objectives and responsibilities of the Compensation Committee and Compliance Committee are set forth in their respective charters and in checklists used by the Committees.   The reporting requirement by the Compliance Committee to the Compensation Committee set forth above will be included in the Compliance Committee Charter, which is published on the Company's corporate website.

## XIV.   COMPENSATION CLAW-BACK

WW.   McKesson's recoupment policy shall be revised to include the following bolded language:

If any employee (i) engages in misconduct pertaining to a financial reporting requirement under the federal securities laws that requires the Company to file a restatement of its audited financial statements with the Securities and Exchange Commission (the "SEC") to correct an error; (ii) receives Incentive Compensation based on a an inaccurate financial or operating measure that when corrected causes significant harm to the Company; (iii) engages in any fraud, theft, misappropriation, embezzlement or dishonesty to the detriment of the Company's financial results as filed with the SEC; or **(iv) engages in conduct which is not in good faith and which disrupts, damages, impairs or interferes with the business, reputation or employees of the Company or any of its subsidiaries or affiliates**;   then, to the fullest extent permitted by law, the Company may require the employee to reimburse the Company for all or a portion of any Incentive Compensation received in cash within 12 months preceding the Measurement Date, and remit to the

Company any Incentive Compensation received from the vesting or exercise of equity-based awards occurring within 12 months preceding the Measurement Date.

## XV.   DISCLOSURE OF LOBBYING EFFORTS RELATED TO CONTROLLED SUBSTANCES

XX.   McKesson's Board shall exercise oversight of political activity including lobbying activities. McKesson's Board shall disclose to shareholders, on an annual basis, (i) the aggregate dollars spent on lobbying; (ii) McKesson's policy priorities for lobbying in the year, including with respect to laws or regulations governing the distribution of controlled substances; and (iii) a summary of McKesson's material lobbying efforts in the year with respect to laws or regulations governing the distribution of controlled substances.

## XVI.   DISCLOSURE OF IMPACT OF LEGAL OR COMPLIANCE COSTS ON INCENTIVE COMPENSATION

YY.   If any financial performance metric is adjusted to exclude Legal or Compliance Costs when evaluating performance for purposes of determining the amount or vesting of any senior executive Incentive Compensation award, McKesson shall disclose such adjustment and shall specifically state the reason for the adjustment. "Legal or Compliance Costs" are expenses or charges associated with any investigation, litigation or enforcement action related to the Company's marketing, sale or distribution of controlled substances, including legal fees; amounts paid in fines, penalties or damages; and amounts paid in connection with monitoring required by any settlement or judgement of claims of the kind described above.

## XVII.   TERM OF THE CORPORATE GOVERNANCE REFORMS

ZZ.   Unless specified otherwise in this agreement, the terms of this agreement are for four (4) years from the date of the approval of the proposed settlement by the United States District Court for the Northern District of California.

# Exhibit B

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE MCKESSON CORPORATION DERIVATIVE LITIGATION | Case No. 4:17-cv-01850-CW<br><br>**[PROPOSED] ORDER PRELIMINARILY APPROVING SETTLEMENT AND AUTHORIZING DISSEMINATION OF SETTLEMENT NOTICE**<br><br>The Honorable Claudia Wilken |

WHEREAS, a consolidated stockholder derivative action is pending in this Court entitled *In re McKesson Corporation Derivative Litigation*, No. 4:17-cv-01850-CW (the "California Action");

WHEREAS, (a) plaintiffs in the California Action, Eli Inzlicht; Vladimir Gusinsky, as Trustee for the Vladimir Gusinsky Living Trust; Chaile Steinberg; Michael Berent, Trustee of the Police & Fire Retirement System City of Detroit; and Amalgamated Bank, as Trustee for Longview Largecap 500 Index Fund and Longview Largecap 500 Index VEBA Fund

[PROPOSED] ORDER PRELIMINARILY APPROVING SETTLEMENT AND AUTHORIZING DISSEMINATION OF SETTLEMENT NOTICE CASE NO. 4:17-CV-01850-CW

1

(collectively, the "California Plaintiffs"); (b) plaintiffs in the stockholder derivative action pending in the Court of Chancery of the State of Delaware (the "Delaware Court"), styled as *In re McKesson Corporation Stockholder Derivative Litigation*, Consol. C.A. No. 2017-0736-SG (the "Delaware Action" and, together with the California Action, the "Actions"), Katielou Greene and Charles Ojeda (collectively, the "Delaware Plaintiffs" and, together with the California Plaintiffs, "Plaintiffs"); (c) current and former defendants in the California Action and/or the Delaware Action, Andy Bryant; Wayne A. Budd; John Hammergren; M. Christine Jacobs; Marie L. Knowles; Edward Mueller; Donald Knauss; Susan Salka; N. Anthony Coles; Alton Irby III; David Lawrence; Jane Shaw; Laureen Seeger; Paul Julian; and Mark Walchirk (collectively, "Defendants"); (d) the Special Litigation Committee formed by the Board of Directors of Nominal Defendant McKesson Corporation (the "SLC"); and (e) Nominal Defendant McKesson Corporation ("Nominal Defendant," "McKesson," or the "Company" and, together with Plaintiffs, Defendants, and the SLC, the "Parties") have reached a proposed settlement on the terms and conditions set forth in the Stipulation and Agreement of Compromise, Settlement, and Release dated December 11, 2019 (the "Stipulation") subject to the approval of this Court (the "Settlement");

WHEREAS, the California Plaintiffs have made an application in this Court, pursuant to Rule 23.1 of the Federal Rules of Civil Procedure, for an order preliminarily approving the Settlement in accordance with the Stipulation and allowing notice to McKesson stockholders as more fully described herein;

WHEREAS, the Court has read and considered: (a) the California Plaintiffs' motion for preliminary approval of the Settlement and authorization to send notice of the Settlement to McKesson stockholders, and the papers filed and arguments made in connection therewith; and (b) the Stipulation and the exhibits attached thereto; and

WHEREAS, unless otherwise defined herein, all capitalized words contained herein shall have the same meanings as they have in the Stipulation;

2

[PROPOSED] ORDER PRELIMINARILY
APPROVING SETTLEMENT AND
AUTHORIZING DISSEMINATION OF
SETTLEMENT NOTICE
CASE NO. 4:17-CV-01850-CW

NOW THEREFORE, IT IS HEREBY ORDERED:

1. **Preliminary Approval of the Settlement** – The Court hereby preliminarily approves the Settlement, as embodied in the Stipulation and the exhibits attached thereto, subject to further consideration at the Settlement Fairness Hearing to be held as described below.

2. **Settlement Fairness Hearing** – The Court will hold a hearing (the "Settlement Fairness Hearing") on _____, 2020 at __:__ _.m. at the United States District Court for the Northern District of California, Oakland Courthouse, Courtroom 6 – Second Floor, 1301 Clay Street, Oakland, CA 94612, for the following purposes:  (a) to determine whether the California Plaintiffs and Plaintiffs' Lead Counsel have adequately represented the interests of McKesson and its stockholders; (b) to determine whether the proposed Settlement on the terms and conditions provided for in the Stipulation is fair, reasonable, and adequate to McKesson and its stockholders, and should be approved by the Court; (c) to determine whether the Judgment, substantially in the form attached as Exhibit C to the Stipulation, should be entered dismissing the California Action with prejudice; (d) to determine whether the application by Plaintiffs' Lead Counsel for an award of attorneys' fees and expenses should be approved; and (e) to consider any other matters that may properly be brought before the Court in connection with the Settlement.

3. The Court reserves the right to adjourn the Settlement Fairness Hearing or any adjournment thereof, including the consideration of the application for attorneys' fees and expenses, without further notice of any kind other than oral announcement at the Settlement Fairness Hearing or any adjournment thereof.  The Court further reserves the right to approve the Stipulation and the Settlement, at or after the Settlement Fairness Hearing, with such modifications as may be consented to by the Parties and without further notice to McKesson stockholders.

4. **Manner of Giving Notice** – Notice of the Settlement and the Settlement Fairness Hearing shall be given by McKesson as follows:

[PROPOSED] ORDER PRELIMINARILY
APPROVING SETTLEMENT AND
AUTHORIZING DISSEMINATION OF
SETTLEMENT NOTICE
CASE NO. 4:17-CV-01850-CW

(a)      not later than ten (10) calendar days following the date of entry of this Order (the "Notice Date"), McKesson shall direct its third-party investor communications providers, Alliance Advisors and Broadridge Financial Solutions, to send the Notice, substantially in the form attached hereto as Exhibit 1, to all then-current McKesson stockholders as of the Notice Date in the same manner that McKesson distributes notice to McKesson's stockholders of McKesson's annual meeting of stockholders;

(b)      not later than the Notice Date, McKesson shall post a hyperlink to a copy of the Stipulation and the Notice on the "Investor Relations" section of the Company's website, <u>investor.mckesson.com</u>, and such documents shall remain posted to the hyperlinked website through the Effective Date of the Settlement;

(c)      not later than ten (10) calendar days after the Notice Date, McKesson shall also cause the Summary Notice, substantially in the form attached hereto as Exhibit 2, to be published once in the national edition of the *New York Times* and to be transmitted once over the *PR Newswire*; and

(d)      not later than thirty-five (35) calendar days prior to the Settlement Fairness Hearing, McKesson's Counsel shall serve on Plaintiffs' Lead Counsel and file with the Court proof, by affidavit or declaration, of compliance with paragraphs 4(a)-(c) above.

5.      **<u>Approval of Form and Content of Notice</u>** – The Court (a) approves, as to form and content, the Notice and the Summary Notice, attached hereto as Exhibits 1 and 2, respectively, and (b) finds that the distribution of the Notice and the publication of the Summary Notice in the manner and form set forth in paragraph 4 of this Order:  (i) constitutes notice that is reasonably calculated, under the circumstances, to apprise McKesson stockholders of the pendency of the Actions, of the effect of the proposed Settlement (including the Releases to be provided thereunder), of Plaintiffs' Lead Counsel's application for an award of attorneys' fees and expenses, of their right to object to the Settlement and/or Plaintiffs' Lead Counsel's application for attorneys' fees and expenses, and of their right to appear at the Settlement Fairness

[PROPOSED] ORDER PRELIMINARILY
APPROVING SETTLEMENT AND
AUTHORIZING DISSEMINATION OF
SETTLEMENT NOTICE
CASE NO. 4:17-CV-01850-CW

Hearing; (ii) constitutes due, adequate and sufficient notice to all persons and entities entitled to receive notice of the proposed Settlement; and (iii) satisfies the requirements of Rule 23.1 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), and all other applicable law and rules.  The date and time of the Settlement Fairness Hearing shall be included in the Notice before it is distributed.

6.      **Appearance and Objections at Settlement Fairness Hearing** – Any current McKesson stockholder who or which continues to own shares of McKesson common stock as of the date of the Settlement Fairness Hearing ("Current McKesson Stockholder") may file a written objection to the proposed Settlement and/or Plaintiffs' Lead Counsel's application for an award of attorneys' fees and expenses, and appear at the Settlement Fairness Hearing and show cause, if he, she, or it has any cause, why the proposed Settlement and/or the application for attorneys' fees and expenses should not be approved; *provided, however*, that no such person or entity shall be heard or entitled to contest the approval of the terms and conditions of the proposed Settlement and/or the application for attorneys' fees and expenses unless that person or entity has filed a written objection with the Court.  Any written objection, together with copies of all other papers and briefs supporting the objection, must be mailed to the Office of the Clerk of the Court, United States District Court for the Northern District of California, Oakland Division, 1301 Clay Street, Oakland, CA 94612, or filed in person at any location of the United States District Court for the Northern District of California, so that it is filed or postmarked no later than twenty-one (21) calendar days prior to the Settlement Fairness Hearing.  Any objections, filings, and other submissions must clearly identify the case name and action number, *In re McKesson Corporation Derivative Litigation*, No. 17-cv-01850-CW, and they must:  (a) state the name, address, and telephone number of the objector and must be signed by the objector; (b) state whether the objector is represented by counsel and, if so, the name, address, and telephone number of his, her, or its counsel; (c) contain a specific, written statement of the objection(s) and the specific reason(s) for the objection(s), including any legal and evidentiary support the objector wishes to

[PROPOSED] ORDER PRELIMINARILY
APPROVING SETTLEMENT AND
AUTHORIZING DISSEMINATION OF
SETTLEMENT NOTICE
CASE NO. 4:17-CV-01850-CW

bring to the Court's attention, and if the objector indicates that he, she, or it intends to appear at the Settlement Fairness Hearing, the identity of any witnesses the objector may call to testify and any exhibits the objector intends to introduce into evidence at the hearing; and (d) must include documentation sufficient to prove that the objector owned shares of McKesson common stock as of the close of trading on the Notice Date.  Plaintiffs' Lead Counsel are authorized to request from any objector documentation sufficient to prove continuous ownership of McKesson common stock.  All objections will be scanned into the electronic case docket, and the parties will receive electronic notices of filings.  Any Current McKesson Stockholder who or which has filed a written objection in the manner provided herein may also appear at the Settlement Fairness Hearing, either in person or through his, her, or its own attorney, at his, her, or its own expense.

7.      Any McKesson stockholder who or which does not make his, her, or its objection in the manner provided herein shall be deemed to have waived his, her, or its right to object to any aspect of the proposed Settlement or Plaintiffs' Lead Counsel's application for an award of attorneys' fees and expenses (including any right of appeal) and shall be forever barred and foreclosed from objecting to the fairness, reasonableness, or adequacy of the Settlement or the requested attorneys' fees and expenses, or from otherwise being heard concerning the Settlement or the requested attorneys' fees and expenses in this or any other proceeding, but shall otherwise be bound by this Order, the Judgment to be entered, and the Releases to be given by the Settlement.

8.      **Stay and Temporary Injunction** – Until otherwise ordered by the Court, the Court stays all proceedings in the California Action other than proceedings necessary to carry out or enforce the terms and conditions of the Stipulation.  Pending final determination of whether the Settlement should be approved, the Court (a) bars and enjoins the commencement or prosecution of any action asserting any Settled Plaintiffs' Claims or Settled Litigation Claims against any of the Released Defendants' Parties; (b) bars and enjoins the commencement or prosecution of any action asserting any Settled Defendants' Claims or Settled Litigation Claims against any of the

[PROPOSED] ORDER PRELIMINARILY
APPROVING SETTLEMENT AND
AUTHORIZING DISSEMINATION OF
SETTLEMENT NOTICE
CASE NO. 4:17-CV-01850-CW

Released Plaintiffs' Parties; and (c) bars and enjoins the commencement or prosecution of any action asserting any Settled Litigation Claims against the SLC or the SLC's Counsel.

9.    **Notice Costs** – McKesson shall assume all administrative responsibility for and will pay any and all Notice Costs, regardless of whether the Court grants final approval of the Settlement or the Effective Date fails to occur.  Neither Plaintiffs nor their counsel shall be responsible for any Notice Costs nor shall any Notice Costs be paid from the Cash Settlement Fund.

10.    **Settlement Fund** – All funds held in the Derivative Escrow Account by Citibank, N.A. (which the Court approves as the Derivative Escrow Agent) shall be deemed and considered to be *in custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as the funds shall be paid out of the Derivative Escrow Account pursuant to the terms of the Stipulation and/or further order(s) of the Court.

11.    **Taxes** – Plaintiffs' Lead Counsel is authorized and directed to prepare any tax returns and any other tax reporting form for or in respect to the Cash Settlement Fund held in the Derivative Escrow Account, to pay from the Cash Settlement Fund held in the Derivative Escrow Account any Taxes and Tax Expenses owed with respect to the Cash Settlement Fund, and to otherwise perform all obligations with respect to Taxes and any reporting or filings in respect thereof without further order of the Court in a manner consistent with the provisions of the Stipulation.

12.    **Use of This Order** – Neither this Order, the Term Sheet, the Stipulation, including the exhibits thereto, the negotiations leading to the execution of the Term Sheet and the Stipulation, nor any proceedings taken pursuant to or in connection with the Term Sheet, the Stipulation, and/or approval of the Settlement (including any arguments proffered in connection therewith):  (a) shall be offered against any of the Released Defendants' Parties or the SLC as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Released Defendants' Parties or the SLC with respect to the truth of any

[PROPOSED] ORDER PRELIMINARILY
APPROVING SETTLEMENT AND
AUTHORIZING DISSEMINATION OF
SETTLEMENT NOTICE
CASE NO. 4:17-CV-01850-CW

fact alleged by Plaintiffs or the validity of any claim that was or could have been asserted or the deficiency of any defense that has been or could have been asserted in the Actions or in any other litigation, or of any liability, negligence, fault, or other wrongdoing of any kind of any of the Released Defendants' Parties or in any way referred to for any other reason as against any of the Released Defendants' Parties, in any arbitration proceeding or other civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Stipulation; (b) shall be offered against any of the Released Plaintiffs' Parties or the SLC, as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Released Plaintiffs' Parties or the SLC that any of the Released Plaintiffs' Parties' claims are without merit, that any of the Released Defendants' Parties had meritorious defenses, or that damages recoverable under the Complaints would not have exceeded the Settlement Consideration or with respect to any liability, negligence, fault, or wrongdoing of any kind, or in any way referred to for any other reason as against any of the Released Plaintiffs' Parties, in any arbitration proceeding or other civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Stipulation; or (c) shall be construed against any of the Released Parties or the SLC as an admission, concession, or presumption that the consideration to be given in the Settlement represents the amount which could be or would have been recovered after trial; *provided, however*, that if the Stipulation is approved by the Court, the Parties, the Released Parties and their respective counsel, the SLC, and the SLC's Counsel may refer to it to effectuate the protections from liability granted therein, to support any and all defenses or counterclaims based on *res judicata*, collateral estoppel, release, good-faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim, or otherwise to enforce the terms of the Settlement.

13. **Termination of Settlement** – If the Settlement is terminated as provided in the Stipulation, the Settlement is not approved, or the Effective Date of the Settlement otherwise fails

8

[PROPOSED] ORDER PRELIMINARILY
APPROVING SETTLEMENT AND
AUTHORIZING DISSEMINATION OF
SETTLEMENT NOTICE
CASE NO. 4:17-CV-01850-CW

1  to occur, this Order shall be vacated, rendered null and void, and be of no further force and effect,

2  except as otherwise provided by the Stipulation, and this Order shall be without prejudice to the

3  rights of the Parties or any McKesson stockholders, and the Parties shall revert to their respective

4  litigation positions in the Actions as of October 15, 2019.

5      14.    **Supporting Papers** – Plaintiffs' Lead Counsel shall file and serve the opening

6  papers in support of the proposed Settlement, and Plaintiffs' Lead Counsel's application for an

7  award of attorneys' fees and expenses, no later than thirty-five (35) calendar days prior to the

8  Settlement Fairness Hearing; and reply papers, if any, shall be filed and served no later than seven

9  (7) calendar days prior to the Settlement Fairness Hearing.

10      15.    The Court retains jurisdiction to consider all further applications arising out of or

11  connected with the proposed Settlement.

12

13      **IT IS SO ORDERED.**

14

15  Dated: _____, 20__

16                                    The Honorable Claudia Wilken
                                      United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28

9

**EXHIBIT B-1**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| IN RE MCKESSON CORPORATION DERIVATIVE LITIGATION | Case No. 4:17-cv-1850-CW<br><br>The Honorable Claudia Wilken |

## NOTICE OF PENDENCY AND PROPOSED SETTLEMENT OF <u>STOCKHOLDER DERIVATIVE ACTIONS</u>

*<u>A Federal Court authorized this Notice.  This is not a solicitation from a lawyer.</u>*

TO:   ALL PERSONS OR ENTITIES WHO OR WHICH HELD SHARES OF MCKESSON CORPORATION ("MCKESSON" OR THE "COMPANY") COMMON STOCK AS OF THE CLOSE OF TRADING ON [NOTICE DATE].

The purpose of this Notice is to inform you of: (i) the pendency of the stockholder derivative action styled as *In re McKesson Corp. Derivative Litigation*, Case No. 4:17-cv-01850-CW, pending in the United States District Court for the Northern District of California, Oakland Division (the "California Court"), and the stockholder derivative action pending in the Court of Chancery of the State of Delaware (the "Delaware Court"), styled as *In re McKesson Corp. Stockholder Derivative Litigation*, Consol. C.A. No. 2017-0736-SG (the "Delaware Action" and, together with the California Action, the "Actions"); (ii) a proposed settlement of the Actions (the "Settlement"), subject to approval of the California Court, as provided in the Stipulation and Agreement of Compromise, Settlement, and Release dated as of December 11, 2019 (the "Stipulation"); (iii) the hearing that the California Court will hold on _____, 2020 at _.m to determine whether to approve the proposed Settlement and to consider the application by Plaintiffs'

Lead Counsel, on behalf of all Plaintiffs' Counsel,[1] for an award of attorneys' fees and litigation expenses; and (iv) McKesson stockholders' rights with respect to the proposed Settlement and Plaintiffs' Lead Counsel's application for attorneys' fees and expenses.[2]

**PLEASE READ THIS NOTICE CAREFULLY AND IN ITS ENTIRETY. YOUR RIGHTS WILL BE AFFECTED BY THE PROPOSED SETTLEMENT OF THIS ACTION.**

The Stipulation was entered into as of December 11, 2019, between and among (i) plaintiffs in the California Action, Eli Inzlicht; Vladimir Gusinsky, as Trustee for the Vladimir Gusinsky Living Trust; Chaile Steinberg; Michael Berent, Trustee of the Police & Fire Retirement System City of Detroit ("Detroit P&F"); and Amalgamated Bank, as Trustee for Longview Largecap 500 Index Fund and Longview Largecap 500 Index VEBA Fund ("Amalgamated") (collectively, the "California Plaintiffs"); (ii) plaintiffs in the Delaware Action, Katielou Greene and Charles Ojeda (collectively, the "Delaware Plaintiffs" and, together with the California Plaintiffs, "Plaintiffs"); (iii) current and former defendants in the California Action and/or the Delaware Action, Andy Bryant; Wayne A. Budd; John Hammergren; M. Christine Jacobs; Marie L. Knowles; Edward Mueller; Donald Knauss; Susan Salka; N. Anthony Coles; Alton Irby III; David Lawrence; Jane Shaw; Laureen Seeger; Paul Julian; and Mark Walchirk (collectively, "Defendants")[3]; (iv) the Special Litigation Committee formed by the Board of Directors of Nominal Defendant McKesson Corporation (the "SLC"); and (v) nominal defendant McKesson Corporation ("McKesson" or the "Company" and together with Plaintiffs, Defendants, and the SLC, the "Parties"), subject to the

---

[1] "Plaintiffs' Counsel" consist of the law firms of Hagens Berman Sobol Shapiro LLP; Gardy & Notis, LLP; Block & Leviton LLP; Bernstein Litowitz Berger & Grossmann LLP; Grant & Eisenhofer P.A.; HGT Law; Safirstein Metcalf LLP; and Levi & Korsinsky, LLP.  Hagens Berman Sobol Shapiro LLP and Gardy & Notis, LLP are "Plaintiffs' Lead Counsel" in the California Action.

[2] All capitalized terms not otherwise defined in this Notice shall have the meaning provided in the Stipulation, which is available at the "Investor Relations" section of the Company's website, investor.mckesson.com.

[3] The California Court previously dismissed all claims asserted against Donald Knauss and Susan Salka in the California Action.

approval of the California Court pursuant to Rule 23.1 of the Federal Rules of Civil Procedure.

As described on page [____] below, the Settlement provides for: (i) a cash payment of $175,000,000, which, after any deductions for attorneys' fees and expenses for Plaintiffs' Counsel and any applicable taxes and tax expenses, will be paid to the Company; and (ii) certain corporate governance changes that McKesson has agreed to implement in connection with the Settlement.

Because the Actions were brought as derivative actions, which means that the Actions were brought by Plaintiffs on behalf of, and for the benefit of, McKesson, the cash recovery from the Settlement will go to the Company. Individual McKesson stockholders will not receive any direct payment from the Settlement.

**PLEASE NOTE:  THERE IS NO PROOF OF CLAIM FORM FOR STOCKHOLDERS TO SUBMIT IN CONNECTION WITH THIS SETTLEMENT, AND STOCKHOLDERS ARE NOT REQUIRED TO TAKE ANY ACTION IN RESPONSE TO THIS NOTICE.**

| WHAT IS THE PURPOSE OF THIS NOTICE? |
| --- |

The purpose of this Notice is to explain the Actions, the terms of the proposed Settlement, and how the proposed Settlement affects McKesson stockholders' legal rights.

In a derivative action, one or more persons or entities who are current stockholders of a corporation sue on behalf of, and for the benefit of, the corporation, seeking to enforce the corporation's legal rights.  In this case, Plaintiffs have filed suit against Defendants on behalf of, and for the benefit of, McKesson.

The California Court has scheduled a hearing to consider the fairness, reasonableness, and adequacy of the Settlement and the application by Plaintiffs' Lead Counsel for an award of attorneys' fees and expenses (the "Settlement Fairness Hearing").  *See* page [__] below for details about the Settlement Fairness Hearing, including the location, date, and time of the hearing.

| WHAT ARE THESE CASES ABOUT?  WHAT HAS HAPPENED SO FAR? |
| --- |

THE FOLLOWING DESCRIPTION OF THE ACTION AND THE SETTLEMENT HAS BEEN PREPARED BY COUNSEL FOR THE PARTIES AND DOES NOT CONSTITUTE FINDINGS OF THE CALIFORNIA COURT OR THE DELAWARE COURT.  IT SHOULD NOT BE UNDERSTOOD AS AN EXPRESSION OF ANY OPINION OF THE COURTS AS TO THE MERITS OF ANY OF THE CLAIMS OR DEFENSES RAISED BY ANY OF THE PARTIES OR THE FAIRNESS OR ADEQUACY OF THE PROPOSED SETTLEMENT.

On May 2, 2008, McKesson entered into a settlement agreement with the U.S. Department of Justice ("DOJ"), through six different United States Attorney's offices (collectively, the "2008 Settlement"), to settle civil and administrative claims relating to the Company's distribution of controlled substances.  In connection with the 2008 Settlement, McKesson agreed to pay $13.25 million in civil penalties and temporarily suspend its license to distribute certain Schedule III controlled substances at two of its distribution centers.  As a further condition of the 2008 Settlement, McKesson was required to establish and implement a compliance program—known as the "Controlled Substances Monitoring Program" or "CSMP"—designed to detect and prevent diversion of controlled substances as required under applicable Drug Enforcement Agency ("DEA") regulations.

On January 17, 2017, McKesson and the DOJ, on behalf of the DEA, announced a settlement agreement whereby McKesson would pay $150 million to settle potential administrative and civil claims related to investigations about the Company's suspicious order reporting for controlled substances and alleged non-compliance with the 2008 Settlement (the "2017 Settlement").  McKesson agreed in connection with the 2017 Settlement to suspend sales of controlled substances from certain of its distribution centers and to implement certain compliance procedures and establish certain internal controls.

CALIFORNIA COURT PROCEEDINGS

On January 31, 2017, a McKesson stockholder commenced a shareholder derivative action in the California Court captioned as *Silverman v. Bryant, et al.*, Case No. 4:17-cv-00494-CW (the "Silverman Action") against Defendants Bryant, Budd, Hammergren, Jacobs, Knowles, Mueller, and Nominal Defendant

McKesson asserting, among other things, that Defendants had breached their fiduciary duties by failing to implement and oversee the Company's operations concerning the sale and shipment of opioid drugs.

On April 3, 2017, Plaintiff Inzlicht commenced a derivative action in the California Court captioned as *Inzlicht v. Bryant, et al.*, Case No. 4:17-cv-01850-CW (the "Inzlicht Action") asserting claims similar to the Silverman Action.

On May 9, 2017, Inzlicht filed a motion to consolidate the Silverman Action and Inzlicht Action and to appoint lead counsel.

On May 22, 2017, Silverman filed a motion for voluntary dismissal of the Silverman Action, which the California Court granted on June 6, 2017.

On July 26, 2017, Plaintiff Gusinsky, who had obtained books and records from McKesson through a pre-litigation demand made pursuant to Section 220 of the Delaware General Corporation Law, filed a derivative action in the California Court captioned as *Gusinsky v. Bryant, et al.*, Case No. 5:17-cv-4248-SVK (the "Gusinsky Action") asserting claims similar to the Inzlicht Action.

On October 9, 2017, the California Court entered an order relating the Inzlicht Action and the Gusinky Action and consolidating the Gusinsky Action into the Inzlicht Action (hereafter, the "California Action").

On December 1, 2017, Plaintiffs Inzlicht and Gusinsky filed a motion to appoint Hagens Berman Sobol Shapiro LLP and Gardy & Notis LLP as co-lead counsel for all derivative plaintiffs in the California Action (the "Lead Counsel Motion"). On December 19, 2017, the California Court granted the Lead Counsel Motion.

On December 22, 2017, Defendants Bryant, Budd, Hammergren, Jacobs, Knowles, Mueller, and Nominal Defendant McKesson filed a motion to stay the California Action in favor of the pending actions in the Delaware Court (the "Motion to Stay").

On December 29, 2017, Plaintiffs Inzlicht and Gusinsky filed a verified shareholder derivative consolidated amended complaint in the California Action (the "Amended Complaint"), in which Plaintiffs asserted claims against Defendants Bryant, Budd, Coles, Hammergren, Irby, Jacobs, Knauss, Knowles, Lawrence, Mueller, Salka, and Shaw.

On January 5, 2018, McKesson and the Defendants named in the Amended Complaint filed motions to dismiss the Amended Complaint (collectively the "Motions to Dismiss").

On May 14, 2018, the California Court issued an order denying the Motion to Stay and denying in part the Motions to Dismiss (the "May 14, 2018 Order"), in which order the California Court: (i) dismissed Plaintiffs' claims for insider trading, dismissed the claim for breach of fiduciary duty against Defendant Coles, and dismissed all claims against Defendants Knauss and Salka; and (ii) held, inter alia, that with respect to other Defendants named in the Amended Complaint, Plaintiffs (a) adequately pled demand futility, (b) sufficiently alleged a substantial likelihood of director oversight liability based on conscious failure to oversee the CSMP, and (c) adequately pled a claim for waste of corporate assets.

## DELAWARE COURT PROCEEDINGS

On October 17, 2017, Plaintiff Steinberg, who had obtained books and records from McKesson through a pre-litigation demand made pursuant to Section 220 of the Delaware General Corporation Law (the "Steinberg 220 Documents"), filed a derivative action captioned as *Steinberg v. Bryant et al.*, C.A. No. 2017-0736-SG (the "Steinberg Action") in the Delaware Court asserting claims similar to those raised in the California Action.

On November 7, 2017, Defendants Bryant, Budd, Hammergren, Irby, Jacobs, Knowles, Lawrence, Mueller, Seeger, Shaw, and Nominal Defendant McKesson filed a motion to dismiss the verified shareholder derivative complaint filed in the Steinberg Action (the "Delaware Motion to Dismiss").

On November 8, 2017, Plaintiff Detroit P&F, which had negotiated access to and received the Steinberg 220 Documents, filed a derivative action captioned as *Detroit P&F v. Bryant et al.*, C.A. No. 2017-0803-SG (the "Detroit P&F Action") in the Delaware Court asserting claims similar to those raised in the Steinberg Action.

On December 8, 2017, Plaintiffs Amalgamated Bank and Ojeda filed a derivative action in the Delaware Court captioned as *Amalgamated Bank et al. v. Bryant et al.*, C.A. No. 2017-0881-SG (the "Amalgamated Action") asserting claims similar to those raised in the Steinberg Action and Detroit P&F Action.

The Steinberg Action, Detroit P&F Action, and the Amalgamated Action were consolidated by order of the Delaware Court on January 12, 2018, under the

caption *In re McKesson Corp. Stockholder Derivative Litigation*, Consol. C.A. No. 2017-0736-SG (the "Delaware Action", and collectively with the California Action, the "Derivative Actions" or "Actions").

On January 18, 2018, Plaintiff Greene filed a derivative action in the Delaware Court captioned as *Greene v. Bryant, et al.*, C.A. No. 2018-0042-SG (the "Greene Action") asserting claims similar to those raised in the Steinberg Action, the Detroit P&F Action, and the Amalgamated Action. The Greene Action was consolidated into the Delaware Action on January 23, 2018.

On March 7, 2018, the parties to the Delaware Action conducted oral argument before the Delaware Court regarding the Delaware Motion to Dismiss.

On May 25, 2018, the Delaware Court stayed the Delaware Action in light of the California Court's May 14, 2018 Order, subject to any motion that any party might file to lift the stay.

## PARTIES LITIGATE THE ACTIONS IN THE CALIFORNIA COURT

In response to a stockholder query, on March 10, 2017, McKesson's board of directors (the "Board") appointed a Special Review Committee ("SRC") comprised of directors Donald Knauss, N. Anthony Coles, and Susan Salka, to investigate senior management's and the Board's oversight of compliance with the Company's legal and regulatory obligations relating to the distribution of controlled substances. On April 20, 2018, the Board released a response to the stockholder query that included a summary of the results of the SRC's investigation.

On June 1, 2018, Plaintiffs Steinberg and Detroit P&F notified the Delaware Court that they would join the California Action.

On June 7, 2018, Plaintiffs Amalgamated Bank and Ojeda filed in the California Court a motion to intervene, appoint Amalgamated Bank and Ojeda co-lead plaintiffs, and direct Plaintiffs Inzlicht and Gusinsky and their counsel to coordinate litigation efforts with Amalgamated Bank and Ojeda in the proceedings (the "Motion to Intervene") in the California Action. On July 27, 2018, the California Court denied Ojeda's request to intervene as-of-right, granted Amalgamated Bank's motion for permissive intervention, and otherwise denied the Motion to Intervene.

On July 25, 2018, the Board appointed a Special Litigation Committee ("SLC") comprised of director Bradley E. Lerman ("Lerman") to investigate Plaintiffs' claims.

On September 12, 2018, Plaintiffs filed in the California Court a verified shareholder derivative second consolidated amended complaint in which Steinberg, Detroit P&F, and Amalgamated joined as Plaintiffs (the "California Complaint"). The California Complaint alleged, among other things, that the Defendants named therein breached their fiduciary duties to McKesson by failing to maintain effective oversight and controls in connection with McKesson's distribution of controlled substances, and further alleged that as a result of such alleged breaches of fiduciary duty, McKesson has been or will be exposed to significant actual and potential losses and expenses, including but not limited to (i) a $150 million civil penalty agreed to as part of the 2017 Settlement; (ii) legal expenses relating to civil litigation, congressional investigations, and regulatory investigations; and (iii) judgments or settlements paid (or potentially to be paid in the future) in connection with various civil litigation matters, including lawsuits and investigations by various state Attorneys General and a class action lawsuit filed in the United States District Court for the Northern District of Ohio (the "MDL Action") (*see* California Complaint ¶¶ 8, 257-63).

On November 2, 2018, Defendants remaining in the California Action filed answers and affirmative defenses to the California Complaint (collectively, the "Answers").

In the course of discovery in the California Action, Plaintiffs obtained, reviewed, and analyzed the discovery record in the MDL Action, including more than 700,000 pages of documents, the transcripts of the depositions of forty-four fact witnesses, twenty-four expert reports, and five supplemental expert reports (the "MDL Discovery Record").

In addition to the MDL Discovery Record, Plaintiffs obtained and reviewed more than 300,000 additional pages of documents (including more than 200,000 pages produced by McKesson and certain Defendants in response to document requests served by Plaintiffs and more than 100,000 pages of documents produced by third parties in response to document subpoenas served by Plaintiffs).

8

## THE PARTIES CONDUCT ARM'S-LENGTH NEGOTIATIONS TO RESOLVE THE ACTIONS

On March 12, 2019, counsel for the Parties, the SLC, and the Defendants' directors and officers liability insurers ("D&O Insurers") participated in a mediation session with Robert Meyer ("Meyer").

On April 16, 2019, counsel for the Parties and the SLC participated in an in-person settlement meeting to discuss certain proposed governance reforms. On April 26, 2019, counsel for the Parties, the SLC, and the D&O Insurers participated in a second mediation session with Meyer.

On July 10, 2019, at an in-person meeting, counsel for Plaintiffs and the SLC (including Lerman) discussed, inter alia, the litigation and settlement-related matters.

On July 17, 2019, counsel for Plaintiffs met with counsel for McKesson, Defendants, and the SLC to discuss various governance reforms being considered as part of a potential settlement.

On August 8, 2019, counsel for the Parties, the SLC, and the D&O Insurers participated in a third mediation session with Meyer, the Hon. Daniel Weinstein (Ret.) ("Judge Weinstein"), and Jed D. Melnick ("Melnick") (together with Meyer and Judge Weinstein, the "Mediators"). The mediation efforts actively continued telephonically for many weeks following the August mediation session. Following this exhaustive mediation process, the Mediators made a mediators' proposal to the Parties, the SLC, and the D&O Insurers (the "Mediators' Recommendation").

As a result of the extensive, arm's-length negotiations among the Parties and the D&O Insurers, and following the Parties' review and consideration of the Mediators' Recommendation, the Parties reached an agreement in principle to settle the Actions that was memorialized in a binding term sheet (the "Term Sheet") executed on November 22, 2019. The Term Sheet set forth, among other things, the Parties' agreement to settle and release all claims asserted in the Actions in return for a cash payment of $175,000,000 (the "Cash Consideration") on behalf of Defendants to the Company, and certain corporate governance reforms that McKesson has agreed to implement in connection with the Settlement, as set forth in Exhibit A to the Stipulation (the "Governance Consideration").

On December 11, 2019, the Parties entered into the Stipulation, which reflects the final and binding agreement by and among the Parties and supersedes the Term Sheet.

On _____, 20__, the California Court preliminarily approved the Settlement, authorized this Notice to be provided to McKesson stockholders, and scheduled the Settlement Fairness Hearing to consider whether to grant final approval of the Settlement.

| WHAT ARE THE TERMS OF THE SETTLEMENT? |
|:---:|

The full terms and conditions of the Settlement are embodied in the Stipulation, which is on file with the California Court. The following is only a summary of the Stipulation.

In consideration of the full settlement and release of the Settled Plaintiffs' Claims (defined below) against the Released Defendants' Parties (defined below) and the dismissal with prejudice of the Actions, Defendants and McKesson have agreed to the following:

(i) **Monetary Consideration:** In accordance with the terms of the Stipulation, Defendants shall cause to be paid by their insurers $175,000,000 (the "Cash Consideration") into an escrow account (the "Derivative Escrow Account"). The Cash Consideration plus any interest earned thereon (the "Cash Settlement Fund"), less (i) any Court-awarded attorneys' fees and litigation expenses and/or any reserve to account for any potential future awards to Plaintiffs' Counsel and (ii) any federal, state, and/or local taxes of any kind (including any interest or penalties thereon) on any income earned by the Cash Consideration while held in the Derivative Escrow Account ("Taxes") and any tax expenses and costs incurred in connection with determining the amount of, and paying, any taxes owed on the Cash Consideration (including, without limitation, expenses of tax attorneys and accountants) ("Tax Expenses"), shall be paid from the Derivative Escrow Account to the Company no later than ten (10) business days following the Effective Date (defined below).

(ii) **Governance:** McKesson and its Board shall adopt and implement the governance provisions identified in Exhibit A to the

10

Stipulation (the "Governance Consideration") upon or before final approval of the Settlement.

## WHAT ARE THE PARTIES' REASONS FOR THE SETTLEMENT?

Plaintiffs, through Plaintiffs' Counsel, have conducted an extensive investigation and engaged in discovery relating to the claims and underlying events and transactions alleged in the Actions. Plaintiffs' Counsel have analyzed the evidence adduced during their investigation and discovery and have also researched the applicable law with respect to the claims asserted in the Actions and the potential defenses thereto. In negotiating and evaluating the terms of the Settlement, Plaintiffs and Plaintiffs' Counsel considered the significant legal and factual defenses to Plaintiffs' claims and the expense, length, and risk of pursuing their claims through trial and appeals. While Plaintiffs brought their claims in good faith and continue to believe that their claims have merit, Defendants vigorously argued that they had acted appropriately and are not subject to liability or damages. In light of the substantial monetary recovery and valuable governance changes achieved by the Settlement, Plaintiffs and Plaintiffs' Counsel have determined that the proposed Settlement is fair, reasonable, adequate, and in the best interests of McKesson and its stockholders. The Settlement provides substantial immediate benefits to McKesson without the risk that continued litigation could result in obtaining similar or lesser relief for McKesson after continued extensive and expensive litigation, including trial and the appeals that were likely to follow.

Defendants, to eliminate the burden, expense, and uncertainties inherent in further litigation, and without admitting the validity of any allegations made in the Actions, or any liability with respect thereto, have concluded that it is desirable that the claims against them be settled on the terms reflected in the Stipulation. Defendants have denied, and continue to deny, that they committed, or aided and abetted in the commission of, any violation of law or duty or engaged in any wrongful acts whatsoever, including specifically those alleged in the Actions, and expressly maintain that they have complied with their statutory, fiduciary, and other legal duties, and that at all relevant times they acted in good faith and in a manner they reasonably believed to be in the best interests of McKesson and its stockholders.

| WHAT WILL HAPPEN IF THE SETTLEMENT IS APPROVED? WHAT CLAIMS WILL THE SETTLEMENT RELEASE? |
|---|

If the Settlement is approved, the Parties will request that the California Court enter a Final Judgment and Order Approving Derivative Action Settlement (the "Judgment").  Pursuant to the Judgment, upon the Effective Date of the Settlement, the following releases will occur:

**Release of Claims by Plaintiffs, the SLC, the Company, and the Company's Stockholders:**  Plaintiffs, the SLC, the Company, and by operation of law the Company's stockholders shall be deemed to have, and by operation of law and of the Judgment, shall have, fully, finally, and forever discharged, settled, and released, and shall forever be enjoined from commencing or prosecuting, any and all Settled Plaintiffs' Claims and Settled Litigation Claims (including Unknown Claims) against the Released Defendants' Parties.

"Settled Plaintiffs' Claims" means all Claims brought or that could be brought derivatively on behalf of the Company, directly by Plaintiffs, or by the SLC or the Company, concerning, arising from, or relating to the underlying facts, conduct, events, occurrences, transactions, or allegations set forth, made, or referred to in the Complaints or in the prosecution or settlement of the Actions, including but not limited to any such Claims that were, could have been, or could be asserted concerning, arising from, or relating to the Company's alleged liabilities associated with settled, pending, or threatened litigation concerning, arising from, or relating to the underlying facts, conduct, events, occurrences, transactions, or allegations set forth or referred to in the Complaints; *provided, however*, that the Settled Plaintiffs' Claims shall not include any Claims arising out of, based upon, or relating to the enforcement of the Settlement.  For the avoidance of doubt, the Settled Plaintiffs' Claims do <u>not</u> cover, settle, or release (i) any direct claims held by any current, former, or future stockholder of McKesson who is not a Plaintiff, including any claims asserting violations of the federal or state securities laws, including, without limitation, claims asserted in *Evanston Police Pension Fund v. McKesson Corporation, et al.*, Case No. 3:18-cv-06525-CRB (N.D. Cal.); or (ii) any claims currently asserted in *Henry v. Tyler, et al.*, Case No. 3:19-cv-2869-CRB (N.D. Cal.).

12

"Settled Litigation Claims" means all Claims against any of the Released Parties, the SLC, or the SLC's Counsel concerning, arising from, or relating to the institution, prosecution, investigation, or settlement of the claims asserted in the California Action or in the Delaware Action; *provided, however*, that the Settled Litigation Claims shall not include any Claims arising out of, based upon, or relating to the enforcement of the Settlement.

"Unknown Claims" means any Settled Plaintiffs' Claims which any Plaintiff, the SLC, the Company, or any of the Company's current stockholders does not know or suspect to exist in his, her, or its favor at the time of the release of such claims and any Settled Defendants' Claims (defined below) which any Defendant, the SLC, or the Company does not know or suspect to exist in his, her, or its favor at the time of the release of such claims, which, if known by him, her, or it, might have affected his, her, or its decision(s) with respect to this Settlement.  With respect to any and all Settled Plaintiffs' Claims and Settled Defendants' Claims, the Parties stipulate and agree that, upon the Effective Date of the Settlement, Plaintiffs, Defendants, the SLC, the Company, and each of the Company's current stockholders shall be deemed to have, and by operation of the Judgment shall have, expressly waived any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law or foreign law, which is similar, comparable, or equivalent to California Civil Code §1542, which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

Any of Plaintiffs, Defendants, the SLC, McKesson, or the current McKesson stockholders may hereafter discover facts in addition to or different from those which he, she, or it now knows or believes to be true with respect to the Settled Claims, but, upon the California Court's entry of the Judgment, Plaintiffs, Defendants, the SLC, McKesson, and each of the current McKesson stockholders shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled any and all Settled Claims without regard to the subsequent discovery or existence of such different or additional facts.   Plaintiffs, Defendants, the SLC, and the

13

Company acknowledge that the foregoing waiver was separately bargained for and a key element of the Settlement.

"Released Defendants' Parties" means Defendants, the Company, and any entity in which the Company has a controlling interest, as well as their respective current and former parents, affiliates, subsidiaries, officers, directors, agents, successors, predecessors, assigns, assignees, partnerships, partners, committees, joint ventures, trustees, trusts, employees, immediate family members, insurers and reinsurers (in their capacities as such), consultants, experts, and attorneys.

**Release of Claims by Defendants, the SLC, and the Company:** Defendants, the SLC, and the Company shall be deemed to have, and by operation of law and of the Judgment, shall have, fully, finally, and forever discharged, settled, and released, and shall forever be enjoined from commencing or prosecuting, any and all Settled Defendants' Claims and Settled Litigation Claims (including Unknown Claims) against the Released Plaintiffs' Parties.

"Settled Defendants' Claims" means all Claims that arise out of, are based upon, or relate to the institution, prosecution, or settlement of the Actions; *provided, however*, that the Settled Defendants' Claims shall not include any Claims arising out of, based upon, or relating to the enforcement of the Settlement.

"Released Plaintiffs' Parties" means Plaintiffs, Plaintiffs' Counsel, and any entity in which any Plaintiff has a controlling interest, as well as their respective current and former parents, affiliates, subsidiaries, officers, directors, agents, successors, predecessors, assigns, assignees, partnerships, partners, committees, joint ventures, trustees, trusts, employees, immediate family members, insurers and reinsurers (in their capacities as such), consultants, experts, and attorneys.

**Release of Claims Against the SLC and the SLC's Counsel:**  Plaintiffs, Defendants, the Company, and by operation of law the Company's stockholders shall be deemed to have, and by operation of law and of the Judgment, shall have, fully, finally, and forever discharged, settled, and released, and shall forever be enjoined from commencing or prosecuting, any and all Settled Litigation Claims (including Unknown Claims) against the SLC and the SLC's Counsel.

14

Within ten (10) calendar days of the California Court's entry of the Judgment, the parties to the Delaware Action will file a stipulation with the Delaware Court dismissing the Delaware Action with prejudice.

The "Effective Date" of the Settlement will be the first date upon which the following conditions of the Settlement have been met and occurred: (i) payment of the Cash Consideration into the Derivative Escrow Account pursuant to paragraph 2(a) of the Stipulation; (ii) McKesson and its Board have adopted and implemented the Governance Consideration pursuant to paragraph 2(b) of the Stipulation; (iii) no Party has exercised its option to terminate the Settlement pursuant to paragraph 26 of the Stipulation; (iv) the California Court has entered the Judgment finally approving the Settlement, and the Judgment has become Final; and (v) the Delaware Action has been dismissed with prejudice.

By Order of the California Court, all proceedings in the California Action, other than proceedings necessary to carry out or enforce the terms and conditions of the Stipulation, have been stayed until otherwise ordered by the California Court. Also, pending final determination of whether the Settlement should be approved, the California Court has (i) barred and enjoined the commencement or prosecution of any action asserting any Settled Plaintiffs' Claims or Settled Litigation Claims against any of the Released Defendants' Parties; (b) barred and enjoined the commencement or prosecution of any action asserting any Settled Defendants' Claims or Settled Litigation Claims against any of the Released Plaintiffs' Parties; and (c) barred and enjoined the commencement or prosecution of any action asserting any Settled Litigation Claims against the SLC or the SLC's Counsel.

## HOW WILL THE ATTORNEYS BE PAID?

Plaintiffs' Counsel have not received any payment for their services in pursuing the claims asserted in the Actions, nor have Plaintiffs' Counsel been reimbursed for their out-of-pocket expenses. Plaintiffs' Counsel invested their own resources for pursuing the claims asserted on a contingency basis, meaning they would only recover their expenses and be compensated for their time if they created benefits through this litigation. In light of the risks undertaken in pursuing the Actions on a contingency basis and the benefits created for McKesson and its stockholders through the Settlement and the prosecution of the claims asserted, before final approval of the Settlement, Plaintiffs' Lead Counsel, on behalf of all Plaintiffs' Counsel, intend to petition the California Court for an award of

attorneys' fees and litigation expenses to be paid from (and out of) the Cash Settlement Fund.  Plaintiffs' Lead Counsel's fee and expense application will seek an award of attorneys' fees and expenses for all Plaintiffs' Counsel in an amount not to exceed 30% of the Cash Settlement Fund and payment of litigation expenses in an amount not to exceed $600,000.00.

The California Court will determine the amount of any attorney fee and expense award to Plaintiffs' Counsel (the "Fee and Expense Award").  Any Court-approved Fee and Expense Award will be paid from the Cash Settlement Fund. McKesson stockholders are not personally liable for any such fees or expenses.

| WHEN AND WHERE WILL THE SETTLEMENT FAIRNESS HEARING BE HELD?  DO I HAVE THE RIGHT TO APPEAR AT THE SETTLEMENT FAIRNESS HEARING?  MAY I OBJECT TO THE SETTLEMENT AND SPEAK AT THE HEARING IF I DON'T LIKE THE SETTLEMENT? |
| --- |

You do not need to attend the Settlement Fairness Hearing.  The California Court will consider any submission made in accordance with the provisions below even if you do not attend the hearing.  **The date and time of the Settlement Hearing may change without further written notice to McKesson stockholders.** You should monitor the Court's docket and Plaintiffs' Lead Counsel's websites, www.hbsslaw.com and www.gardylaw.com, before making plans to attend the Settlement Fairness Hearing.  You may also confirm the date and time of the Settlement Fairness Hearing by contacting Plaintiffs' Lead Counsel as indicated on page [___] below.

The California Court will consider the Settlement and all matters related to the Settlement at the Settlement Fairness Hearing.  The Settlement Fairness Hearing will be held on _____, 2020 at __:__ _.m., before the Honorable Claudia Wilken at the United States District Court for the Northern District of California, Oakland Courthouse, Courtroom 6 – Second Floor, 1301 Clay Street, Oakland, CA 94612.  At the Settlement Fairness Hearing, the California Court will, among other things: (i) determine whether the California Plaintiffs and Plaintiffs' Lead Counsel have adequately represented the interests of McKesson and its stockholders; (ii) determine whether the proposed Settlement on the terms and conditions provided for in the Stipulation is fair, reasonable, and adequate to McKesson and its stockholders, and should be approved by the California Court; (iii) determine whether the Judgment, substantially in the form attached as Exhibit

16

C to the Stipulation, should be entered dismissing the California Action with prejudice; (iv) determine whether the application by Plaintiffs' Lead Counsel for an award of attorneys' fees and expenses should be approved; and (v) consider any other matters that may properly be brought before the California Court in connection with the Settlement.

The California Court has reserved the right to adjourn the Settlement Fairness Hearing or any adjournment thereof, including the consideration of the application for attorneys' fees and expenses, without further notice of any kind other than by oral announcement at the Settlement Fairness Hearing or any adjournment thereof. The California Court has further reserved the right to approve the Stipulation and the Settlement, at or after the Settlement Fairness Hearing, with such modifications as may be consented to by the Parties and without further notice to McKesson stockholders.

Any current McKesson stockholder who or which continues to own shares of McKesson common stock as of _____, 2020, the date of the Settlement Fairness Hearing ("Current McKesson Stockholder"), can ask the California Court to deny approval of the Settlement by filing an objection. You can't ask the Court to order a larger or different settlement; the Court can only approve or deny the proposed Settlement. If the California Court denies approval, no settlement payment will be made to the Company, the Company will not be required to implement the corporate governance reforms that McKesson has agreed to in connection with the Settlement, and the lawsuit will continue. If that is what you want to happen, you must object.

Current McKesson Stockholders may object to the proposed Settlement or Plaintiffs' Lead Counsel's application for attorneys' fees and expenses in writing. As described further below, Current McKesson Stockholders may also appear at the Settlement Fairness Hearing, either in person or through their own attorney. If you appear through your own attorney, you are responsible for paying that attorney. Your objection and supporting papers must clearly identify the case name and case number, *In re McKesson Corp. Derivative Litigation*, Case No. 4:17-cv-01850-CW. You must file any written objection, together with copies of all other papers and briefs supporting the objection, by mailing them to the Office of the Clerk of the Court, United States District Court for the Northern District of California, Oakland Division, at the address set forth below, or by filing them in person at any location of the United States District Court for the Northern District of California. Any objections must be ***filed or postmarked on or before*** _____, ***2020.***

17

Clerk's Office:

United States District Court
Northern District of California
Clerk of the Court
Oakland Division
1301 Clay Street
Oakland, CA  94612

Any objections, filings, and other submissions must:  (i) clearly identify the case name and case number, *In re McKesson Corp. Derivative Litigation*, Case No. 4:17-cv-01850-CW; (ii) state the name, address, and telephone number of the objector and must be signed by the objector; (iii) state whether the objector is represented by counsel and, if so, the name, address, and telephone number of his, her, or its counsel; (iv) contain a specific, written statement of the objection(s) and the specific reason(s) for the objection(s), including any legal and evidentiary support the objector wishes to bring to the Court's attention, and if the objector indicates that he, she, or it intends to appear at the Settlement Fairness Hearing, the identity of any witnesses the objector may call to testify and any exhibits the objector intends to introduce into evidence at the hearing; and (v) include documentation sufficient to prove that the objector owned shares of McKesson common stock as of the close of trading on [NOTICE DATE].  Plaintiffs' Lead Counsel are authorized to request from any objector documentation sufficient to prove continuous ownership of McKesson common stock.

Current McKesson Stockholders may file a written objection without having to appear at the Settlement Fairness Hearing.  You may not, however, appear at the Settlement Fairness Hearing to present your objection unless you first file a written objection in accordance with the procedures described above, unless the California Court orders otherwise.

Current McKesson Stockholders who or which file and serve a timely written objection and wish to be heard orally at the Settlement Fairness Hearing in opposition to the approval of the Settlement or Plaintiffs' Lead Counsel's application for an award of attorneys' fees and expenses, must also mail a notice of appearance to the Office of the Clerk of the Court, United States District Court for the Northern District of California, Oakland Division, at the address set forth above, or file it in person at any location of the United States District Court for the Northern District of California.  Any notice of appearance must be ***filed or***

18

*postmarked on or before _ _____, 2020*.   Current McKesson Stockholders who or which intend to object and desire to present evidence at the Settlement Fairness Hearing must include in their written objection or notice of appearance the identity of any witnesses they may call to testify and exhibits they intend to introduce into evidence at the hearing.  Such persons may be heard orally at the discretion of the California Court.

You are not required to hire an attorney to represent you in making written objections or in appearing at the Settlement Fairness Hearing.  However, if you decide to hire an attorney, it will be at your own expense.

Unless the California Court orders otherwise, any McKesson stockholder who or which does not make his, her, or its objection in the manner set forth above will: (i) be deemed to have waived and forfeited his, her, or its right to object to any aspect of the proposed Settlement or Plaintiffs' Lead Counsel's application for an award of attorneys' fees and litigation expenses; (ii) be forever barred and foreclosed from objecting to the fairness, reasonableness, or adequacy of the Settlement, the Judgment to be entered approving the Settlement, or the attorneys' fees and expenses; and (iii) be deemed to have waived and be forever barred and foreclosed from being heard, in this or any other proceeding, with respect to any matters concerning the Settlement or the requested or awarded attorneys' fees and expenses; but shall otherwise be bound by the Judgment to be entered, and the Releases to be given by the Settlement.

---

### CAN I SEE THE COURT FILE?  WHOM SHOULD I CONTACT IF I HAVE QUESTIONS?

---

This Notice summarizes the proposed Settlement.  For the precise terms and conditions of the Settlement, please see the Stipulation available at the "Investor Relations" section of McKesson's website, investor.mckesson.com.  You may also view a copy of the Stipulation by accessing the Court docket in the California Action, for a fee, through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or by visiting the Office of the Clerk of the Court, United States District Court for the Northern District of California, Oakland Courthouse, 1301 Clay Street, Oakland, CA 94612, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays. Copies of the Stipulation, the Complaints, and other important case documents are also available on Plaintiffs' Lead Counsel's websites:  www.hbsslaw.com and www.gardylaw.com.   If you have questions regarding the Actions or the

19

Settlement, you may write, call, or email Plaintiffs' Lead Counsel: Reed R. Kathrein, Hagens Berman Sobol, Shapiro LLP, 715 Hearst Avenue, Suite 202, Berkeley, CA 94710, 510-725-3040, MCK@hbsslaw.com, or Meagan Farmer, Gardy & Notis, LLP, Tower 56, 126 East 56th Street, 8th Floor, New York, NY 10022, 212-905-0509, MCK@gardylaw.com.

**PLEASE DO NOT TELEPHONE THE COURT OR THE OFFICE OF THE CLERK OF THE COURT TO INQUIRE ABOUT THIS SETTLEMENT**

Dated: _____, 20__                By Order of the Court
                                        United States District Court
                                        Northern District of California,
                                        Oakland Division

**EXHIBIT B-2**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| IN RE MCKESSON CORPORATION DERIVATIVE LITIGATION | Case No. 4:17-cv-1850-CW |

## SUMMARY NOTICE OF PENDENCY AND PROPOSED SETTLEMENT OF STOCKHOLDER DERIVATIVE ACTIONS

TO:   ALL PERSONS OR ENTITIES WHO OR WHICH HELD SHARES OF MCKESSON CORPORATION ("MCKESSON" OR THE "COMPANY") COMMON STOCK AS OF THE CLOSE OF TRADING ON [NOTICE DATE].

**PLEASE READ THIS NOTICE CAREFULLY AND IN ITS ENTIRETY. YOUR RIGHTS WILL BE AFFECTED BY THE ACTION.**

YOU ARE HEREBY NOTIFIED, pursuant to Rule 23.1 of the Federal Rules of Civil Procedure and an Order of the United States District Court for the Northern District of California, Oakland Division (the "California Court"), of the pendency of the stockholder derivative action styled as *In re McKesson Corp. Derivative Litigation*, Case No. 4:17-cv-01850-CW, pending in the California Court, and the stockholder derivative action styled as *In re McKesson Corp. Stockholder Derivative Litigation*, Consol. C.A. No. 2017-0736-SG (the "Delaware Action" and, together with the California Action, the "Actions"), pending in the Court of Chancery of the State of Delaware.

YOU ARE ALSO NOTIFIED that the Parties have reached a proposed settlement of the Actions (the "Settlement"), subject to the approval of the California Court, as provided in the Stipulation and Agreement of Compromise, Settlement, and Release, dated as of December 11, 2019 (the "Stipulation").  Under the terms of the proposed Settlement, (i) Defendants will cause their insurers to pay $175,000,000 in cash into an escrow account, which together with any interest

earned on the cash payment and less any deductions for attorneys' fees and expenses for Plaintiffs' Counsel and any applicable taxes and tax expenses, will be paid to the Company; and (ii) McKesson and its Board of Directors will adopt and implement certain corporate governance changes.

A more detailed description of the Settlement terms, as well as a description of the history of the Actions and an explanation of stockholders' legal rights with respect to the Settlement, is provided in the full printed Notice of Pendency and Proposed Settlement of Stockholder Derivative Actions (the "Notice"). The Company has caused the Notice to be distributed to all then-current McKesson stockholders as of the close of trading on [Notice Date]. The Notice and the Stipulation are also publicly available on the "Investor Relations" section of McKesson's website, investor.mckesson.com, and on Plaintiffs' Lead Counsel's websites: www.hbsslaw.com and www.gardylaw.com.

The California Court will consider the Settlement and all matters related to the Settlement at the Settlement Fairness Hearing. The Settlement Fairness Hearing will be held on _____, 2020 at __:__ _.m., before the Honorable Claudia Wilken at the United States District Court for the Northern District of California, Oakland Courthouse, Courtroom 6 – Second Floor, 1301 Clay Street, Oakland, CA 94612. At the Settlement Fairness Hearing, the California Court will, among other things: (i) determine whether the California Plaintiffs and Plaintiffs' Lead Counsel have adequately represented the interests of McKesson and its stockholders; (ii) determine whether the proposed Settlement on the terms and conditions provided for in the Stipulation is fair, reasonable, and adequate to McKesson and its stockholders, and should be approved by the California Court; (iii) determine whether the Judgment, substantially in the form attached as Exhibit C to the Stipulation, should be entered dismissing the California Action with prejudice; (iv) determine whether the application by Plaintiffs' Lead Counsel for an award of attorneys' fees and litigation expenses should be approved; and (v) consider any other matters that may properly be brought before the California Court in connection with the Settlement. Stockholders do not need to attend the Settlement Fairness Hearing.

Any objections to the proposed Settlement or Plaintiffs' Lead Counsel's fee and expense application must be mailed to or filed with the Court such that they are *filed or postmarked no later than _____, 2020*, in accordance with the instructions in the Notice.

Please Note: Because the Actions were brought as derivative actions, which means that the Actions were brought by Plaintiffs on behalf of, and for the benefit

2

of, McKesson, the cash recovery from the Settlement will go to the Company. Individual McKesson stockholders will not receive any direct payment from the Settlement.  Also, please note that there is no proof of claim form for stockholders to submit in connection with this Settlement, and stockholders are not required to take any action in response to this notice.

**PLEASE DO NOT TELEPHONE THE COURT OR THE OFFICE OF THE CLERK OF THE COURT TO INQUIRE ABOUT THIS SETTLEMENT.**

All questions regarding this notice and the Settlement should be made to Plaintiffs' Lead Counsel:

<table>
<tr><td>Reed R. Kathrein</td><td>Meagan Farmer</td></tr>
<tr><td>Hagens Berman Sobol, Shapiro LLP</td><td>Gardy & Notis, LLP</td></tr>
<tr><td>715 Hearst Avenue, Suite 202</td><td>Tower 56</td></tr>
<tr><td>Berkeley, CA 94710</td><td>126 East 56th Street, 8th Floor</td></tr>
<tr><td>510-725-3040</td><td>New York, NY 10022</td></tr>
<tr><td>MCK@hbsslaw.com</td><td>212-905-0509</td></tr>
<tr><td></td><td>MCK@gardylaw.com</td></tr>
</table>

By Order of the Court

# Exhibit C

1

2

3

4

5

6

7

8 UNITED STATES DISTRICT COURT

9 NORTHERN DISTRICT OF CALIFORNIA

10 OAKLAND DIVISION

11

| | |
|---|---|
| 12 IN RE MCKESSON CORPORATION<br>DERIVATIVE LITIGATION | Case No. 4:17-cv-01850-CW |
| 13 | **[PROPOSED] FINAL JUDGMENT AND<br>ORDER APPROVING DERIVATIVE<br>ACTION SETTLEMENT** |
| 14 | |
| 15 | The Honorable Claudia Wilken |
| 16 | |
| 17 | |

18

19        WHEREAS, a consolidated stockholder derivative action is pending in this Court entitled

20 *In re McKesson Corporation Derivative Litigation*, No. 4:17-cv-01850-CW (the "California

21 Action");

22        WHEREAS, (a) plaintiffs in the California Action, Eli Inzlicht; Vladimir Gusinsky, as

23 Trustee for the Vladimir Gusinsky Living Trust; Chaile Steinberg; Michael Berent, Trustee of the

24 Police & Fire Retirement System City of Detroit; and Amalgamated Bank, as Trustee for Longview

25 Largecap 500 Index Fund and Longview Largecap 500 Index VEBA Fund (collectively, the

26 "California Plaintiffs"); (b) plaintiffs in the stockholder derivative action pending in the Court of

27 Chancery of the State of Delaware (the "Delaware Court"), styled as *In re McKesson Corporation*

28

1  *Stockholder Derivative Litigation*, Consol. C.A. No. 2017-0736-SG (the "Delaware Action" and,

2  together with the California Action, the "Actions"), Katielou Greene and Charles Ojeda

3  (collectively, the "Delaware Plaintiffs" and, together with the California Plaintiffs, "Plaintiffs");

4  (c) current and former defendants in the California Action and/or the Delaware Action, Andy

5  Bryant; Wayne A. Budd; John Hammergren; M. Christine Jacobs; Marie L. Knowles; Edward

6  Mueller; Donald Knauss; Susan Salka; N. Anthony Coles; Alton Irby III; David Lawrence; Jane

7  Shaw; Laureen Seeger; Paul Julian; and Mark Walchirk (collectively, "Defendants"); (d) the

8  Special Litigation Committee formed by the Board of Directors of Nominal Defendant McKesson

9  Corporation (the "SLC"); and (e) Nominal Defendant McKesson Corporation ("Nominal

10  Defendant," "McKesson," or the "Company" and, together with Plaintiffs, Defendants, and the

11  SLC, the "Parties") have reached a proposed settlement on the terms and conditions set forth in the

12  Stipulation and Agreement of Compromise, Settlement, and Release dated December 11, 2019 (the

13  "Stipulation") subject to the approval of this Court (the "Settlement");

14       WHEREAS, the Settlement provides for a complete dismissal with prejudice of the claims

15  asserted in the Actions against Defendants;

16       WHEREAS, by Order dated _____ __, 20__ (the "Preliminary Approval Order"), this

17  Court (a) preliminarily approved the Settlement; (b) ordered that notice of the proposed Settlement

18  be provided to McKesson stockholders; (c) provided McKesson stockholders with the opportunity

19  to object to the proposed Settlement and Plaintiffs' Lead Counsel's application for an award of

20  attorneys' fees and expenses; and (d) scheduled a hearing regarding final approval of the

21  Settlement;

22       WHEREAS, the Court conducted a hearing on _____ __, 20__ (the "Settlement

23  Fairness Hearing") to consider, among other things, (a) whether the California Plaintiffs and

24  Plaintiffs' Lead Counsel have adequately represented the interests of McKesson and its

25  stockholders; (b) whether the proposed Settlement on the terms and conditions provided for in the

26  Stipulation is fair, reasonable, and adequate to McKesson and its stockholders, and should be

27  approved by the Court; (c) whether a judgment should be entered dismissing the California Action

28

2

[PROPOSED] FINAL JUDGMENT
AND ORDER APPROVING
DERIVATIVE ACTION SETTLEMENT
CASE NO. 4:17-CV-01850-CW

with prejudice; and (d) whether the application by Plaintiffs' Lead Counsel for an award of attorneys' fees and expenses should be approved; and

WHEREAS, it appearing that due notice of the terms of the Settlement and Releases and the Settlement Fairness Hearing has been given in accordance with the Preliminary Approval Order; the Parties having appeared by their respective attorneys of record; the Court having heard and considered evidence in support of the proposed Settlement; the attorneys for the respective Parties having been heard; an opportunity to be heard having been given to all other persons or entities requesting to be heard in accordance with the Preliminary Approval Order; the Court having determined that notice to McKesson stockholders was adequate and sufficient; and the entire matter of the proposed Settlement having been heard and considered by the Court;

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED, this ___ day of _____, 2020, as follows:

1. **Definitions** – Unless otherwise defined in this Judgment, the capitalized terms used herein shall have the same meaning as they have in the Stipulation.

2. **Jurisdiction** – The Court has jurisdiction over the subject matter of the California Action, including all matters necessary to effectuate the Settlement and this Judgment and over all Parties.

3. **Incorporation of Settlement Documents** – This Judgment incorporates and makes a part hereof: (a) the Stipulation filed with the Court on _____, 2019; and (b) the Notice and Summary Notice, which were filed with the Court on _____, 2020.

4. **Derivative Action Properly Maintained; Adequacy of Plaintiffs and Plaintiffs' Counsel** – Based on the record in the California Action, each of the provisions of Rule 23.1 of the Federal Rules of Civil Procedure has been satisfied and the California Action has been properly maintained according to Rule 23.1. The California Plaintiffs and Plaintiffs' Lead Counsel have adequately represented the interests of McKesson and its stockholders both in terms of litigating the California Action and for purposes of entering into and implementing the Settlement.

5.    **Notice** – The Court finds that the dissemination of the Notice and publication of the Summary Notice: (a) were implemented in accordance with the Preliminary Approval Order; (b) constituted notice that was reasonably calculated, under the circumstances, to apprise McKesson stockholders of: (i) the pendency of the Actions; (ii) the effect of the proposed Settlement (including the Releases to be provided thereunder); (iii) Plaintiffs' Lead Counsel's application for an award of attorneys' fees and expenses; (iv) their right to object to the Settlement and/or Plaintiffs' Lead Counsel's application for attorneys' fees and expenses; and (v) their right to appear at the Settlement Hearing; (c) constituted due, adequate, and sufficient notice to all persons and entities entitled to receive notice of the proposed Settlement; and (d) satisfied the requirements of Rule 23.1 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), and all other applicable law and rules.

6.    **Final Settlement Approval and Dismissal of Claims** – Pursuant to, and in accordance with, Federal Rule of Civil Procedure 23.1, this Court hereby fully and finally approves the Settlement set forth in the Stipulation in all respects (including, without limitation: the Settlement consideration; the Releases, including the release of the Settled Plaintiffs' Claims as against the Released Defendant Parties; and the dismissal with prejudice of the claims asserted against Defendants in the California Action), and finds that the Settlement is, in all respects, fair, reasonable, and adequate to the Company and its stockholders. The Parties are directed to implement, perform, and consummate the Settlement in accordance with the terms and provisions contained in the Stipulation.

7.    The California Action and all of the claims asserted against all Defendants in the California Action by the California Plaintiffs are hereby dismissed with prejudice. The Parties shall bear their own costs and expenses, except as otherwise expressly provided in the Stipulation.

8.    **Binding Effect** – The terms of the Stipulation and of this Judgment shall be forever binding on the Parties and all McKesson stockholders, as well as their respective successors and assigns.

[PROPOSED] FINAL JUDGMENT
AND ORDER APPROVING
DERIVATIVE ACTION SETTLEMENT
CASE NO. 4:17-CV-01850-CW

9.      **Releases** – The Releases set forth in paragraphs 9, 10, and 11 of the Stipulation, together with the definitions contained in paragraph 1 of the Stipulation relating thereto, are expressly incorporated herein in all respects.  The Releases are effective as of the Effective Date. Accordingly, this Court orders that:

(a)      Without further action by anyone, and subject to Paragraph 10 below, upon the Effective Date of the Settlement, Plaintiffs, the SLC, the Company, and by operation of law the Company's stockholders shall be deemed to have, and by operation of law and of the Judgment, shall have, fully, finally, and forever discharged, settled, and released, and shall forever be enjoined from commencing or prosecuting, any and all Settled Plaintiffs' Claims and Settled Litigation Claims (including Unknown Claims) against the Released Defendants' Parties.

(b)      Without further action by anyone, and subject to Paragraph 10 below, upon the Effective Date of the Settlement, Defendants, the SLC, and the Company shall be deemed to have, and by operation of law and of the Judgment, shall have, fully, finally, and forever discharged, settled, and released, and shall forever be enjoined from commencing or prosecuting, any and all Settled Defendants' Claims and Settled Litigation Claims (including Unknown Claims) against the Released Plaintiffs' Parties.

(c)      Without further action by anyone, and subject to Paragraph 10 below, upon the Effective Date of the Settlement, Plaintiffs, Defendants, the Company, and by operation of law the Company's stockholders shall be deemed to have, and by operation of law and of the Judgment, shall have, fully, finally, and forever discharged, settled, and released, and shall forever be enjoined from commencing or prosecuting, any and all Settled Litigation Claims (including Unknown Claims) against the SLC and the SLC's Counsel.

10.     Notwithstanding Paragraphs 9(a)-(c) above, nothing in this Judgment shall bar any action by any of the Parties to enforce the terms of the Stipulation or this Judgment.  Also, for the avoidance of doubt, the Settlement does not cover, settle, or release: (i) any direct claims held by any current, former, or future stockholder of McKesson who is not a Plaintiff, including any claims

asserting violations of the federal or state securities laws, including, without limitation, claims asserted in *Evanston Police Pension Fund v. McKesson Corporation, et al.*, Case No. 3:18-cv-06525-CRB (N.D. Cal.); or (ii) any claims currently asserted in *Henry v. Tyler, et al.*, Case No. 3:19-cv-2869-CRB (N.D. Cal.).

11.     **<u>No Admissions</u>** – Neither this Judgment, the Term Sheet, the Stipulation, including the exhibits thereto, the negotiations leading to the execution of the Term Sheet and the Stipulation, nor any proceedings taken pursuant to or in connection with the Term Sheet, the Stipulation, and/or approval of the Settlement (including any arguments proffered in connection therewith):

(a) shall be offered against any of the Released Defendants' Parties or the SLC as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Released Defendants' Parties or the SLC with respect to the truth of any fact alleged by Plaintiffs or the validity of any claim that was or could have been asserted or the deficiency of any defense that has been or could have been asserted in the Actions or in any other litigation, or of any liability, negligence, fault, or other wrongdoing of any kind of any of the Released Defendants' Parties or in any way referred to for any other reason as against any of the Released Defendants' Parties, in any arbitration proceeding or other civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Stipulation;

(b) shall be offered against any of the Released Plaintiffs' Parties or the SLC, as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Released Plaintiffs' Parties or the SLC that any of the Released Plaintiffs' Parties' claims are without merit, that any of the Released Defendants' Parties had meritorious defenses, or that damages recoverable under the Complaints would not have exceeded the Settlement Consideration or with respect to any liability, negligence, fault, or wrongdoing of any kind, or in any way referred to for any other reason as against any of the Released Plaintiffs' Parties, in any arbitration proceeding or other civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Stipulation; or

6

[PROPOSED] FINAL JUDGMENT
AND ORDER APPROVING
DERIVATIVE ACTION SETTLEMENT
CASE NO. 4:17-CV-01850-CW

(c) shall be construed against any of the Released Parties or the SLC as an admission, concession, or presumption that the consideration to be given in the Settlement represents the amount which could be or would have been recovered after trial; *provided, however*, that the Parties, the Released Parties, and their respective counsel, the SLC, and the SLC's Counsel may refer to this Judgment and the Stipulation to effectuate the protections from liability granted hereunder and thereunder, to support any and all defenses or counterclaims based on *res judicata*, collateral estoppel, release, good-faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim, or otherwise to enforce the terms of the Settlement.

12. **Award of Attorneys' Fees and Expenses** – Plaintiffs' Counsel are hereby awarded attorneys' fees in the amount of _____% of the Cash Settlement Fund and expenses in the amount of $_____ (which fees and expenses shall be paid from the Cash Settlement Fund), which sums the Court finds to be fair and reasonable. The Court-awarded attorneys' fees and expenses shall be paid to Plaintiffs' Counsel in accordance with the terms of the Stipulation.

13. No proceedings or court order with respect to the award of attorneys' fees and expenses to Plaintiffs' Counsel shall in any way disturb or affect this Judgment (including precluding this Judgment from being Final or otherwise being entitled to preclusive effect), and any such proceedings or court order shall be considered separate from this Judgment.

14. **Retention of Jurisdiction** – Without affecting the finality of this Judgment in any way, this Court retains continuing jurisdiction over the Parties and all McKesson stockholders for purposes of the administration, interpretation, implementation, and enforcement of the Settlement.

15. **Modification of the Stipulation** – Without further approval from the Court, the Parties are hereby authorized to agree to and adopt such amendments or modifications of the Stipulation or any exhibits attached thereto to effectuate the Settlement that:  (a) are not materially inconsistent with this Judgment; and (b) do not materially limit the rights of the Company and its stockholders in connection with the Settlement. Without further order of the Court, the Parties may agree to reasonable extensions of time to carry out any provisions of the Settlement.

[PROPOSED] FINAL JUDGMENT
AND ORDER APPROVING
DERIVATIVE ACTION SETTLEMENT
CASE NO. 4:17-CV-01850-CW

16.   **Termination of Settlement** – If the Settlement is terminated as provided in the Stipulation or the Effective Date of the Settlement otherwise fails to occur, this Judgment shall be vacated, rendered null and void, and be of no further force and effect, except as otherwise provided by the Stipulation, and this Judgment shall be without prejudice to the rights of the Parties or any McKesson stockholders, and the Parties shall revert to their respective litigation positions in the Actions as of October 15, 2019.

17.   **Entry of Final Judgment** – There is no just reason to delay the entry of this Judgment as a final judgment in the California Action.  Accordingly, the Clerk of the Court is expressly directed to immediately enter this final judgment in the California Action.

**IT IS SO ORDERED.**

Dated: _____, 2020

_____
The Honorable Claudia Wilken
United States District Judge

[PROPOSED] FINAL JUDGMENT
AND ORDER APPROVING
DERIVATIVE ACTION SETTLEMENT
CASE NO. 4:17-cv-01850-CW